**SHUB LAW FIRM LLC**
Jonathan Shub
Kevin Laukaitis*
134 KINGS HIGHWAY EAST, 2ND FLOOR
HADDONFIELD, NJ 08033
Telephone: (856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff
18 HALF MILE ROAD
ARMONK, NEW YORK 10504
Telephone: (910) 476-7253
jbm@wittelslaw.com

*Pro Hac Vice Motion Forthcoming*

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN MELVILLE, on behalf of himself and all others similarly situated, | Civil Case No.: 12 Civ. 10406 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| HOP ENERGY, LLC, | |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiff Ryan Melville (hereinafter "Plaintiff"), by his attorneys Shub Law Firm LLC and Wittels McInturff Palikovic, brings this consumer protection lawsuit in his individual capacity, and on behalf of a class of consumers defined below (the "Class"), against Defendant HOP Energy, LLC (hereinafter "HOP Energy") and hereby alleges the following with knowledge as to his own acts, and upon information and belief as to all other acts:

## **NATURE OF THE CASE**

1.      Defendant HOP Energy provides heating oil to consumers in eight states across the Northeast.[1]  This consumer protection action arises from HOP Energy's breach of contract and bad faith pricing practices, causing tens of thousands of consumers to pay considerably more than they bargained for to obtain home heating oil.

2.      Price is the most important consideration for heating oil consumers.  Given that there is no difference at all in the heating oil that HOP Energy supplies as opposed to that supplied by other heating oil companies, the only reason a consumer chooses a particular heating oil company over another is for the potential savings offered in a competitive market.

3.      As set forth herein, HOP Energy contracted with Plaintiff and the Class to sell its heating oil at the "Promotional Prevailing Retail Price for First Year Customers for home heating oil that is in effect at the time of delivery."  As also detailed below, before filing this action Plaintiff commissioned an initial yet detailed analysis from top-tier energy consulting experts regarding the prevailing retail price HOP Energy should have charged Plaintiff.  This analysis (described below) demonstrates that HOP Energy categorically failed to charge the "Prevailing Retail Price," much less provide the meaningful discounts afforded by the contract terms

---

[1] According to HOP Energy's website, its family of energy brands provide services to customers in the following eight states: Connecticut, Delaware, Massachusetts, New Jersey, New York, Pennsylvania, Rhode Island, and Vermont.  *See* https://hopenergy.com/locations/ (last accessed December 6, 2021).

"Promotional" and "for First Year Customers."  Because the facts do and will continue to

demonstrate that Defendant took advantage of consumers' lack of sophistication, inertia, and

other widely known frailties in consumer-decision making, HOP Energy breached both the clear

language of its customer contract and the implied covenant of good faith and fair dealing.

4.    Plaintiff and the Class of HOP Energy's heating oil customers defined below have

been injured by Defendant's unlawful practices.  Plaintiff and the Class therefore seek damages

and restitution for HOP Energy's breach of contract and breach of the duty of good faith and fair

dealing.  Heating costs are a significant portion of most families' budgets.  To prey on consumers

as Defendant has done here is unconscionable.

5.    Only through a class action can HOP Energy's customers remedy Defendant's

ongoing wrongdoing.  Because the monetary damages suffered by each customer are small

compared to the much higher cost a single customer would incur in trying to challenge HOP

Energy's unlawful practices, it is not financially feasible for an individual customer to bring his

or her own lawsuit.  Further, many customers do not realize they are victims of HOP Energy's

unlawful conduct.  With this class action, Plaintiff and the Class seek to level the playing field

and ensure that companies like HOP Energy engage in fair and upright business practices.

## FACTUAL ALLEGATIONS

6.    On October 19, 2018, Plaintiff Melville signed a home heating oil contract for a

"capped-price" plan with a HOP Energy brand called DDLC Energy.[2]  Plaintiff's contract is a

---

[2] DDLC is a fictitious entity for HOP Energy.  According to HOP Energy's website, DDLC Energy is "a local subsidiary" of HOP Energy, and is otherwise described on the website as "Your local HOP Energy company."  *See* https://hopenergy.com/locations/ddlc-energy/ (last accessed December 6, 2021).  DDLC Energy is also not listed on Connecticut's "business entity" search.  *See* https://service.ct.gov/business/s/onlinebusinesssearch?businessName=DDLC Energy (last accessed December 6, 2021).

non-negotiable standardized form contract drafted by HOP Energy and is attached hereto as **Exhibit A**.

7.     The contract defines itself as the "Agreement." *Id.* at 1.  Under the Agreement, Plaintiff's home heating oil price was capped for the earlier of delivery of 1,000 gallons of oil or until October 31, 2019.  *Id.*  The Agreement defines the "period from 10/19/2018 through 10/31/2019" as the "Pricing Period."  *Id.*  The contract states that the capped price "will expire at the earlier of the end of the Pricing Period or when all of the Agreement gallons stated above [i.e. 1,000 gallons] are delivered to you."  *Id.*  Once the capped price period ends, on either October 31, 2019, or upon delivery of the thousandth gallon of oil, "[a]ll subsequent deliveries to you will be charged at our Promotional Prevailing Retail Price for First Year Customers for home heating oil that is in effect at the time of delivery."  *Id.*

8.     The "DELIVERIES" section of the Agreement makes clear that "[h]eating oil deliveries will be made to you on an automatic delivery basis" and that the customer must "maintain your account on automatic delivery."  *Id.*

9.     The "TERMINATION" section of the Agreement provides that the Agreement's terms continue past the "Pricing Period."  *Id.* at 4.  The "TERMINATION" section states that "[a]fter the Pricing Period, either party may terminate this Agreement upon written notice, provided that you will remain responsible for all purchases made by you before we receive notice of the cancellation."  *Id.* at 4.  The "TERMINATION" section then emphasizes that "[a]ny gallons delivered to you after the Pricing Period has expired will be charged at our PROMOTIONAL PREVAILING RETAIL PRICE FOR FIRST YEAR CUSTOMERS for home heating oil that is in effect at the time of delivery."  *Id.* (emphasis in original).

3

10.     The Agreement also includes two copies of a "**NOTICE OF CANCELLATION**" that can be used to terminate the Agreement.  *Id.* at 7–8 (emphasis in original).

11.     Finally, the Agreement contains a $200 early termination fee if a consumer's "account is cancelled or terminated . . . during the Pricing Period."  *Id.* at. 3.

12.     On October 14, 2019, HOP Energy emailed Plaintiff Melville a letter advising him that "[a]s of 10/31/2019" the Pricing Period would end and that "if we don't hear from you, your account will automatically default to the Variable Price Plan and you will remain on automatic delivery."  This letter is attached hereto as **Exhibit B** and does not contain the word "cancel."

13.     Plaintiff Melville took no action and in accordance with the Agreement, HOP Energy continued to deliver his home heating oil until he canceled his contract with HOP Energy in April 2021.

14.     As detailed below, HOP Energy's exorbitant rates after October 31, 2019 (the end of the Agreement's "Pricing Period") were set in bad faith and bear no resemblance to prevailing retail prices, much less do they reflect the meaningful discounts afforded by the Agreement's plain language requiring that these rates be set at the "Promotional Prevailing Retail Price for First Year Customers."

15.     Before bringing this action, Plaintiff and his counsel commissioned an analysis from top-tier energy consulting experts regarding the prevailing retail price in Connecticut, Plaintiff's home state.  This analysis demonstrates that in the 18 months that Plaintiff remained a HOP Energy customer after October 31, 2019, the per-gallon rates HOP Energy charged were higher than the prevailing retail price ***100%*** of the time.  In fact, for the 18-month period

examined below, HOP Energy's prices were ***on average*** between 42% and 46% higher than the prevailing retail rate charged for ***the exact same heating oil***.  Worse, HOP Energy's improper per-gallon overcharges were ***highest*** during the winter heating season—when consumers need heating oil the most.  For example, in January 2021 HOP Energy's rates were between 54% and 60% higher than the prevailing retail price for the exact same heating oil.

16.    To arrive at these findings, Plaintiff's consulting experts obtained weekly residential heating oil price data between November 2019 and April 2021 published by the Department of Energy and Environmental Protection ("DEEP") of the State of Connecticut[3] and the United States Energy Information Administration ("EIA").[4]

17.    The Connecticut DEEP conducts a weekly survey of heating oil dealers in the state of Connecticut.  The dealers are asked to provide average pricing information for their location and the survey results are published.

18.    The EIA similarly publishes weekly residential heating oil prices for the New England region, including the state of Connecticut, for the duration of the heating season, which is defined as October through March of each year.[5]

19.    Using the prices published in the public reports and surveys regarding prevailing

---

[3] Energy Price and Supply Information, Heating Oil Price and Propane Prices: Heating Oil and Propane Survey.  Available from: https://portal.ct.gov/-/media/DEEP/energy/SHOPP_Survey/ctheatingoilregionalretailpricespdf.pdf (last accessed December 6, 2021).

[4] Energy Information Administration (EIA), Heating Oil and Propane Update. Available from: https://www.eia.gov/petroleum/heatingoilpropane/  (last accessed December 6, 2021).

[5] Specifically, the residential heating oil price reported by the EIA is the price charged for home delivery of No. 2 heating oil, excluding any discounts such as those for prompt cash payments.  Prices reported in the EIA reports also do not include the taxes paid by residential customers.  Energy Information Administration (EIA), Heating Oil and Propane Update: Definitions, Sources and Explanatory Notes. Available from: https://www.eia.gov/dnav/pet/TblDefs/pet_pri_wfr_tbldef2.asp (last accessed December 6, 2021).

retail heating oil prices in Connecticut and the New England region, Plaintiff's consulting experts compared the HOP Energy heating oil prices reflected in Plaintiff's invoices to the pricing data reflected in these public reports.

20.    Specifically, the prices listed on Plaintiff's invoices on specific dates were compared to the average prices reported by the DEEP and EIA in the week corresponding with the delivery date of HOP Energy's heating oil.

[6]

(blue line for the state and green line for New England):



---

[6] Residential heating oil prices for the months of April, May, June, July, August, and September are not reported by the EIA.

22.     This graph demonstrates (1) that the three separate sources of public pricing data are highly consistent, and (2) that the prices HOP Energy charged Plaintiff are substantially higher than these three sources and thus do not reflect the "Promotional Prevailing Retail Price for First Year Customers" as required by HOP Energy's customer contract.

23.     Table 1 below shines further light on HOP Energy's improper pricing practices. Table 1 compares the price information from Plaintiff's HOP Energy invoices on specific dates (as shown in Column [a]) and the corresponding public governmental reports (i.e., Connecticut DEEP (Column [b]) and U.S. EIA (Columns [c] and [d])):

| Table 1:  HOP Energy Heating Oil Prices vs. Public Reports (Prices are in $ per gallon) | | | | |
|---|---|---|---|---|
| Date Delivered | HOP Energy Prices | Average Residential Connecticut (DEEP) | Average Residential Retail Connecticut (EIA) | Average Residential Retail New England (EIA) |
| | [a] | [b] | [c] | [d] |
| 11/23/2019 | $4.20 | $2.81 | $2.99 | $2.89 |
| 2/6/2020 | $4.00 | $2.74 | $2.89 | $2.86 |
| 2/28/2020 | $4.00 | $2.66 | $2.85 | $2.81 |
| 3/26/2020 | $3.00 | $2.15 | $2.28 | $2.38 |
| 4/23/2020 | $2.50 | $1.90 | | |
| 5/27/2020 | $2.50 | $1.84 | | |
| 8/11/2020 | $2.70 | $2.03 | | |
| 9/28/2020 | $2.70 | $1.97 | | |
| 11/10/2020 | $2.70 | $1.99 | $2.07 | $2.06 |
| 12/9/2020 | $3.20 | $2.17 | $2.26 | $2.23 |
| 1/4/2021 | $3.60 | $2.35 | $2.45 | $2.40 |
| 1/23/2021 | $3.90 | $2.43 | $2.54 | $2.51 |
| 2/16/2021 | $4.10 | $2.68 | $2.77 | $2.72 |
| 3/9/2021 | $4.30 | $2.80 | $2.90 | $2.84 |
| 4/6/2021 | $4.40 | $2.71 | | |
| Min | $2.50 | $1.84 | $2.07 | $2.06 |
| Average | $3.45 | $2.35 | $2.60 | $2.57 |
| Max | $4.40 | $2.81 | $2.99 | $2.89 |

24.    Table 1 contains at least three separate indicia of how the heating oil prices HOP Energy charged Plaintiff were significantly higher than the prevailing weekly prices published by the DEEP and the EIA.

o    The average price charged by HOP Energy was $3.45 per gallon, while the average residential heating oil prices were $2.35 per gallon and $2.60 in the DEEP and EIA reports respectively.  In other words, while the weekly average prices compiled by the DEEP and EIA varied from one another by only $0.25, HOP Energy's average price per gallon was between $0.85 and $1.10 ***higher*** than average prevailing market prices.

o    The lowest price HOP Energy charged Plaintiff was $2.50 per gallon, which was approximately 36% higher than the lowest price reported by DEEP and approximately 21% higher than the lowest price reported by the EIA.

o    The highest price charged by HOP Energy during this 28-month period was $4.40 per gallon, which was approximately 56% higher than the highest price reported by DEEP and was approximately 47% higher than the highest price reported by the EIA.

*(Complaint continued overleaf)*

25.    The stark difference in heating oil prices charged by HOP Energy and the prevailing retail prices reflected in the public reports are even larger during the winter months. Table 2 below summarizes the percentage overcharge from the prevailing retail prices reflected in the public reports to HOP Energy's prices when it sold home heating oil to Plaintiff after October 31, 2019:

| Table 2:  Percent Overcharge from Public Reports to HOP Energy Heating Oil Prices (Prices are in $ per gallon) | | | | |
|---|---|---|---|---|
| Date Delivered | HOP Energy Price Per Gallon | HOP Energy % Overcharge Above Avg. Residential Connecticut (DEEP) Price Per Gallon | HOP Energy % Overcharge Above Avg. Residential Retail Connecticut (EIA) Price Per Gallon | HOP Energy % Overcharge Above Avg. Residential Retail New England (EIA) Price Per Gallon |
| | [a] | [b] | [c] | [d] |
| 11/23/2019 | $4.20 | 49% | 40% | 45% |
| 2/6/2020 | $4.00 | 46% | 38% | 40% |
| 2/28/2020 | $4.00 | 50% | 40% | 42% |
| 3/26/2020 | $3.00 | 40% | 32% | 26% |
| 4/23/2020 | $2.50 | 32% | | |
| 5/27/2020 | $2.50 | 36% | | |
| 8/11/2020 | $2.70 | 33% | | |
| 9/28/2020 | $2.70 | 37% | | |
| 11/10/2020 | $2.70 | 35% | 31% | 31% |
| 12/9/2020 | $3.20 | 47% | 42% | 44% |
| 1/4/2021 | $3.60 | 53% | 47% | 50% |
| 1/23/2021 | $3.90 | 60% | 54% | 55% |
| 2/16/2021 | $4.10 | 53% | 48% | 51% |
| 3/9/2021 | $4.30 | 53% | 48% | 51% |
| 4/6/2021 | $4.40 | 62% | | |
| Min | $2.50 | 32% | 31% | 26% |
| Average | $3.45 | 46% | 42% | 44% |
| Max | $4.40 | 62% | 54% | 55% |

26.     HOP Energy's overcharge percentages in Table 2 above demonstrate the following three troubling facts:

o   During the winter of 2019/2020, HOP Energy's prices were approximately 40% to 50% higher than the average DEEP residential heating oil prices and 32% to 40% higher than the average EIA residential heating oil prices in Connecticut.  In other words, during the winter of 2019/2020 families in Connecticut paid HOP Energy a massive premium for the exact same home heating oil sold elsewhere in the state.

o   During the winter of 2020/2021, HOP Energy's prices were approximately 35% to 60% higher than the average DEEP residential heating oil prices and 31% to 54% higher than the average EIA residential heating oil prices in Connecticut.  To wit, for the last two winter heating seasons, consumers paid HOP Energy a massive premium for fungible home heating oil.

o   A comparison of HOP Energy's prices to the regional average prices reported by EIA similarly demonstrates how HOP Energy was not charging the "Promotional Prevailing Retail Price for First Year Customers" as required by its customer contract.  The prices HOP Energy charged Plaintiff are on average 42% to 44% higher than the regional residential heating oil prices reported by EIA during the winter months of 2019/2020 and 2020/2021.

27.     HOP Energy exploits the dramatic information asymmetry between HOP Energy and its customers to engage in improper price gouging.  Consequently, HOP Energy's rates are consistently substantially higher than prevailing retail prices.  In fact, no reasonable customer would interpret "Promotional Prevailing Retail Price for First Year Customers" to mean that

HOP Energy is contractually permitted to charge 60% or more **_above_** the prevailing retail price. The opposite is true—HOP Energy's customer contract plainly contains a commitment by HOP Energy that its non-capped prices will be **_lower_** than the prevailing retail home heating oil prices. Any reasonable consumer would understand that a contractual commitment to charge the "Promotional Prevailing Retail Price for First Year Customers" is a contract for a price that is meaningfully lower than the prevailing retail price, not one that is on average between 42% and 46% higher than the prevailing retail rate charged for **_the exact same fuel oil_**.

28.    To the extent HOP Energy claims it had discretion to set its heating oil prices, Defendant violated the implied covenant of good faith and fair dealing by exercising any price setting discretion it may have had in bad faith and in a manner inconsistent with Plaintiff's and other consumers' reasonable expectations. Reasonable consumers did not expect HOP Energy to use any supposed pricing discretion to profiteer off the information asymmetry between HOP Energy and its customers. Even if HOP Energy had unilateral discretion to set its heating oil rates (and it did not), Plaintiff and other reasonable consumers expect that notwithstanding Defendant's profit goals, its prices would be consistent with prevailing retail prices and that Defendant would refrain from price gouging. Without these reasonable expectations, Plaintiff and other Class Members would not have agreed to buy home heating oil from Defendant.

29.    HOP Energy's improper conduct is designed to take advantage of consumers' good faith and lack of knowledge of the heating oil market. HOP Energy did not honor its contractual commitment to consumers but rather deployed underhanded tactics to maximize its own profits at unsuspecting consumers' expense. For example, a central component of HOP Energy's sales strategy is to use consumer inaction following the expiration of the capped price period to saddle consumers with exorbitant prices.

30.     It is well-established that defaults are powerful drivers of consumer behavior.  There are various factors underlying this human tendency that have been discussed in the judgment and decision-making literature, such as the work about defaults, the "status quo bias,"[7] and "nudges."[8]

31.     In this case, HOP Energy knew that once consumers' capped price plans lapsed, it could charge excessive heating oil rates and many (if not most) consumers would not know they were being overcharged, and would simply pay the exorbitant charges, month after month after month.

32.     As a result, HOP Energy is fleecing at least tens of thousands of unsuspecting consumers out of millions of dollars in exorbitant home heating oil costs.  Defendant's scheme, which often affects society's most vulnerable citizens, is immoral, unethical, oppressive, and unscrupulous.

33.     Plaintiff is but one of the many consumers harmed by HOP Energy's practices.  The purpose of this class action is to obtain redress for all of HOP Energy's customers and to reform HOP Energy's pricing practices going forward.

## JURISDICTION AND VENUE

### Subject Matter Jurisdiction

34.     This Court has jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendant.

---

[7] Daniel Kahneman, Jack L. Knetsch and Richard H. Thaler (1991), "Endowment Effect, Loss Aversion, and Status Quo Bias," *The Journal of Economic Perspectives*, Vol. 5, pp. 193–206.

[8] R. Thaler and S. Sunstein (2008), *Nudge*, Yale University Press.

*Personal Jurisdiction*

35.     This Court has specific personal jurisdiction over Defendant because it maintains sufficient contacts in this jurisdiction, including maintaining its principal place of business in this jurisdiction, and advertising, marketing, and selling heating oil in this jurisdiction.  Several additional relevant acts took place in this District.  With its headquarters in this District, HOP Energy processes enrollment transactions and payments in this District; directs marketing, billing, customer outreach, service, and tracking efforts from this District; and received payments from Plaintiff and Class Members and maintains a bank account in this District.

*Venue*

36.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1).  Substantial acts in furtherance of the alleged improper conduct occurred within this District and Defendant is headquartered in this District.

## PARTIES

37.     Plaintiff Ryan Melville is a resident and citizen of Connecticut who lived in Woodstock, Connecticut at all relevant times.  Plaintiff was a HOP Energy customer from October 2018 to April 2021.

38.     Defendant HOP Energy, LLC is a limited liability company organized and existing under the laws of the State of Delaware.  Its principal place of business is at 4 West Red Oak Lane, Suite 310, White Plains, NY 10604.  At least one member of Defendant, HOP Energy Holdings, Inc., is a citizen of New York.  HOP Energy does business in Connecticut through its office located at 410 Bank Street, New London, CT 06320.

39.    HOP Energy provides residential and commercial heating oil and services to customers in Connecticut, Delaware, Massachusetts, New Jersey, New York, Pennsylvania, Rhode Island, and Vermont.  HOP Energy has approximately 100,000 customers.

### CLASS ACTION ALLEGATIONS

40.    As alleged throughout this Complaint, the Class claims all derive directly from a single course of conduct by Defendant.  Defendant has engaged in uniform and standardized conduct toward the Class and this case is about the responsibility of Defendant, at law and in equity, for its knowledge and conduct.  Defendant's conduct did not meaningfully differ among individual Class Members in its degree of care or candor, its actions or inactions, or in the content of its contractual promises and/or improper use of any pricing discretion.  On information and belief, the form customer agreements for all of HOP Energy's customers are materially the same.  The objective facts on these subjects are the same for all Class Members.

41.    Plaintiff sues on his own behalf and on behalf of a Class for monetary and equitable relief under Rules 23(a), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

42.    The Class, preliminarily defined as follows:  all HOP Energy customers in Connecticut, Delaware, Massachusetts, New Jersey, New York, Pennsylvania, Rhode Island, and Vermont (including customers of companies HOP Energy acts as a successor to) who purchased heating oil during the applicable statute of limitations period up to and including the date of judgment pursuant to contractual pricing terms that tied HOP Energy's prices to prevailing retail prices at the time of delivery.

43.    Excluded from the Class are:  Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; and any officer, director, employee, legal representative,

predecessor, successor, or assignee of Defendant.  Also excluded are all federal, state and local

government entities; and any judge, justice or judicial officer presiding over this action and the

members of their immediate families and judicial staff.

44.     Plaintiff reserves the right, as might be necessary or appropriate, to modify or

amend the definition of the Class and/or add Subclasses, when Plaintiff files his motion for class

certification.

45.     Plaintiff does not know the exact size of the Class since such information is in the

exclusive control of HOP Energy.  Plaintiff believes, however that the Class encompasses at least

tens of thousands of individuals whose identities can be readily ascertained from Defendant's

books and records.  Accordingly, the members of the Class are so numerous that joinder of all

such persons is impracticable.

46.     The Class is ascertainable because its members can be readily identified using

data and information kept by Defendant in the usual course of business and within its control.

Plaintiff anticipates providing appropriate notice to each Class Member in compliance with all

applicable federal rules.

47.     Plaintiff is an adequate class representative.  His claims are typical of the claims

of the Class and do not conflict with the interests of any other members of the Class.  Plaintiff

and the other members of the Class were subject to the same or similar conduct engineered by

the Defendant.  Further, Plaintiff and members of the Class sustained substantially the same

injuries and damages arising out of Defendant's conduct.

48.     Plaintiff will fairly and adequately protect the interests of all Class Members.

Plaintiff has retained competent and experienced class action attorneys to represent his interests

and those of the Class.

49.     Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class Members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

     a.  Whether Defendant breached its customer contracts and violated the duty of good faith and fair dealing;

     b.  Whether Class Members have been injured by Defendant's conduct;

     c.  Whether, and to what extent, equitable relief should be imposed on Defendant to prevent it from continuing its unlawful practices; and

     d.  The extent of class-wide injury and the measure of damages for those injuries.

50.     A class action is superior to all other available methods for resolving this controversy because (1) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; (2) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Defendant's conduct; (3) Defendant has acted or refused to act on grounds generally applicable to all Class Members; and (4) questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

51.     Further, the following issues are also appropriately resolved on a class-wide basis under Federal Rule of Civil Procedure 23(c)(4):

     a.  Whether Defendant breached its customer contracts and violated the duty of good faith and fair dealing;

     b.  Whether Class Members have been injured by Defendant's conduct; and

     c.   Whether, and to what extent, equitable relief should be imposed on Defendant to prevent it from continuing its unlawful practices.

52.     Accordingly, this action satisfies the requirements set forth under Federal Rule of Civil Procedure 23(a), 23(b), and 23(c)(4).

## CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT

## (ON BEHALF OF EACH CLASS MEMBER UNDER THE LAW OF THEIR STATE)

53.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

54.     Plaintiff and the Class entered into valid contracts with Defendant for the provision of heating oil supply.

55.     Pursuant to those contracts, after the Pricing Period expired Defendant was required to charge the "Promotional Prevailing Retail Price for First Year Customers for home heating oil that is in effect at the time of delivery."

56.     Pursuant to those contracts, Plaintiff and all Class Members agreed to pay Defendant's rate and did so.

57.     However, Defendant failed to perform its obligations under the contract, because its rates were not the "Promotional Prevailing Retail Price for First Year Customers for home heating oil that is in effect at the time of delivery."

58.     Plaintiff and all Class Members were damaged as a result because they were billed and paid prices for home heating oil that were higher than Defendant was authorized to charge under the contract's terms.

59.     As a result of Defendant's breaches, HOP Energy is liable to Plaintiff and members of the Class for damages and attorney's fees and expenses.

**COUNT II**

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(ON BEHALF OF EACH CLASS MEMBER UNDER THE LAW OF THEIR STATE)**

60.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

61.     Plaintiff and the Class entered into valid contracts with Defendant for the provision of home heating oil supply.

62.     Every contract has an implied covenant of good faith and fair dealing in the performance and enforcement of the contract.  The implied covenant is an independent duty and may be breached even if there is no breach of the contract's express terms.

63.     Under the contract, to the extent Defendant had discretion to set the price-per-gallon of home heating oil, it was obligated to exercise its discretion in good faith.

64.     Plaintiff reasonably expected that Defendant's home heating oil rates would, notwithstanding Defendant's profit goals, reflect prevailing retail prices and that Defendant would not engage in price gouging.  Without these reasonable expectations, Plaintiff and other Class Members would not have agreed to buy heating oil from Defendant.

65.     Defendant breached the implied covenant of good faith and fair dealing by unreasonably exercising its rate-setting discretion to price gouge and frustrate Plaintiff's and other Class Members' reasonable expectations that Defendant's heating oil prices would be commensurate with prevailing retail prices.

66.     As a result of Defendant's breaches, HOP Energy is liable to Plaintiff and members of the Class for damages and attorney's fees and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

(a)      Issue an order certifying the Class defined above, appointing the Plaintiff as Class Representative, and designating the undersigned firms as Class Counsel;

(b)      Find that Defendant has committed the violations of law alleged herein;

(c)      Render an award of compensatory damages of at least $25,000,000, the precise amount of which is to be determined at trial;

(d)      Issue an injunction or other appropriate equitable relief requiring Defendant to refrain from engaging in the practices alleged herein;

(e)      Declare that Defendant has committed the violations of law alleged herein;

(f)      Enter judgment including interest, costs, reasonable attorneys' fees, costs, and expenses; and

(g)      Grant all such other relief as the Court deems appropriate.

## **JURY DEMAND**

Under Federal Rule of Civil Procedure 38, Plaintiff demands that a jury determine any issue triable of right.

*(Complaint continued overleaf)*

19

Dated: December 6, 2021

                            **SHUB LAW FIRM LLC**

                    By:    /s/ Jonathan Shub
                            Jonathan Shub
                            Kevin Laukaitis*
                            134 KINGS HIGHWAY EAST, 2ND FLOOR
                            HADDONFIELD, NEW JERSEY 08033
                            Tel: (856) 772-7200
                            jshub@shublawyers.com
                            klaukaitis@shublawyers.com

                            **WITTELS MCINTURFF PALIKOVIC**

                            J. Burkett McInturff
                            18 HALF MILE ROAD
                            ARMONK, NEW YORK 10504
                            Telephone: (914) 319-9945
                            jbm@wittelslaw.com

                            *Pro Hac Vice Application Forthcoming*

                            *Attorneys for Plaintiff and the Proposed
                            Class*