

230 Park Avenue
New York, NY 10169
otterbourg.com
212 661 9100

William M. Moran
Member of the Firm
Admitted in NY and NJ
wmoran@otterbourg.com
212 905 3625

February 7, 2022

VIA E-MAIL AND ECF

Jonathan Shub, Esq.
Shub Law Firm LLC
134 Kings Highway East, 2nd Floor
Haddonfield, New Jersey 08033

J. Burkett McInturff, Esq.
Wittels McInturff Palikovic
18 Half Mile Road
Armonk, New York 10504

Re:    Melville v. HOP Energy, LLC, No. 21-cv-10406-KMK - Prospective Motion to Dismiss

Dear Counsel:

        We represent defendant HOP Energy, LLC ("***HOP***") in the action referred to above (the
"***Action***").  Please consider this HOP's pre-motion letter pursuant to Rule II.A of Judge Karas'
Individual Rules of Practice, which requires HOP to provide a letter with the arguments and case
law supporting HOP's position that the putative Class Action Complaint (the "***Complaint***") fails
to state a claim as a matter of law.  HOP intends to assert these arguments in a motion to dismiss
under Rule 12(b)(6) of the Federal Rules of Civil Procedure to the extent consistent with the
Court's rules.  As set forth in Judge Karas' Rule II.A, we understand that the filing of this letter
stays HOP's time to answer or move with respect to the Complaint until further Order of the
Court.

        In this putative class action, Melville asserts claims against HOP for breach of contract
and breach of the implied covenant of good faith and fair dealing alleging that HOP overcharged
Melville and other residential customers for heating oil.  Compl. ¶¶ 1-3.  Melville's claims are
based upon the erroneous premise that HOP charged Melville more than its "Promotional
Prevailing Retail Price for First Year Customers for home heating oil that went into effect at the
time of delivery" (the "***Variable Price***") for oil deliveries after the expiration of the "CAPPED
PRICE PROGRAM" under HOP's "Retail Credit Agreement" with Melville dated as of October
19, 2018 (Compl. Ex. A at 1, the "***Agreement***").  In a letter dated October 14, 2019 letter (the
"***October 14, 2019 Letter***," Compl. Ex. B), HOP confirmed that, "if we don't hear from you,
your account will automatically default to the Variable Price Plan," under which "our prevailing



February 7, 2022
Jonathan Shub, Esq.
J. Burkett McInturff, Esq.
Page 2

retail price fluctuates as the cost of oil changes."  Compl. Ex. B.[1]  For the reasons set forth below, Melville's claims fail to state a claim and should be dismissed.

## I.   Melville's Breach of Contract Claim Fails to State a Claim.

The laws of Connecticut, where Melville resides, or New York, where HOP is based, govern Melville's claims against HOP.  "The rule in Connecticut, as in New York, is that courts are to apply the plain meaning of the words in a contract provision where the words are clear and unambiguous."  *EDO Corp. v. Newark Ins. Co.*, 878 F. Supp. 366, 370-71 (D. Conn. 1995) (quoting *Olin Corp. v. Ins. Co. of N. Am.*, 762 F. Supp. 548, 558 (S.D.N.Y. 1991), *aff'd*, 966 F.2d 718 (2d Cir. 1992) (citing *Griswold v. Union Labor Life Ins. Co.*, 186 Conn. 507, 512-13, 442 A.2d 920, 923 (1982))).

Here, the Agreement unambiguously provides that HOP will charge the Variable Price for automatic oil deliveries under the Agreement after the expiration of the capped pricing period.  The Complaint fails to plead sufficient facts "to state a claim for relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), that HOP charged Melville prices that were above the Variable Rate. Instead, it alleges, in conclusory fashion, that "Defendant failed to perform its obligations under the contract, because its rates were not the 'Promotional Prevailing Retail Price for First Year Customers for home heating oil that is in effect at the time of delivery.'" Compl. ¶ 57.  However, it fails to allege what that "Variable Rate" was at any time of any of the sales referred to in the Complaint, or any facts indicating that Melville was charged a higher rate.  Consequently, the Complaint fails to state a claim for breach of contract.

Importantly, the unambiguous provisions of the Agreement required HOP to charge Melville the Variable Rate and gave HOP unfettered discretion in setting that rate.  Agreement Ex. A at 1.  Thus, Melville's assertions that HOP charged higher rates than it was permitted to charge under the Agreement (Compl. ¶¶ 14-33) are not supported by plausible facts, and fail to justify denial of the motion.  *E.g.*, *Richards v. Direct Energy Servs., LLC*, 915 F.3d 88 (2d Cir. 2019) (claims for breach of contract and covenant of good faith and fair dealing failed where agreement gave defendant electricity provider unfettered discretion to set variable rates for electricity); *Nieves v. Just Energy New York Corp*., 2020 WL 6803056, at *6 (W.D.N.Y. Nov. 19, 2020) (dismissing claims for breach of contract and breach of the implied covenant of good

---

[1] This letter, which was annexed as an exhibit to the Complaint, was one of many letters, emails and calls to Melville that HOP sent before his capped pricing period ended, to offer him the opportunity to continue to receive a price protection program.



February 7, 2022
Jonathan Shub, Esq.
J. Burkett McInturff, Esq.
Page 3

faith and fair dealing against electricity provider because "[w]hat constituted 'business and market conditions' was left to Defendant's discretion in setting the variable rates").  The fact that HOP could cancel the Agreement at any time after the end of the "Pricing Period" without penalty (Compl. Ex. A § 12) confirms that Melville's claim for breach of contract should be dismissed.  *Richards*, LLC, 915 F.3d at 102.

In an apparent attempt to bring this action under *Mirkin v. XOOM Energy, LLC*, 931 F.3d 173 (2d Cir. 2019), and *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 422 (S.D.N.Y. 2020), Melville alleges that "Plaintiff and his counsel commissioned an analysis from top-tier energy consulting experts regarding the prevailing retail price in Connecticut, Plaintiff's home state," based upon weekly residential heating oil data for Connecticut from Connecticut's Department of Energy and Environmental Protection and the U.S. Energy Information Administration.  Compl. ¶¶ 15-27.  However, those statistics fail to support Melville's position for the following reasons: (a) Table I in the Complaint – a chart of the average price allegedly charged by a subset of other providers of residential heating oil in Connecticut – fails to contradict the October 14, 2019 Letter because it shows that HOP's home heating oil prices declined and then increased as the average price of home heating oil also declined and then increased.  Compl. ¶ 20.  (b) Table I fails to identify any of the heating oil providers who provided information, or the methodology used by the providers in calculating their averages. (c) The Complaint fails to state the type of services provided by the heating oil providers who were surveyed, including whether the service was full-service or no-frills, and whether the contracts involved are capped, variable or fixed.  Compl. ¶¶ 15-27.  No-frills prices are far lower than any full-service prices, and any averages of no-frill prices would likewise be lower than the full-service Variable Price that HOP charged Melville.  Similarly, if the prices were under fixed or capped contracts, then they also would not be comparable to the variable market prices referred to in the Agreement.  (d) While the tables in the Complaint refer to averages, a review of the underlying data shows that, during the period in question, HOP's pricing was within, or not materially above, the range of prices charged by the subset of Connecticut suppliers surveyed. *See* Ex. 1 hereto.[2]  *Mirkin* and *Stanley* thus fail to support Melville's position.[3]

---

[2] Exhibit 1 hereto is based upon https://portal.ct.gov/-/media/DEEP/energy/SHOPP_Survey/ctheatingoilregionalretailpricespdf.pdf (last accessed February 7, 2022), cited at Compl. ¶ 16, n. 3.

[3] In addition, unlike the provider in *Stanley*, HOP made no promises in either the Agreement or the October 14, 2019 Letter that it would charge the most competitive pricing in the default pricing plan after termination of the Pricing Period.  Rather, both consistently refer to "our" (meaning HOP's) variable pricing plan, which places pricing solely within HOP's discretion.



February 7, 2022
Jonathan Shub, Esq.
J. Burkett McInturff, Esq.
Page 4

**II.     Melville's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails to State a Claim**.

Melville also asserts a claim for breach of the implied covenant of good faith and fair dealing alleging that HOP had discretion under the Agreement to set prices but it failed to exercise that discretion in good faith. Compl. ¶¶ 63-65. In *Richards*, the Second Circuit explained that, under Connecticut law, "[t]he covenant is … 'not implicated by conduct that does not impair contractual rights,'" and requires that the "wrongful acts were 'taken in bad faith,'" which "in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Richards*, 915 F.3d at 97 (citations omitted). The Court further explained that, "[b]ecause this is a high bar, '[t]he covenant will be breached only in a narrow range of cases,'" and that the "paradigmatic examples" of such breaches are "'harassing demands for assurances of performance, rejection of performance for unstated reasons, willful failure to mitigate damages, and abuse of a power to determine compliance or to terminate the contract.'" *Richards*, 915 F.3d at 97 (citations omitted). But, where, as here, the defendant exercises its discretion to set rates in accordance with contractual provisions and prices are set within the overall range of prices in the marketplace, a claim for breach of the covenant fails. *Richards*, 915 F.3d at 99-100 (citing 23 Williston on Contracts § 63:22 (4th ed. 2018)); *Marcus Dairy, Inc. v. Rollin Dairy Corp.*, 2008 WL 4425954, at *9 (D. Conn. Sept. 24, 2008)); *Nieves*, 2020 WL 6803056, at *6.[4]

If New York law applies, Melville's bad faith claim should also be dismissed as duplicative of its contract claim. New York does not recognize a separate claim for breach of the implied covenant of good faith and fair dealing when a contract claim is also pled based upon the same facts. *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002); *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp.3d 441, 451-452 (S.D.N.Y. 2014); *Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, 2021 WL 3668092 (S.D.N.Y. Aug. 17, 2021) at *4. Because Melville's claim for breach of the implied covenant of good faith

---

[4] Because heating oil is a good, *Metromedia Energy, Inc. v. Advanced Prop. Mgmt., Inc.*, 2014 WL 7662513, at *2 (Conn. Super. Ct. Dec. 19, 2014); *E. River Energy, Inc. v. Gaylord Hosp., Inc.*, 2011 WL 3198251, at *5 (Conn. Super. Ct. June 15, 2011), Melville arguably should have asserted his claims under the UCC, rather than under common law. However, even if Melville had asserted his claims under the UCC, the result would be no different because *Richards* and *Nieves* rely on the UCC and cases decided thereunder. *E.g.*, *Richards*, 915 F.3d at 99 (citing *Marcus Dairy, Inc.*, 2008 WL 4425954, at *9 (citing U.C.C. § 2–305 cmt. 3 (Am. Law Inst. & Unif. Law Comm'n 2017))); *Nieves*, 2020 WL 6803056, at *5 (citing U.C.C. § 2-723(1)) and *Marcus Dairy, Inc.*, 2008 WL 4425954, at *9).



February 7, 2022
Jonathan Shub, Esq.
J. Burkett McInturff, Esq.
Page 5

and fair dealing is based upon the same facts as his contract claim, it should also be dismissed as duplicative of his breach of contract claim.

### III.    All of Melville's Claims Should Be Dismissed for Failure to Satisfy a Condition Precedent or Based upon an Account Stated.

Where the parties to an agreement are required to satisfy a condition precedent before filing a suit, and the agreement is unambiguous, failure to satisfy that condition precedent will result in dismissal of the suit. *Jessica EE v. Joshua EE*, 188 A.D.3d 1479 (3rd Dep't 2020); *St. James Mechanical, Inc. v. Royal & Sunalliance*, 44 A.D.3d 1030 (2nd Dep't 2007). The Agreement explicitly required Melville to submit a written letter within 60 days if he felt his bill was incorrect.  Compl. Ex. A at 4 § 13 & at 6.  The Complaint does not allege that he did so. Consequently, it fails to state a claim for breach of contract and the Count I should be dismissed.

Melville's claims are also precluded by the doctrine of account stated.  Indeed, the graph in paragraph 20 of the Complaint shows that Melville paid fifteen of HOP's invoices from November 2019 through March 2021, but the Complaint fails to allege that he protested or reserved his rights as to any of those invoices.  Compl. ¶ 20.  This gave rise to an account stated which precludes Melville from contesting those invoices in the Action.  *E.g.*, *Midland Funding, LLC v. Godiksen*, 2015 WL 4571204, at *4 (Conn. Super. Ct. June 30, 2015) ("Under the account stated theory, eighteen months of statements, absent any complaint or notice of defect from the defendant, is sufficient to establish a prima facie case regarding the accuracy of account, including the accuracy of the total balance due.") (citing *Credit One, LLC v. Head*, 117 Conn. App. 92, 99, 977 A.2d 767, *cert. denied*, 294 Conn. 907, 982 A.2d 1080 (2009) (affirming summary judgment on account stated claim when plaintiff creditor supplied six months of statements)).  Accordingly, Melville's claims should be also be dismissed for this reason.

All rights are reserved.

Very truly yours,

William M. Moran

cc:    Hon. Kenneth M. Karas
       Kevin Laukaitis, Esq.

6858539.1