**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
RYAN MELVILLE, on behalf of himself and all others similarly situated,

        Plaintiff,

   v.

HOP ENERGY, LLC,

        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

No.:21-cv-10406-KMK-VR

### STIPULATED ESI DISCOVERY AND PRODUCTION PROTOCOL

The Parties, by and through their attorneys, hereby agree to the following protocol for production of electronically stored information ("ESI") and paper ("hardcopy") documents. Subject to protective orders in this action, this protocol governs all production in the matter. This protocol has the objective to facilitate the just, speedy, and inexpensive completion of discovery of ESI and hardcopy documents and to promote, whenever possible, the early resolution of disputes regarding the discovery of ESI without court intervention. Nothing in this protocol shall limit a party's right to seek or object to discovery as set out in applicable rules or to object to the authenticity or admissibility of any hardcopy document or ESI produced in accordance with this protocol.

**A.**  **PROPORTIONALITY**

**Discovery Requested.** Consistent with FRCP 26(b)(1), FRCP 26(g)(1)(B)(ii), and FRCP 26(g)(1)(B)(iii), counsel shall consider the costs and benefits of any discovery requested before issuing or insisting on compliance with any discovery request. Should a producing party ("Producing Party") object to a discovery request as disproportionate, the parties shall work together to resolve any imbalance between the cost and benefit of the subject discovery before bringing the issue to the Court for resolution.

**Preservation.** Because the discovery ultimately requested must be proportional, the same principle applies to the preservation of documents and electronically stored information (ESI). The scope of preservation established in this Order is intended to strike the proper balance with respect to cost and benefit. Should the scope of preservation established in this Order later appear either overinclusive or underinclusive, the party may seek relief from this Order.

B.     **DEFINITIONS**

**ESI:** Computer-generated information or data of any kind that is stored in any medium. ESI includes, but is not limited to, emails, instant messages, documents, spreadsheets, presentations, databases, audio files, and video files.

**Duplicate ESI:** Files that are exact duplicates based on the files' MD5 or SHA-1 hash values.  For emails with attachments, the hash value shall be generated based upon the parent-child grouping and only messages in which the parent document and all attachments are exactly the same will be considered duplicates.  Thus, for family documents, attachments will not be eliminated as duplicates unless the parent email and all attachments are also duplicates.

**Family Groups:**  A document and all other documents in its attachment range, emails with attachments, files with extracted embedded files or OLE documents, and email or other documents together with any documents referenced by document stubs or via links to internal or non-public document sources within those emails or other documents, all constitute family groups.

**Load File:** Electronic .dat file that is used to import all required production information into a document database, including document images, extracted and/or OCR text, native files where required, and associated metadata, as well as information indicating document and page breaks, and document relationships such as those between an email and its attachments and a document and information related to embedded content.

**Metadata:** Information about ESI that is created by the file system or application, embedded in the document or email and sometimes modified through ordinary business use.  Metadata of the ESI describes, inter alia, how, when, and by whom ESI was received, created, accessed and/or modified.

**Native Format:** Format of ESI in the application in which such ESI was originally created or stored.

**OCR:** Optical character recognition technology used to read paper documents or electronic images of documents and output such documents to a searchable text format,

**PDF:** Portable document format used to electronically present documents, including text formatting and images.

**Producing Party:** Party in the above-captioned matter that produces documents.

**Receiving Party:** Party in the above-captioned matter to whom documents are produced.

**TIFF:** Tagged Image File Format is a computer file format for storing images.

C.     **GENERAL AGREEMENTS**

    1.     Bates Stamping

The Producing Party will Bates stamp all ESI and hardcopy documents excluding any native files (*i.e.*, audio/video files, Excel spreadsheets, and PowerPoint presentations) by electronically "burning" onto each image a legible, unique Bates number that includes an alpha prefix along with a fixed number. Each Producing Party will have its own Bates-stamp numbering. For Defendant, the Bates-stamp will, at minimum, bear its name and the page number (*e.g.*, "HOP ENERGY 000001"). For Plaintiff, the Bates-stamp will contain "MELVILLE" followed by the page number (*e.g.*, "MELVILLE 0000001"). Unless it would obscure, conceal, or interfere with any information appearing on the document, the number must appear on the lower right-hand corner of the document. The appropriate confidentiality level of the document, if any, pursuant to the Court's Joint Stipulated Protective Order, will be disclosed on the lower left-hand corner of the document.

If a document is produced in native format (*i.e.*, audio/video files, excel spreadsheets, and PowerPoint Presentations), a single-page Bates stamped TIFF image slip-sheet containing the confidential designation and text stating that the document has been produced in native format should also be provided. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.

    2.     No Designation of Discovery Requests

The Producing Party shall identify the source(s) of ESI that contain(s) relevant and responsive documents (e.g., custodial files or database productions). Productions shall comply with FRCP 34(b)(2)(E).

    3.     Privilege and Work Product Claims

    a.     The Parties agree to comply with Federal Rule of Civil Procedure 26(b)(5) and Local Civil Rule 26.2 when asserting a claim that any document, communication, testimony, or other item is subject to a claim of privilege (such as the attorney-client privilege) or protection under the work product doctrine or any other applicable doctrine that might prevent the document's, communication's, testimony's, or other item's disclosure in this action. With respect to production of ESI, the Producing Party shall prepare and serve a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5) and Local Civil Rule 26.2 within twenty-one (21) days of each production.

    b.     No redactions for relevance may be made within a produced document or ESI item. For redacted items which were originally ESI, all metadata fields will be provided and will include all non-redacted data. Redacted documents shall be identified as such in the load file provided with the production. A document's status as redacted does not relieve the Producing Party from providing all of the metadata required herein. Only documents that are entirely privileged shall be fully withheld from production; documents containing a combination of privileged and non-privileged information shall be produced with privileged portions redacted.

  c. If any document is fully withheld on account of privilege, to avoid the loss of context due to an "orphaned" email or attachment the entire message-attachment shall still be produced with the withheld document slip-sheeted with a Bates-stamped TIFF image, and the Bates number identified on a corresponding privilege log.  If a claim of privilege applies to only a portion of a document, the document should be produced, and the portion claimed to be privileged obscured and stamped "redacted."

  d. Privilege and redaction logs should be produced on a document-by-document basis with each production and shall be accompanied by an Excel copy of the log.  The PDF copy will be the official log of record. Each successive privilege and redaction log shall include each prior log such that the privilege log is a running log.  Each time a party produces their respective privilege and redaction log the Producing Party shall identify the location of all new entries.

  e. The following documents presumptively need not be included on a privilege log:

    i. The Parties do not need to log any withheld documents or communications regarding this matter or the litigation captioned *Callery v. HOP Energy, LLC,* No. 20 Civ. 3652 (CMR) (E.D. Pa.) sent directly (but not copied or blind-copied) to or from outside counsel after June 6, 2020.

    ii. Documents not responsive to the requesting party's (hereto referred as the "Requesting Party") substantive document requests and otherwise not required to be produced.

  f. Privilege Logs should contain the following information:

    i. a sequential number associated with each Privilege Log record;

    ii. the date of the document, which may be extracted in an automated fashion via available metadata;

    iii. the Bates numbers of documents redacted or withheld with a slip-sheet;

    iv. the author(s) of the document, which may be extracted in an automated fashion via available metadata, if applicable;

    v. the sender(s), addressee(s) and/or recipient(s) (including "cc" and "bcc" recipients), if applicable;

    vi. the file name or if an email, the subject line of the document, which may be extracted in an automated fashion via available metadata;

    vii. a key with the information about the individuals associated with the log entries that would be needed for the Requesting Party to assess the privilege (i.e., company/organization and which of them are attorneys);

    viii. File Name, File Path, and, for non-emails, Date Created, Date Last Modified; Custodian;

      ix. the type of document (e.g., letter, memorandum, email);

      x. a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; and

      xi. the type or nature of the privilege asserted (i.e., attorney-client privilege; work product doctrine).

4. <u>Inadvertent Production</u>

The production of privileged or work-product protected documents, including ESI, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding if, after learning of such disclosure, the Producing Party promptly gives notice either in writing, or later confirmed in writing, to the Receiving Party that such information was inadvertently produced. The Receiving Party shall then treat such information in accordance with the requirements set forth under Federal Rule of Civil Procedure 26(b)(5)(B). Any challenge to the production and claw back of documents, including ESI, containing privileged or work-product protected documents shall conform to Federal Rule of Civil Procedure 26(b)(5)(B). Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged information before production.

5. <u>Data Integrity</u>

The Producing Party may not reformat, scrub, or alter the ESI, including the metadata, to intentionally downgrade the usability of the data.

6. <u>Search Methodology</u>

The Parties agree that they will cooperate in good faith regarding the disclosure and formulation of appropriate search methodology, search terms, and protocols to narrow the pool of collected documents to a set to undergo review for possible production. The Parties shall meet and confer and hereby adopt the search methodology outlined in the items below to limit the volume of documents to be reviewed and produced. Agreement on an ESI source, search term, or search methodology does not relieve the Party of its obligations under the Federal Rules to conduct a reasonable search and produce all relevant and responsive materials of which it is aware.

    a. The Receiving Party shall serve requests for production that may include ESI, to which the Producing Party will respond.

    b. The Parties shall agree on a list of custodians and non-custodial data sources with potentially responsive information. All information shall then be collected from those sources.

    c. The Producing Party's collection from the agreed-upon custodians and non-custodial data sources shall be done in a manner that is consistent with widely-accepted best practices for the collection of ESI and the Producing Party shall use methods of collection and

processing that preserve the integrity of document metadata, and of parent-child and family group relationships such as the association between attachments and parent documents, or between embedded documents and their parents, or between documents, including, emails or messaging or communication posts with document stubs or links to internal or non-public documents and those stubbed or internal or non-public documents so linked.

     d.     The Receiving Party will propose an initial set of search terms (including Boolean searches containing one or more key words) to identify potentially relevant information.

     e.     The Producing Party shall respond to the proposed terms, propose additional search terms as necessary, and provide the following information:

    i. A full description of any prior filtering or culling that has been, or is to be, applied to the collection prior to application of the proposed search terms;

    ii. Whether they believe discoverable documents are in a language other than English, and identify any additional such languages;

    iii. To the extent available or known, a list of all semantic synonyms to the requested search terms. Semantic synonyms shall mean, without limitation, code words, terms, phrases or illustrations, acronyms, abbreviations, or non-language alphanumeric associational references to relevant ESI, or information that may lead to relevant ESI;

    iv. A list of all known or reasonably identifiable alternate versions of search terms, such as common misspellings, including those which refer to individual people such as all forms of email addresses and nicknames.

    v. The data sources included in the collection against which the terms are to be run;

    vi. The number of documents in the collection; and

    vii. A tally of all the words that appear in the collection, and the number of documents containing each term;

    viii.   A glossary of industry and company terminology;

    ix. All relevant project and code names;

    x. All non-privileged responsive documents of which the producing party is aware which would not be identified by any of their proposed terms;

    xi. A privilege log of all privileged responsive documents of which the producing party is aware which would not be identified by any of their proposed terms;

    xii. The Producing Party's basis, *e.g.*, a point estimate of recall for a simple random sample drawn from the collection against which the search terms were

applied, for determining that their search terms would identify a reasonable percentage of the responsive documents within the collection.

 f. The Receiving Party shall have the right to propose modifications of the proposed terms as well as additional search terms.

 g. The Producing Party will generate concept lists which include document count and relevancy score on each single word in the proposed search terms and provide the Receiving Party with such lists. The parties shall meet and confer as appropriate on including additional search terms from the concept lists.

 h. The Producing Party will then provide an initial "hit report" 'indicating the number of hits in connection with the proposed custodians and search terms. The Parties will then meet and confer regarding proposed revisions to the initial hit report.

 i. In the event of a claim of undue burden with respect to any search terms proposed by the Requesting Party, the Producing Party will provide a hit report which includes the following with respect to each proposed or modified search term in the collection:

  i. The number of documents with hits for that term;

  ii. The number of unique documents, i.e., documents which do not have hits for any other term, for that term;

  iii. The number of family members, including the documents with hits, of the documents with hits for that term;

  iv. The number of unique family members of the documents with hits for that term.

 j. ID's in items (i) through (iv) above are to be produced in an Excel file.

 k. The hit report will also include the total number of documents in the collection against which the search terms were applied, the total number of unique documents containing hits, and the total number of unique family members, including the documents with hits, of the documents with hits.

 l. The Parties shall meet and confer to resolve disagreements over the search terms or their application.

 m. The procedures set forth supra shall be repeated until agreement or impasse is reached. The Parties may not declare an impasse until they have gone through the procedures set forth supra for at least five "rounds" of search term proposal, search, and hit report. In the event of impasse, the matter may be submitted to the Court or its designee for resolution.

 n. Once the procedures set forth above are completed and the keyword list is finalized, the Producing Party shall use the keyword list to search the ESI of the agreed-upon custodians and non-custodial data sources. The parties shall then meet and confer to determine whether the

7

Producing Party shall perform a linear manual review or whether the parties will negotiate a TAR protocol to be applied to the producing party's entire collection from the agreed-upon list of custodians and non-custodial data sources with potentially responsive information. The Producing Party shall thereafter promptly produce responsive and non-privileged documents to the Receiving Party on a rolling basis with productions occurring within at least 21 days of one another and privilege logs of documents withheld from each production, if any, within twenty-one (21) days of each production.

   7.   Discrete Document Collections

Identified discrete document collections such as Defendant's tabulations and/or databases showing the charges at issue in this litigation on an aggregate and per Class Member basis, shall be produced in their entirety without regard to whether or not each document in the collection has been identified as possibly responsive, or deemed to be or classified as, responsive, or, if search terms are used, contains a search term, except that privileged documents in such a collection may be withheld and listed in a privilege log as specified herein.

   8.   Known Discoverable Documents

Documents known by the Parties or their counsel to be responsive shall be produced within a reasonable time of their discovery and shall be produced without regard to whether such documents contain a search term, except that privileged documents may be withheld and listed in a privilege log within twenty-one (21) days of their discovery.

   9.   Additional or Alternate Methodologies for Documents from Certain Custodians and Non-Custodial Data Sources

Upon request, the Parties will meet and confer to address the need for and implementation of additional or alternate methodologies for identifying possibly responsive documents from custodians and non-custodial data sources that may warrant such treatment.

   10.   Mobile and Handheld Device Documents and Data

To the extent mobile and handheld device data is discoverable in this matter, the parties will meet and confer on acceptable formats and collection methodologies.

   11.   Other Filtering or Culling Technologies

Prior to use by any Producing Party, the Parties must meet and confer to disclose, discuss, and agree upon any other proposed use of technologies not specified herein to reduce the number of documents identified for classification or to be processed, reviewed, or produced (e.g., file type culling, e-mail thread suppression, etc.). Use of these technologies to reduce the reviewable collection or production, other than as described herein, requires the consent of the Requesting Party and would be subject to a separate mutually agreeable protocol for the use of such technologies to be negotiated by the Parties and may require an adjustment of the search methods specified herein.

12. <u>Social Media</u>

To the extent social media is discoverable in this matter, the parties will meet and confer on acceptable formats and collection methodologies.

13. <u>Databases</u>

Production of databases or other structured data ("databases") or other aggregated or application data will be the subject of separate agreements, as needed, and is excluded from this Protocol, except for Sections A–C.5, C.8, C.11, C.14–D.1, D.4, and F. To the extent a response to discovery requires production of information contained in databases, the Parties will cooperate in the exchange of information concerning such databases and data sources to facilitate discussions on productions and production format, and agree to meet and confer to discuss an appropriate production protocol for information from such databases, including but not limited to whether native production is warranted for some or all of such data. Defendant will not produce database data prior to meeting and conferring and reaching agreement with Plaintiff on a production format and protocol.

14. <u>Exception Files</u>

The Parties will use reasonable efforts and standard industry practices to address documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). The Parties will meet and confer regarding procedures that will be used to identify, access, and process Exception Files. If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for determination.

15. <u>Shared Resources</u>

Shared resources should be produced as separate custodians if responsive custodians have access to them or if they contain responsive documents. The name of the group having access would be used as the custodian name, i.e. Human Resources Dept.

16. <u>Third Parties</u>

a. Defendant will promptly notify Plaintiff if they become aware of any additional third parties with potentially relevant ESI.

17. <u>Reservation of Right</u>

The Parties will meet and confer regarding any additional data sources and any search process, review, or production issues as necessary and appropriate.

As a result of investigation and/or discovery, the Parties may identify additional data sources that may need to be searched or preserved pursuant to the foregoing and will promptly disclose any additional data sources that may contain relevant or responsive information. The Parties will meet and confer about preserving such ESI as any additional data sources are identified. Each Party reserves the right to request additional information about specific ESI

identified as not reasonably accessible, if the Requesting Party can demonstrate that relevant and responsive information that is not otherwise cumulative of information already produced can only be found through such additional efforts. The parties shall negotiate in good faith with regard to whether such additional efforts are required and who shall bear the costs of any such additional discovery. With respect to metadata, the parties agree that even if all metadata is not produced, it will be preserved in the event it becomes relevant at a later date.

**D.      ELECTRONICALLY STORED INFORMATION**

      1.      Production in Reasonably Usable Form

      a.      The Parties shall produce ESI in a reasonably usable form. Except for ESI to be produced in native format (namely (1) audio/video (*e.g.*, .wav, .mpeg, .avi), (2) spreadsheet files (e.g., Excel), and (3) presentation application files (*e.g.*, PowerPoint files) except as provided in the last two sentences of this paragraph), such reasonably usable form shall be in color TIFF form with extracted text and associated metadata as set forth in Attachment A. If the Receiving Party, for good cause, seeks production in native format of specifically identified ESI that was produced originally in TIFF form, the Producing Party shall respond reasonably and in good faith to any such request. The Producing Party is under no obligation to produce ESI in a native format to the extent the ESI is subject to a claim of privilege or other protection from production either in whole or in part. If redactions are required, such ESI will be produced in TIFF pursuant to attachment A hereto.

      b.      The Producing Party may redact information solely based on any applicable privilege, including the attorney-client privilege and the attorney work-product privilege. Each redaction shall be indicated clearly on the document. For native Excel files requiring redaction, the Producing Party shall redact by overwriting the data contained in a particular cell, row, column or tab with the word "REDACTED." Native PowerPoint presentations (including speaker notes and "hidden" slides) that require redactions shall be produced as images. All redacted documents will be identified as such within the "REDACTED" field in the .DAT.

      2.      Email Threading

No email or email attachment may be withheld from production because it is included in whole or in part in a produced more inclusive email. Parties may use email threading for their own internal review and other internal processes.

      3.      Avoidance of Duplicate Production

Parties may deduplicate within each custodian (Custodian/Vertical Deduplication) using hash values. The hash values of email families shall be calculated on the entire email family, and the hash values of emails which contain BCC values shall include those BCC values in the calculation. A party shall not be required to produce duplicates of documents; however, if a duplicate document is attached to multiple distinct parent files, the duplicate attachment shall be produced with each parent unless withheld for privilege, and no document which is not an attachment shall be withheld because it is a duplicate of a document which has been produced as an attachment to a parent file.

4. <u>De-Nisting</u>

Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced. Identification of NIST list matches will be through MD5 Hash values.

E. **DOCUMENTS THAT EXIST ONLY IN HARDCOPY (PAPER) FORM**

Custodial documents that exist in the normal course of business only in hardcopy form shall be scanned and produced in accordance with the procedures set forth in Attachment A. In scanning documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.*, paper documents should be logically unitized). Parent-child relationships (the association between attachments and their parent documents) shall be preserved. In the case of an organized compilation of separate documents -- for example, a binder containing several separate documents behind numbered tabs -- the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields. Original document orientation shall be maintained (*i.e.*, portrait to portrait and landscape to landscape).

The Parties shall meet and confer regarding the production of any noncustodial sources that exist only in hardcopy form prior to production. The scanning of original hardcopy documents does not otherwise require that the scanned images be treated as ESI; specifically, the Producing Party is not required to create metadata fields for scanned hard copy documents, except where indicated in Attachment A.

F. **BEST EFFORTS FOR COMPLIANCE.**

The parties shall use their best efforts to comply with and resolve any differences concerning compliance with any provisions of this Order. If a Producing Party cannot comply with any aspect of this Order, such party shall inform the Requesting Party in writing before the time of production why compliance with this Order is unreasonable or not possible. No party may seek relief from the Court concerning compliance with this Order until it has met and conferred with the other party.

Dated: New York, York
December 20, 2023

| **WITTELS MCINTURFF PALIKOVIC** | **NIXON PEABODY LLP** |
|---|---|

By: /s/ J. Burkett McInturff
J. Burkett McInturff
Ethan D. Roman
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (917) 775-8862
Facsimile: (914) 775-8862
jbm@wittelslaw.com
edr@wittelslaw.com

By: /s/ Matthew T. McLaughlin
Matthew T. McLaughlin
Kevin Saunders
53 State Street,
Boston, MA 02109
(617) 345-6154
mmclaughlin@nixonpeabody.com
ksaunders@nixonpeabody.com

*Attorneys for Defendant*

By: /s/ Jonathan Shub
Jonathan Shub
SHUB & JOHNS LLC
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken PA 19428
Telephone: (610) 477-8380
jshub@shublawyers.com

*Attorneys for Plaintiff
and the Proposed Class*

PURSUANT TO STIPULATION, IT IS SO ORDERED

SO ORDERED.

/s/ Victoria Reznik

Hon. Victoria Reznik, U.S.M.J.

Dated: 12/21/23
White Plains, New York

**ATTACHMENT A**

1. **IMAGES**:
   - Produce documents in Single Page Group IV TIFF files
   - Image Resolution at least 300 DPI
   - Color
   - File Naming Convention: Match Bates Number and end with .tif or .tiff extension
   - Insert Placeholder image for files produced in Native form
   - Original document orientation shall be retained
   - The Producing Party has the option of producing in .pdf format, in which case there shall be one .pdf file for every document. The file name for each such document shall match the Beg Bates for the document and end with a .pdf extension.

2. **FULL TEXT EXTRACTION / OCR:**
   - Produce full extracted text for all file types of ESI (Redacted text will not be produced)
   - Production format: Single text file for each document, not one text file per page
   - File Naming Convention: Match Beg Bates Number and end with .txt extension
   - The Producing Party need not produce extracted text for searchable .pdf files

3. **LOAD FILE SPECIFICATIONS:**
   - **Images Load File:** Opticon OPT file
   - **Metadata Load File:** Concordance DAT file with field header information added as the first line of the file. Export using Concordance default delimiters
   - **Extracted TEXT:** Reference File Path to TEXT file in DAT file
   - **Native Files Produced:** Reference File Path to Native file in DAT file

4. **ESI PRODUCTION METADATA FIELDS:**
   - **BegBates:** Beginning Bates Number
   - **EndBates:** Ending Bates Number
   - **BegAttach:** Beginning Bates number of the first document in an attachment range
   - **EndAttach:** Ending Bates number of the last document in an attachment range
   - **Custodian:** Name of the Custodian of the File(s) Produced — Last Name, First Name format
   - **FileName:** Filename of the original digital file name
   - **FilePath**: Original file/path of the location where the item was located at the time of collection. This should include location, and, for e-documents and e-attachments, file name, and file extension. Folder names and path should be included, and, for emails and attachments collected from a container such as a .pst, the full folder path within the container should be included. Any container names should be included in the path.
   - **Extension:** File extension of email or non-email document
   - **NativeLink:** Path and filename to produced Native file
   - **EntallSubject:** Subject line extracted from an email message

13

- **Title:** Title field extracted from the metadata of a non-email document
- **Author:** Author field extracted from the metadata of a non-email document
- **From:** From field extracted from an email message
- **To:** To or Recipient field extracted from an email message
- **Cc:** CC or Carbon Copy field extracted from an email message
- **BCC:** BCC or Blind Carbon Copy field extracted from an email message
- **DateSent:** Sent date of an email message (mm/dd/yyyy format), with the time and time zone preserved
- **TimeSent:** Sent time of an email message (mm/dd/yyyy format), with the time and time zone preserved
- **DateRcvd:** Received date of an email message (mm/dd/yyyy format)
- **TimeRcvd:** Received time of an email message (hh:mm:ss format)
- **ConversationId:** email thread identification ID
- **DateCreated:** Date that a file was created (mm/dd/yyyy format)
- **TimeCreated:** Time that a file was created, with time and time zone preserved
- **DateLastModified:** Last modification date of a non-email document
- **TimeLastModified:** Last modification time of a non-email document, with time and time zone preserved
- **LastModifiedBy:** Identity of the individual who last modified a document – Last Name, First Name
- **AttachmentCount:** Number of attachments to a document
- **AttachementNames:** Names of documents attached to a document, separated by semi-colons
- **Fingerprint:** MD5 or SHA-1 has value generated by creating a binary stream of the file
- **ProdVolume:** Identifies production media deliverable
- **ExtractedText:** File path to Extracted Text/OCR File
- **Redacted:** "Yes," for redacted documents; otherwise, blank
- **RedationReason:** Basis for redaction. If more than one, separate reasons by semi-colons
- **HiddenContent:** Yes/No to indicate if image produced should show any hidden data
- **HasTrackChanges:** Yes/No to indicate if Word document produced contains tracked changes
- **HasRevisions:** Yes if a Word document with revisions, otherwise No or empty
- **HasComments:** Yes if a Word or Excel document with comments, otherwise No or empty
- **HasHiddenText:** Yes if a Word document has hidden text, otherwise No or empty
- **HasHiddenSlides:** Yes if a PowerPoint document has hidden slides, otherwise No or empty
- **HasSpeakerNotes:** Yes if a PowerPoint document has speaker's notes, otherwise No or empty
- **HasHiddenRows:** Yes if an Excel document has hidden rows, otherwise No or empty

14

- **HasHiddenColumns:** Yes if an Excel document has hidden columns, otherwise No or empty
- **HasHiddenWorksheets:** Yes if an Excel document has hidden worksheets, otherwise No or empty
- **HasVeryHiddenWorksheets:** Yes if a Excel document has very hidden worksheets, otherwise No or empty

5. **PAPER DOCUMENTS METADATA FIELDS:**
   - **BegBates:** Beginning Bates Number
   - **EndBates:** Ending Bates Number
   - **BegAttach:** Beginning Bates number of the first document in an attachment range
   - **EndAttach:** Ending Bates number of the last document in attachment range
   - **Custodian:** Name of the Custodian of the File(s) Produced- Last Name, First Name Format
   - **ProdVolume:** Identifies production media deliverable
   - **Page Counts** (PGCOUNT)
   - **Text Path** (TEXTPATH).

6. **CONFIDENTIALITY DESIGNATIONS:** Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file. For native files, confidentiality designations will be endorsed on the lower left corner of all slip sheets inserted for native files. Confidentiality designations for native files may also have the term "CONFIDENTIAL" appended to the file name as reflected in Paragraph 17 below.

7. **PARENT-CHILD RELATIONSHIPS:** Parent-child relationships (e.g., the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to No. 4 above. Moreover, embedded or hyperlinked data (except logos, letterheads or backgrounds) on a file, files with extracted or embedded files or OLE documents, and email or other documents together with any documents referenced by document stubs or via links to internal or non-public document sources within those emails or other documents, shall be treated as attachments.

8. **DYNAMIC FIELDS:** Files containing dynamic fields such as file names, dates, and times will be produced showing the field code (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

9. **ENGLISH LANGUAGE:** To the extent any data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

10. **ENCRYPTED FILES**: To the extent ESI is identified that is encrypted by a password or otherwise, the Producing Party shall take reasonable steps to identify a working password

15

for the ESI so the ESI may be unencrypted at the Receiving Party's request. The Producing Party is under no obligation to specifically retain any vendor, specialist, or other individual or entity to unencrypt ESI with unknown passwords.

11. **EMBEDDED OBJECTS:** Embedded files in Microsoft Office and .RTF files will be extracted as separate files and produced as attachments to the file in which they were embedded, except for images embedded in emails, which shall not be produced separately.

12. **ARCHIVE FILE TYPES:** Archive file types (e.g., .zip, .rar) shall be uncompressed for processing decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files but need not be separately produced. Each file contained within an archive file shall be produced (unless subject to a claim from production under any applicable privilege or the work product doctrine), and the reference to the parent archive file will be provided in the child file name. If the archive file is itself an attachment, that parent/child relationship shall also be preserved.

13. **HIDDEN CONTENT AND TRACK CHANGES:** Hidden content, tracked changes or edits, comments, notes and other similar information viewable within the native file shall also be imaged if the file is produced as an image.

14. **TIME ZONE:** The preferred time zone of processing ESI is Eastern Standard Time. Care should be taken, however, that any alteration of time zone during processing does not interfere with or alter original metadata of that ESI. The Producing Party shall consistently produce all ESI processed using the same time zone.

15. **REPLACEMENT PRODUCTIONS:** Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced. If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

16. **PRODUCTION NUMBERING:** The Producing Party shall take reasonable steps to ensure that attachments to documents or electronic tiles are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each TIFF image will have its assigned production number electronically "burned" onto the image.

17. **FILES PRODUCED IN NATIVE FORMAT:** Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation, and ending with the appropriate file extension. The original file name will be identified in the Load File. For each native file produced, the production will include a TIFF image slip sheet indicating the production number of the native file and the confidentiality designation if any, and state "File Provided Natively."

18. **PRODUCTION MEDIA:** Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic

format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (*e.g.*, ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery.