

March 21, 2024

**Via ECF**
Hon. Victoria Reznik
United States District Court
300 Quarropas St.
White Plains, NY 10601

Re:     *Melville v. HOP Energy, LLC*, No. 21 Civ. 10406 (KMK) (VR)

Dear Judge Reznik,

Plaintiff and the Proposed Class respectfully submit this discovery letter motion requesting a pre-motion conference pursuant to Local Civil Rule 37.2 and Your Honor's Individual Rule 2.A.

Defendant HOP Energy, LLC ("HOP") is the nation's second largest home heating oil company. HOP's heating oil rates are governed by the pricing term in the form contract HOP requires customers to sign. Plaintiff alleges that HOP's variable rates breached its pricing term. During the relevant period, HOP employed various versions of its customer contract, which versions contain minor pricing term variations. For eight months, HOP has failed to provide the information needed to link its heating oil sales to the pricing terms governing those sales. HOP has produced data for millions of customer heating oil purchases, yet based on the discovery produced to date, Plaintiff has no way to determine what pricing term applies to any given sale. After having exhausted multiple alternate means of obtaining this key information, Plaintiff hereby seeks leave to promptly take a limited three-hour Rule 30(b)(6) deposition (that does not count toward the seven-hour presumptive limit) in the hopes of finally identifying a way to link HOP's sales to the contract terms HOP itself drafted and imposed on its customers.[1]

## A. Linking HOP's Variable Rates to the Governing Pricing Term Is Critical and Feasible

HOP sells heating oil in eight northeastern states. ECF 31 ("FAC") ¶ 1. Here, Plaintiff's contract is for "automatic delivery" of heating oil for a variable price that is contractually guaranteed to be HOP's "Promotional Prevailing Retail Price for First Year Customers for home heating oil that is in effect at the time of delivery." *Id.* ¶¶ 7, 9. In denying HOP's motion to dismiss, Judge Karas construed this pricing term and found that "[a] reasonably intelligent person could construe the use of the words 'promotional' and 'prevailing' in the phrase 'our Promotional Prevailing Retail Price' to indicate that Defendant's price would be discounted from, or, at the very least, not be markedly higher than, the prevailing retail price in [Plaintiff's] region." ECF 24 at 17.

Plaintiff alleges that HOP charged much more than the prevailing retail price, as shown by three separate heating oil data sources. FAC ¶¶ 1, 14–26. The three data sets all show closely aligned prevailing prices over 18 months; conversely, HOP's rates were ***always*** substantially higher. *Id.* ¶ 15. Additionally, because HOP claims its pricing term gives it unfettered rate-setting discretion, Plaintiff alleges that HOP breached the duty of good faith and fair dealing when it exercised any

---

[1] Per the Court's Individual Rule 2.A, Plaintiff certifies that on March 12, at 4:30 pm the parties held an approximately one-hour telephonic meet and confer regarding the issues raised herein, during which impasse was declared.

such discretion. FAC ¶¶ 63–65. Sustaining this claim, Judge Karas noted that the factfinder may conclude that "Defendant violated a 'duty of good faith' that it owed to less-informed consumers in providing something as universally necessary as utility services." ECF 24 at 22.

The pricing term applicable to Plaintiff, however, is not the only pricing term HOP used. For example, HOP offers a variety of plans not at issue in this litigation, including a "Capped Price Program," fixed-rate automatic delivery, and "on-demand" plans. There are also minor (likely immaterial) differences in HOP's variable rate pricing terms.

Accordingly, to prove Plaintiff's liability theories—that HOP's rates breach its pricing term or, alternatively, are set in bad faith—and to determine membership in the proposed Class, it is critical for Plaintiff (and HOP) to identify the pricing term governing any given sale. Indeed, considering HOP's duty to follow the pricing term, HOP should have this information at the ready.

HOP has produced data for the millions of transactions as well as a coding system showing the pricing "plan" governing the sale. In other words, HOP's own sales data evinces a linkage between any given sale and company pricing "plan" or mechanism. Plaintiff thus believes that there is an efficient way to connect HOP's rates to the governing contract terms. As detailed below, over the last eight months, Plaintiff has exhausted multiple alternate means for obtaining this information and a limited 30(b)(6) deposition is the next, most logical, step.

**B. History of Plaintiff's Efforts to Obtain this Key Discovery**

During a July 18, 2023 status conference, HOP began claiming it lacked a systematic way to identify the pricing terms governing any given sale. Plaintiff then requested an early Rule 30(b)(6) deposition to connect the dots. Your Honor denied this request as premature and directed the parties to confer and "if [Plaintiffs] are still not able to get the answers you need" the Court would revisit "a 30(b)(6) or some other form of inquiry[.]" Ex. B, July 18 Tr. 29:4–18.

Twelve weeks later, on October 10, 2023, with virtually no progress from HOP, Plaintiff renewed his 30(b)(6) request. ECF 75. During the ensuing conference, HOP admitted that "there isn't a policy or practice within HOP Energy that allows you to be able to identify the type of contracts that applied to particular [purchases]" and that "there's not a meaningful way for [HOP] to say" for any given purchase "what did the contract look like[.]" Ex. C, Oct. 31 Tr. 11:4–21.

The Court then directed the parties to develop a sampling methodology to identify the various permutations of HOP's customer contract. Ex. C at 24:22–25:25. Thereafter, Plaintiff proposed a sampling methodology, but HOP refused to engage (ECF 85 at 2) and instead, produced a non-randomized sample of 400 contracts that it had produced in a different case. ECF 83 at 2.

Your Honor then directed the parties to explore stipulating to the applicable pricing terms, which the Court made clear "is what we're focused on" and that "the plaintiffs are reasonable in wanting to understand how specific charges in the database relate to the contracts[.]" Ex. D, Nov. 29 Tr. 23:6–8, 27:11–13. To draft a stipulation, Plaintiff sought certain information that HOP refused to provide, with defense counsel explaining to the Court:

> [Plaintiff] can ask that as part of discovery. They can ask a witness that. But I don't think that it's appropriate for us to be, you know, essentially providing testimony answers on these sorts of things. . . . They basically want us to, you know, take on

>    -- you know, answer additional interrogatories, effectively, or deposition testimony
>    by counsel, and I think that goes too far.

*Id.* at 26:17–27:9.  On December 12, Plaintiff nevertheless proposed a stipulation (ECF 87 at 1) which HOP rejected.  As an alternative, Plaintiff agreed to accept HOP's production of its 200,000+ executed customer contracts.  ECF 94.  Plaintiff has now reviewed those contracts, but absent a manual pairing of all 200,000+ contracts to the millions of transactions in the database, Plaintiff cannot connect the applicable contracts to the charging data.

On March 12, the parties met and conferred.  Defendant refused to consent to a brief deposition limited to questions regarding the linkage between the charging data and contractual pricing terms.  An impasse was declared.  Plaintiff therefore seeks leave to take a limited three-hour 30(b)(6) deposition that does not count toward Plaintiff's presumptive seven-hour limit.

## C.  Plaintiff Has Good Cause to Take a Limited Rule 30(b)(6) Deposition

Courts can extend Rule 30(d)'s time limits for good cause.  Fed. R. Civ. P. 30(a)(2) & (d)(1).  There is ample good cause here.  HOP is unwilling to provide information linking its sales data to the applicable pricing term—information that should have been provided at the inception of discovery.  Plaintiff needs this linkage to streamline discovery and class issues and prepare for dispositive motions.  After eight months, a Rule 30(b)(6) deposition is the logical next step.

Moreover, because the need for this limited deposition is HOP's own making, it should not count toward Plaintiff's presumptive seven-hour limit.  *See Bogardus v. Ansonia Pub. Sch.*, No. 3:17 Civ. 1407, 2020 WL 13659465, at *4 (D. Conn. May 12, 2020) (granting leave for additional Rule 30(b)(6) testimony on limited topics).[2]  Plaintiff has also waited long enough for this information should not be forced to wait until HOP has substantially completed document discovery, as HOP has only produced a tiny fraction of the roughly 800,000 documents recalled by the parties' search terms.  Resolution of this issue should not be further delayed because HOP has failed to review documents in a timely manner.  *See Aloi v. Moroso Inv. Partners, LLC*, No. 11 Civ. 2591, 2013 WL 6909151, at *7 (D. Md. Dec. 31, 2013) ("Defendant should not be able to benefit from its own delays in producing documents[.]").  Finally, Plaintiff should not have to run the risk that proceeding with a Rule 30(b)(6) deposition now could preclude him from others in the future.[3,4]

Accordingly, Plaintiff requests leave to take a three-hour Rule 30(b)(6) deposition promptly that does not count toward Plaintiff's presumptive seven-hour limit.  Such deposition would be limited to topics about Defendant's database data and contracts applicable to its customers.  *See* Ex. A.

---

[2] *See also Wesley v. Muhammad*, No. 05 Civ. 5833, 2008 WL 4386871, at *5 (S.D.N.Y. Sept. 17, 2008) ("[Defendant's] underlying assumption that an institution may shield itself from discovery by utilizing a system of recordkeeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expenditure is incorrect.").

[3] In any event, if Plaintiff waited and noticed a single Rule 30(b)(6) deposition covering all topics, HOP would likely need to designate multiple witnesses—one to testify about the technical aspects of HOP's customer database, and another to testify about merits issues.  Plaintiff's proposed Rule 30(b)(6) topics are attached as Exhibit A.

[4] While it is not settled that good cause is required for a second 30(b)(6) deposition, the Court need not confront that question because there is ample good cause here.  *See Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 5:16 Civ. 125, 2019 WL 8272776, at *5 (D. Vt. Aug. 28, 2019) ("There is some disagreement as to whether the leave requirement of Rule 30(a)(2)(A)(ii) applies if a party seeks a second Rule 30(b)(6) deposition[.]").

Thank you for the Court's consideration of this matter.

                                                                       Respectfully submitted,

                                                                       /s/ Daniel J. Brenner
                                                                       Daniel J. Brenner

cc:   All counsel of record (via ECF)