Exhibit B

```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ---------------------------------------x
 3  RYAN MELVILLE, on behalf of himself
    and all others similarly situated,
 4
                              Plaintiff,
 5                                          21 CV 10406(KMK)
         -vs-                               Teleconference
 6
    HOP ENERGY, LLC,
 7
                              Defendant.
 8  ---------------------------------------x

 9                              United States Courthouse
                                White Plains, New York
10                              July 18, 2023

11                  ** VIA TELECONFERENCE **

12  Before, THE HONORABLE VICTORIA REZNIK, Magistrate Judge

13  APPEARANCES:

14  WITTELS McINTURFF PALIKOVIC
         Attorneys for Plaintiff
15       18 Half Mile Road
         Armonk, New York 10504
16  BY:  J. BURKETT McINTURFF
    --and--
17  SHUB & JOHNS, LLC
         Attorneys for Plaintiff
18       Four Tower Bridge
         200 Barr Harbor Drive
19       Suite 400
         West Conshohocken, Pennsylvania 19428
20  BY:  JONATHAN SHUB

21  OTTERBOURG, P.C.
         Attorneys for Defendant
22       230 Park Avenue
         New York, New York 10169
23  BY:  PAULINE McTERNAN
         WILLIAM M. MORAN
24       ANDREW HALPERN
         ALEXANDRA COSIO-MARRON
25  *Proceedings recorded via digital recording device*
```

071823                          Proceedings

1              THE COURT:  Good morning.  Can everyone hear me?  This

2   is Judge Reznik.

3              MS. McTERNAN:  Yes.

4              MR. McINTURFF:  Yes, Your Honor.

5              THE COURT:  Wonderful.  So this is Melville v. Hop

6   Energy.

7              Will the parties introduce themselves to me, starting

8   with the plaintiff?

9              MR. McINTURFF:  Good morning, Your Honor.  This is

10  Burkett McInturff on behalf of plaintiff and the proposed class.

11             MR. SHUB:  Good morning, Your Honor.  Jonathan Shub on

12  behalf of plaintiff and the putative class.

13             MS. McTERNAN:  Good morning, Your Honor.  Pauline

14  McTernan of Otterbourg, P.C. on behalf of defendant, and I'm

15  joined by my colleagues:  William Moran, Andrew Halpern, and

16  Alexandra Cosio-Marron.

17             THE COURT:  Thank you.  Could you repeat your last

18  name for me, please?

19             MS. McTERNAN:  Sure.  McTernan.

20             THE COURT:  McTernan.  Thank you.  And will you be

21  speaking on behalf of the defendant this morning?

22             MS. McTERNAN:  I will.

23             THE COURT:  Okay.  Wonderful.

24             So we called this status conference I think initially

25  just to update me on the status of the case, but I understand

1   that in the interim there has been a dispute about discovery.

2   So before we dive in, has there been any positive progress on

3   that front, Mr. McInturff?

4          MR. McINTURFF:  Your Honor, when you said "positive

5   progress," do you mean positive progress on discovery or

6   positive progress on the parties' dispute?

7          THE COURT:  On the dispute.  Well, why don't we start

8   with this:  Is there, beyond the dispute that the letter -- the

9   letters indicated exists, what is the status of discovery?

10          MR. McINTURFF:  So the parties have -- are in ongoing

11   meet-and-confers regarding defendant's responses to plaintiff's

12   document requests and interrogatories.  We are expecting a

13   production from defendant -- it would be the defendant's first

14   production -- by the end of the day today.  Plaintiff is going

15   to make their document production.  We are aiming to make that

16   production tomorrow.  The defendant responded to our proposed

17   ESI protocol last week, and we are working on a response to

18   that.

19          So generally, the parties are working together in

20   discovery, and we have been active in discovery, but we do have

21   this dispute, and there are probably two or three other issues

22   that we might reach final impasse on, but the parties are still

23   discussing; but should we not be able to work those issues out,

24   we would be contacting the Court in the next couple of weeks, I

25   suspect.

1           THE COURT:  Okay.  And what is the -- can you remind

2   me what the fact discovery deadline is?

3           MR. McINTURFF:  I don't have it in front of me.  I

4   will look now.

5           MS. McTERNAN:  January --

6           MR. McINTURFF:  I think it's -- sorry.  Go ahead,

7   Pauline.  Do you have it?

8           MS. McTERNAN:  I'm sorry.  Yeah, I was just looking at

9   the scheduling order.  The deadline for fact discovery is

10  January 18th.

11          THE COURT:  Okay.  And at this point do the parties

12  anticipate that you will be able to meet that deadline?

13          Mr. McInturff?

14          MR. McINTURFF:  I'm hopeful.  We haven't seen any

15  documents yet from the defendant, and we haven't started search

16  term negotiation or ESI negotiations, but I'm hopeful.  We are

17  certainly going to do our level best.

18          THE COURT:  Okay.  So, Ms. McTernan, is there anything

19  you wanted to add more generally about the status of discovery?

20  We will separately get to the dispute.

21          MS. McTERNAN:  No.  I think that that provided a good

22  summary of it.  You know, we provided things last week that

23  relate to ESI that we'll continue to meet and confer about in

24  the near future, and yeah, we are still anticipating the

25  documents to go out today, and so I think -- I think that was a

1  fair summary.

2          THE COURT:  Okay.  So then why don't we turn to the

3  letters that were written?

4          Mr. McInturff, do you want to start by addressing

5  them, please?

6          MR. McINTURFF:  Sure, Your Honor.

7          So as set forth in plaintiff's letter, the dispute is

8  about the defendant's vagueness objection to the class

9  definition in the complaint, which includes customers who were

10 served under a contract that promised a promotional prevailing

11 retail price for first-year customers, as well as any other

12 customers who were served under a contract that combined the

13 concept of prevailing retail price with either the concept

14 "promotional" or the concept so that and as set forth in our

15 letter, the defendant lodged a vagueness objection to use of our

16 term "concept" in preliminarily defining the class.

17         And at bottom, the real concern here is we do not

18 agree with defendant's proposed revision to the class definition

19 to take out the word "concept" and substitute it with the word

20 "words" because we are concerned that that may limit the scope

21 of contracts that are subject to the preliminary class

22 definition, and we've tried to meet and confer to explain that

23 when we use the word "concepts," we are talking about -- you

24 know, a synonym of concepts would be the notion of or the idea

25 of these particular phrases that are in the defendant's form

1   contract; and the defendant is taking the position, which they

2   took in their letter at ECF 50, that they cannot tell what types

3   of additional contracts plaintiffs may be referring to, and we

4   don't believe that that is a credible objection.  We think that

5   the terms are clear, and that this vagueness objection could

6   potentially limit the scope of the proposed class before we've

7   had adequate fact discovery.  And as set forth in our letter, we

8   are entitled under the rules to take discovery to -- in order to

9   support our class certification motion.

10          So we've met and conferred on this issue.  Defendants

11  continue to take the position that they don't understand the

12  class definition and that they cannot produce discovery or they

13  cannot tell what contracts would fall under the class

14  definition, and so that would unilaterally redefine the class,

15  and we are moving to strike that redefinition for a number of

16  reasons as set forth in our letter.  I won't go into them, but

17  fundamentally, we think that defense counsel does understand

18  what the class definition is and can search for discovery for

19  proposed class members, and so we are asking that the Court

20  direct them to do so.

21          THE COURT:  Okay.  Ms. McTernan?

22          MS. McTERNAN:  Sure.  So I guess two main points:

23  First is that, you know, we have been raising this question of

24  what is intended by the words "concepts" ever since, you know,

25  since we filed our answer to the amended complaint, and it's

1  just been a consistent question to us since that's the way the

2  class has been defined.  And, you know, we are just coming about

3  this practically.  You know, we are not trying to be nitpicky

4  here.  We are the ones that are going to be charged with

5  performing a reasonably diligent search, and, you know, when we

6  sit back and look at the request, you know, it's easy to kind of

7  look for contracts that have, you know, pricing terms that set

8  the customer's price in a way that combines the words

9  "promotional" or "first-year customers with prevailing retail

10  price" and also with the exact language that's in plaintiff's

11  complaint.  But once, you know, plaintiff -- and, frankly, when

12  we lodged the vagueness objection, we didn't think that this

13  would be -- you know, become such an issue because we had

14  assumed that that's what we -- you know, we were doing search

15  terms as an example.  We had assumed that we would be searching

16  for these terms, but -- but now that it's turned into a broader

17  issue, we are just not -- you know, we just have not received

18  clarity on what -- what more than the actual words themselves

19  would be captured by, you know, phraseology of concepts.  You

20  know, it's just unclear that we are just trying to perform our

21  duties, you know, and avoid misunderstandings, you know.  We

22  don't -- introducing the word "concepts" here kind of introduces

23  a subjectiveness that just may -- we are worried will cause

24  further misunderstanding.

25              So that is the reason for the vagueness objection.  We

1  are not trying to be nitpicky, but we are just being charged

2  with actually finding these things, and we just to date have not

3  had clarity on what more these -- the word "concepts" is

4  supposed to catch in respect to this needs requests.

5         THE COURT:  So first question:  You mentioned that the

6  parties are working out an ESI protocol.  How are the searches

7  for these documents being conducted?  Through search terms?  Is

8  this ESI that we are looking through or are we looking through

9  hard copies?  Can you give me an explanation of that, Ms.

10 McTernan?

11        MS. McTERNAN:  Sure.  So the ESI protocol -- so little

12 bit subject to negotiation -- but there will be -- I think the

13 parties are agreed that there will be a search term process

14 where, you know, defendant proposes a set of search terms that

15 will then be commented upon by the plaintiffs for the ESI, and

16 we expect that the bulk of the -- the bulk of the discovery will

17 be ESI.  You know, we have an ESI vendor.  This case will

18 involve a lot of data like database information and the like and

19 things stored in the data.  So we do anticipate the bulk of it

20 being the ESI, which would be captured by the search terms.

21        THE COURT:  And that would be true even for these

22 contracts that are referred to in the letters where you are

23 searching for the terms or the concepts of promotional

24 prevailing retail price; is that true?

25        MS. McTERNAN:  Yes, for the most part except I would

1    like to caveat that, which is, we have pulled -- our client has

2    pulled things that are kind of stored in an easy access format.

3    You know, things within the last year are obviously easier to

4    obtain than things that have since made it onto the servers.  So

5    to the extent that contracts, you know, used -- again, the time

6    period goes back to 2015 here, right?  So to the extent that

7    contracts have been migrated to servers, which will be searched

8    for the ESI, that -- those will be, you know, encompassed by

9    that search.  But we have separately pulled, you know, and

10   looked through contracts that are kind of applicable in the past

11   year.  So that would be sort of like the carve-out.

12            THE COURT:  And what's the volume of those documents

13   that are just being done more manually in sort of the old-

14   fashioned way versus the search terms?

15            MS. McTERNAN:  The volume would differ significantly.

16   I mean, the bulk would be the ESI.  You know, these -- their

17   requests call for exemplar contracts.  So, you know, there are

18   like --

19            (Brief interruption)

20            MS. McTERNAN:  Sorry.  Can you hear me?

21            THE COURT:  Yes, I can.  Go ahead.

22            MS. McTERNAN:  So the bulk of it will be the ESI, the

23   vast bulk of it.

24            THE COURT:  Okay.  So, Mr. McInturff, in light of the

25   fact that the parties are going to be working out an ESI

1  protocol, and search terms are going to be used, why wouldn't

2  this dispute sort of just be resolved through the list of search

3  terms that you agree will be used to search for the contracts

4  and other document requests that include the concepts of the

5  promotional prevailing retail price for first-year customers?

6              MR. McINTURFF:  Let's take this in two parts.

7              First, it's news to us that the -- this, the

8  defendant, which is one of the largest home heating oil

9  companies in the Northeast that serves tens of thousands, if not

10  hundreds of thousands of customers, does not have a way to

11  quickly gather the form contracts that it drafts and asks

12  customers to sign and produce those.

13              We've been operating under the understanding that the

14  company had a central repository of form contracts.  They may be

15  in certain folders on a server, but they are not -- they do not

16  require search terms.  I've never had a case with a consumer-

17  facing company that had to use search terms to identify the

18  contracts that it utilized over the class period, and I'm quite

19  surprised at the notion that we would have to use search terms

20  to gather contracts.

21              So I expect that the defendant will be able to gather

22  the contracts that were applicable during the relevant period --

23              (Brief interruption)

24              MR. McINTURFF:  -- and that they will be able to

25  produce the contracts during the applicable period, and that

071823                          Proceedings

1   does not require the use of search terms.

2           And then, as my colleague or Ms. McTernan mentioned,

3   there is significant data, charging data and database data

4   that's going to be produced with respect to potential class

5   members.  So the first step is to look at these contracts and

6   identify which contracts -- which customers were served under

7   which contracts and then to produce the data associated with

8   those customers.  Again, that is not a search term related

9   search and is not going to require search terms.

10          Now, when it comes to discovery about conversations

11  about potential class members, I agree that we will have to use

12  words instead of, you know, just the concepts; but when we

13  propose search terms reflective of our class definition, we are

14  going to propose synonyms to terms like "first-year customers,"

15  and "promotional."  Like we would propose terms like "first

16  anniversary" or "new customers," and as a synonym of

17  promotional we would propose terms like "introductory" and

18  "discounted" or "incentive."

19          But the point here is not about how the parties are

20  going to go about searching for documents.  The point is, is

21  that we have defined a class in a cogent manner, and the

22  defendant has an obligation.  For example, we asked, turn over

23  the contracts that fall within the class definition.  The

24  defendant has not come back to us and said, Oh, here is this

25  subset of contracts we're on the fence about.  Instead, they are

1   claiming that they don't understand what the class definition

2   is, which again, that is not a credible objection; and to hear

3   that they envision using search terms to identify the contract

4   is quite surprising.

5           We were told on our last meet-and-confer that they had

6   already identified 500 different versions of contracts, so we

7   said, Produce those.  So I don't know how many other versions

8   counsel thinks exist beyond the 500 that they have already

9   identified, but this is not -- this is not a dispute about

10  search terms.  This is a dispute about reading our discovery

11  requests fairly and understanding the class as defined and

12  responding to discovery in that light, and there is no ambiguity

13  in a class definition that says, you are going to -- you are

14  going to -- customers that were served under the exact language

15  of the plaintiff or any other contract that combines the

16  concepts that are the same concepts that are -- under which the

17  plaintiff would serve, those people are class members.  It's a

18  very simple definition.

19          And again, our concern here is the defendants are

20  being overly cautious about what they say about that, you know,

21  it's not workable.  It's too hard.  It causes us to have to use

22  discretion, and they are using that as a way not to respond to

23  very straightforward discovery.  All they need to do is produce

24  the contracts.  Once they have produced the contracts, the

25  parties can meet and confer about class membership.  And if

1  there are any differences, and the defendant is confused, or if

2  we have followups, we will make them.  But we haven't gotten a

3  single contract yet, and defendant is taking this position.

4  Again, I'm quite surprised at the idea that they would -- they

5  would need search terms in order to identify the contracts that

6  they use to serve their customers.

7          So the contract needs to just simply be produced, and

8  we can work through this issue in that fashion.  But for the

9  defendant to be saying that they don't understand the class

10 definition, and that they've got to substitute the word "word"

11 for "concepts" is quite concerning to us because what we think

12 is actually going on is that the defendant is attempting to

13 narrow the class before we've had discovery.

14         THE COURT:  So in your view, Mr. McInturff, are --

15 this dispute about the terminology "concept," you are primarily

16 concerned about the defendant's using that to curtail discovery

17 with respect to contracts themselves; but with respect to the

18 other document requests, it sounds like you agree those would be

19 subject to the search terms that you will be agreeing upon for

20 the ESI?  Do I have that right?  Are there two categories of

21 where these document requests fall?

22         MR. McINTURFF:  That's generally right.  If I could

23 just explain further?  The contracts are going to be used to

24 define the class.  So once we have the contracts, we will define

25 the -- the class will be defined, and so then we do the data

1  productions for charging data and comparative data, we will be

2  able to identify which individuals were served under a contract

3  that falls within the definition of the class.  That's the first

4  step.  So the first step is:  Produce the contracts.

5          Now, when we get to the point of searching managerial

6  emails, I agree we are going to have to pick search terms, but

7  the fact that we are going to have to pick search terms doesn't

8  mean that the defendants can pretend to not understand the class

9  definition.  I mean, in all seriousness, how can they pretend

10 that they don't understand what we've written?

11         MS. McTERNAN:  May I respond?

12         THE COURT:  Yes.  Ms. McTernan, can you respond to --

13 well, I will let you respond more generally, but specifically I

14 want to hear from you about the concept of just producing all

15 the contracts not subject to search terms versus your contention

16 that you will be using search terms.

17         MS. McTERNAN:  Right.  Right.  So it's our -- listen,

18 if we could just go and get all the contracts, you know, that

19 would be one thing, but our understanding is that our client's

20 files are not organized that way.  And our -- you know, a lot of

21 it is actually within the database itself that I was

22 referencing.  So we -- if we could, just, you know, get all of

23 these contracts, that would be one thing, but our understanding

24 is that the client's files are kept in another manner that would

25 require it to be -- the bulk of the -- excuse me -- the

1  contracts to be searched by way of the ESI.

2          And so, you know, and frankly, I just want to put on

3  the record that we reject the notion that we are pretending or

4  that it's not credible.  You know, we are operating in good

5  faith here.  We are trying to exercise, you know, our duties

6  here in a manner that makes sense and, you know, that is

7  compliant.  So that's why we have even raised the objection is

8  because we want to get to the bottom of what we are looking for.

9  I mean, this is the first that we have heard that, you know,

10  that there are synonyms like "discounted," "first anniversary."

11  We've never been given any light into what "concepts" is

12  supposed to get.

13          So, you know, I think it would be helpful -- this was

14  helpful to learn, you know, that some of these synonyms, you

15  know, that we should be looking for.  This is the first I'm

16  hearing of it.  So again, we are just trying to operate in good

17  faith here and just figure out what we are to be searching for.

18          THE COURT:  So, Ms. McTernan, why is this not like

19  looking for contracts or discovery with substantially similar

20  language to promotional or first-year customers with prevailing

21  retail price?  How would this differ?  Let's remove the concept

22  of, but if you were told, we want these contracts with this

23  language, and also look for contracts with substantially similar

24  language, would you object to that?

25          MS. McTERNAN:  I mean, I actually think that that's

1  more towards in the direction of being understandable, sort of
2  similar to what we are looking for; but the concepts is just --
3  I don't -- it's -- it wasn't workable for us.  But something
4  like, yes, similar.  So -- yeah.  I mean, I think that, you
5  know, if we are looking for "promotion" instead of "promotional"
6  or "discount" or something like that, I mean, I think that
7  that -- that is more understandable.
8          THE COURT:  But so do you understand, though,
9  Mr. McInturff's concern is that you may have contracts that are
10 related to the idea of being promotional or for first-year
11 customers or with prevailing retail price, but they may not use
12 that precise language; they may be using different language
13 altogether, but still be related to promotional or first-year
14 customers?  I'm not sure what that looks like, but I think the
15 idea is that sometimes when you are looking for -- if you are
16 just looking for the bare words of something, that may not
17 capture -- that may be limiting.  It may not capture the entire
18 universe of documents that still relate to that word.
19          So how would you address that?  And what is your view
20 about how to address that when you are reviewing these
21 contracts?
22          MS. McTERNAN:  Yeah, I mean, I guess as of now, we
23 have just been looking at for -- you know, again, we are trying
24 to find clarity on it, so I guess I don't have -- I want to know
25 what they're specifically looking for, and then we can look for

1  it.  You know, we have been looking for -- well, certainly the

2  words and different machinations of the words.  You know, it's

3  not them in like any certain order or anything like that.  And

4  so we are looking for -- and plus, you know, we are also going

5  to be searching for contracts in the database.  So, you know,

6  honestly, I think this is probably not going to be the bulk of

7  what we're doing.  I think the search terms will handle that,

8  but -- yeah.

9          THE COURT:  What's the volume of the database that you

10 are saying you wouldn't be using search terms for?  How many

11 contracts are we talking about?  How many pages of documents?

12         MS. McTERNAN:  That's not using the ESI?

13         THE COURT:  Yes.

14         MS. McTERNAN:  Well, that would just be the -- since

15 they're looking for exemplars, it would just be the form

16 contracts that are applicable in the last year or so.  So there

17 is like -- it's about a dozen.  It's not many.

18         THE COURT:  So this whole dispute that you are talking

19 about, this concept of when it refers to the database, we are

20 just talking about 12 documents?

21         MS. McTERNAN:  No, no, no.  Not relating to the

22 database.  This is just looking -- this is outside of the

23 database.

24         THE COURT:  Okay.  So as I understand it, these

25 contracts exist either in ESI -- in a database where you need to

1  do ESI searches --

2          MS. McTERNAN:  Yes.

3          THE COURT:  -- or some other form where you need to do

4  a more manual search; is that correct?

5          MS. McTERNAN:  Yes.

6          THE COURT:  So for the more manual search, what is the

7  volume of documents we are talking about for the contracts?

8          MS. McTERNAN:  That -- well, since they are looking

9  for exemplars, you know, we have exemplars used in the past

10 year, so that would be the 12 or so.  I haven't counted them

11 out.

12         THE COURT:  Right.  So that's just 12 documents.  And

13 is there some -- and when in finding those 12 exemplars, are you

14 limiting yourself to just using the words "promotional,"

15 et cetera, and that's what gets you 12, or are you giving all

16 exemplars --

17         MS. McTERNAN:  No.

18         THE COURT:  -- of every contract that you had in that

19 year?

20         MS. McTERNAN:  Right.  We are using all the exemplars,

21 and we've told them, by the way, that we will also -- you know,

22 there was a promotion -- there was one contract that referenced

23 promotional variable price program, and we said, you know, we

24 are going to give you that.  So we -- you know, we are not just

25 looking for these words.

 1            THE COURT:  Okay.  And so -- but your contention is

 2   for the rest, everything will require an ESI search term?

 3            MS. McTERNAN:  Yes.

 4            THE COURT:  Okay.  So my thinking here is that, first

 5   of all, I agree with the plaintiff that, you know, it's -- they

 6   define the class.  You may have issues with the definition for

 7   purposes of class certification, and you will make those

 8   arguments in good time, and -- but at this point, they are

 9   entitled to define their class the way they have defined it.

10            Having said that, for purposes of searching for

11   documents, I understand that the defendants need a way forward

12   to be able to search for those documents.  And in light of the

13   fact that some portion of these documents are going to be

14   produced using ESI search terms, it makes sense for the parties

15   to meet and confer about what those search terms will look like

16   so that the plaintiff can be assured that they are going to get

17   the broader set of documents that they believe fall within their

18   concepts of promotional prevailing retail price for first-year

19   customers, and that meets the defendant's need of being workable

20   so that they can actually apply those definitions and search --

21   apply those search terms and find the appropriate documents.

22            So in this case -- so I don't believe it makes sense

23   to -- for the defendants to continue to -- they should not be

24   standing on objections to vagueness for purposes of narrowing or

25   limiting discovery prematurely, but I don't think that that's

1  what's really happening here.  And I think what we need to do is

2  have the plaintiff -- the defendants produce the exemplar

3  contracts that they believe exist in that manual form; produce

4  all of them, all the exemplars that exist.  It does not look

5  like it's a big volume, and it may be slightly overbroad beyond,

6  you know, what you might believe are the concepts of promotional

7  prevailing retail price for first-year customers; but even so, I

8  think, I think that overbroadness would be de minimis.  It's not

9  a large volume.

10            For the remaining bulk of the documents, it looks like

11  this all comes down to negotiating search terms that make sense,

12  and I -- rather than have the Court impose what those search

13  terms are going to look like, I think the parties need to

14  continue to meet and confer.  Mr. McInturff needs to identify a

15  long list of search terms that he believes will meet his class

16  definition; that might subsume that class definition.  That will

17  include the concepts, not just the words of "promotional" or

18  "first-year customers with prevailing retail price," and you

19  should meet and confer, and the parties should then use those

20  search terms going forward to find the documents that are

21  responsive to the plaintiff's requests.

22            And I think if we -- if you can do that, I think all

23  of the disputes about limiting the definition prematurely to

24  removing concepts and including words will become moot because I

25  think it's right that the plaintiffs have the right to assert

1   their definition, and the defendants should not be substituting

2   new definitions of the class for purposes of discovery.

3              But as a practical matter, to be able to move forward

4   in discovery when you have ESI, you need to use search terms.

5   So that means the parties are going to need to figure out how to

6   search for the concepts of promotional and first-year customers

7   with prevailing retail price in a workable way that will be as

8   broad as the plaintiffs need, but will be feasible for the

9   defendants to use.

10             Does that make sense, Mr. McInturff?

11             MR. McINTURFF:  It does, Your Honor.  But if I could

12  ask for one clarification?  Last week during the meet-and-confer

13  defense counsel represented to us that they had identified 500

14  different exemplar contracts, and the issue that came up is we

15  thought, well, how different are these contracts from one

16  another?  We think that they are probably materially the same

17  and -- but defense counsel wasn't sure.

18             So again, the idea that the defense -- that defendant

19  needs to query a database to produce contracts is news to us,

20  and I don't understand why we were told that they had identified

21  500 different sets of contracts and can't just produce those.

22  If they can't -- if they are not able to analyze them or if they

23  don't believe it's efficient to analyze them, we will analyze

24  them.  But again, the idea that we would have to use search

25  terms to find contracts applicable to the defendant's customers

1  is quite unorthodox, and I don't understand if they represented

2  to us last week that they had already identified 500 different

3  exemplar contracts, why they can't produce them.

4          THE COURT:  Ms. McTernan, is there some -- what's the

5  discrepancy between the 500 you mentioned to Mr. McInturff and

6  the 12 you mentioned today?

7          MS. McTERNAN:  Sure.  So we didn't identify 500

8  contracts in the terms of like we have reviewed 500 contracts.

9  We were told by the client that there were upwards of 500

10 versions of the contracts over the years going back to, you

11 know, the eight-year period, but that's not to say that any were

12 actually identified or specifically, you know, reviewed; that

13 they were -- it's still the same thing that I mentioned earlier,

14 which is that the client has, you know, an easy access or

15 relatively easy access what they have in the past year, what

16 they have been using in the past year or so.  Everything else,

17 it's been migrated into the servers, which would be the subject

18 of the ESI.

19         This was just kind of an -- what we have been told by

20 the client about, you know, based on their knowledge of their

21 business.  You know, there are likely upwards of 500, you know,

22 versions of the contracts; not that we have specifically, you

23 know, been given a folder of 500 contracts or anything like

24 that.

25         MR. McINTURFF:  May I interrupt, Your Honor?

```
 1            THE COURT:  Yes.  Sure.  Go ahead.

 2            MR. McINTURFF:  So migrated to a server; a server is

 3   very different than a database.  Migrated to a server means it's

 4   on a server in a folder, and if they know they have 500

 5   different versions, again, we don't have to apply search terms

 6   to look for documents that can be easily identified and

 7   produced, and that's not the same as contracts being plugged

 8   into a database and then having to query the database.

 9            Again, these are the form contracts that customers

10   have to sign to accept service.  They are all the same.  If they

11   have -- whatever versions of the contract they have going back

12   over the class period, they should be produced.  They should

13   have been -- they should have been produced already, but I'm not

14   hearing anything from counsel saying that they can't simply go

15   get these contracts.  They are saying they want to use search

16   terms, but they've got to be able to go get the contracts and

17   produce them.

18            THE COURT:  So, Ms. McTernan, why -- maybe I

19   misunderstood how you described what needs to be done.  Why

20   can't you just produce all versions of the contract that covers

21   the class period, whether or not they include the language that

22   we have, this promotional prevailing retail price, et cetera?

23            MS. McTERNAN:  Right.  So our understanding is that

24   the way that -- we have asked our client if they store contracts

25   in a folder like counsel is suggesting, and they said no.  And
```

1   they are in the database and sort of part of the bigger, you

2   know, bigger trove of data because that's where they are saved.

3          The client does not -- it's our understanding that the

4   client does not just have a folder on its drive -- you know, on

5   its shared drive or something that has all of the contracts

6   applicable for the period, and we don't have blank forms of

7   them.  It's just, you know, when we are talking exemplars, we

8   are just talking about someone's actual contract that we are

9   using as an exemplar.  So that's just not the way that they are

10  organized at the client.

11         THE COURT:  Can you go on a database right now and

12  just pull all the contracts that exist over the class period?

13         MS. McTERNAN:  That, I don't know.  I haven't -- I

14  haven't investigated that.  I'm not sure.

15         THE COURT:  So I mean, because it does seem strange

16  that your client wouldn't be able to, if they wanted to, pull

17  all the contracts in a query to be able to have a -- collect

18  them without even looking at them or applying search terms.  So

19  that's what I am trying to understand.  Because what I -- I

20  don't understand how you are saying there is a -- what is -- I'm

21  unclear about where you are talking about a folder existing that

22  you have to do some manual search versus this ESI search.

23         MS. McTERNAN:  Sure.  Well, let me clarify something

24  about the database.  I mean, to the extent that we can just, you

25  know, look -- our client can just, you know, just get the

1  contracts, even if they could, the issue would be the volume

2  because it would be getting, you know, upwards of a hundred

3  thousand.  Our client has upwards of a hundred thousand or plus

4  customers.  So it would be pulling each individual's contracts.

5  So that -- because of a volume concern as well, that is going to

6  be subject to the ESI search and not something that -- it's not

7  a search that my client can run, you know, sitting in an office

8  because it would just take up -- the volume would just be too

9  large.

10          THE COURT:  So what is the -- when you are referring

11  to needing to do a manual search, that didn't include what you

12  just described, the hundred thousand --

13          MS. McTERNAN:  No.

14          THE COURT:  Okay.  That was something different?

15          MS. McTERNAN:  That was something different, yes.

16          THE COURT:  Okay.  I see.

17          Okay.  So I think it still goes back to what I

18  originally said, which is, I don't know -- however many versions

19  exist, I think just to the extent you have a manual -- that this

20  manual group of documents that are not subject to any sort of

21  ESI searches, all of those exemplars should be produced during

22  the class period to the plaintiff as soon as possible without

23  limitations on the language that's used in them so that you

24  don't have this issue of concepts versus words that use

25  promotional prevailing retail price.

1          For the remaining volume, I can't -- I don't have

2    enough information today to know -- to sort through this issue

3    of the database and how the searches can be done.  I will take

4    you at face value, Ms. McTernan, that the volume is 100 -- you

5    know is very large, and to be able to manage production of those

6    documents, unless the plaintiffs want all hundred thousand

7    contracts, you will be applying search terms, which brings me

8    back to the first point I made, which is, I think the bulk of

9    this dispute needs to come down to negotiations over search

10   terms that will be applied so that you can pull the relevant

11   documents.

12          So that's where -- what I think needs to be done.  So

13   what I would like the parties to do is, I want the plaintiffs to

14   produce the exemplars that can be produced as soon as possible,

15   and I want the parties to meet and confer about the search terms

16   to be used on the ESI, which would encompass these contracts.

17   And I think I would like to have a status letter sent to me in

18   two weeks, a joint status letter giving me an update on where

19   things stand on this issue.

20          MR. McINTURFF:  Your Honor, this is Burkett McInturff.

21   Can I be heard on one issue?

22          THE COURT:  Sure.

23          MR. McINTURFF:  Yes.  So what I hear from counsel is

24   they have hundreds -- more than a hundred thousand actual

25   contracts that were applied to class members or potential class

1  members, and that they have various versions of the contracts,

2  but that what they haven't identified is any sort of location of

3  where those various versions are.  Again, these are one-page,

4  two-page form contracts.

5       So we are completely confused at the idea that defense

6  counsel has not been able to find out from its client how these

7  contracts are being drafted over time and where the records of

8  the form, the actual forms -- because remember, each time when

9  they change the contract, they have got to go back to presumably

10 a Microsoft Word document and edit it -- so where those forms

11 are being kept.  And so we have asked about this in the

12 meet-and-

13 confer, and now I'm hearing counsel -- the revelations of

14 counsel about the database and the apparent inability to locate

15 where these forms are kept.  I think it might make sense for us

16 to take a limited 30(b)(6) deposition to get to the bottom of

17 this contract-drafting process.

18      And I will also say, we issued an interrogatory asking

19 for the names of the individuals involved in the contract-

20 drafting process, and we were given the very curious answer that

21 the only individual defense counsel could identify that was

22 involved in the contract-drafting process is the former CEO.  So

23 that person is not even an employee of the company.  So I think

24 that the quickest way to get to the bottom of this is, if Your

25 Honor will authorize a limited 30(b)(6) deposition, we could

 1  take it remotely, so that we can get to the bottom of this issue

 2  as to where the documents that are used to draft the contracts

 3  that are applied to these hundreds of thousands -- a hundred

 4  thousand customers, where those are stored.  They can't -- you

 5  can't operate a business without having records of the contracts

 6  that are being used.  And so I think that we can get to the

 7  bottom of this very quickly through a limited 30(b)(6)

 8  deposition.

 9          THE COURT:  Why do you think -- why would the Court --

10  you need the Court's permission to serve a 30(b)(6) notice?

11          MR. McINTURFF:  Because of the limits on 30(b)(6), you

12  know, you can only take one.  So we would request leave so as

13  not to toll the number of hours that we can -- that we would be

14  utilizing because, I mean, this is a 26(g) reasonable inquiry

15  issue.  I'm just -- I don't understand why we can't get a

16  straight answer.  So if we're having to go take a 30(b)(6) on

17  this, I think in all fairness, it shouldn't count towards our, I

18  think what, seven hours of 30(b)(6).

19          THE COURT:  Okay.  So what I think here is that -- I

20  mean, I think that maybe -- I think we -- let's put that to one

21  side for now.  I think that's -- it's probably premature.  I

22  think in this conference we have heard some news about the

23  database that was news to you.  I'm not in a position to be able

24  to get to the bottom of that on today's call because I think the

25  parties should meet and confer about the issues about this

1  database, how it is searched, so that you can get some answers

2  from Ms. McTernan and the defendant about how their documents

3  are stored and what's possible.

4          I think in two weeks' time send me a joint status

5  letter to determine whether this -- whether you have gotten to

6  the bottom of it, can apply search terms or if more information

7  is required, if you need a 30(b)(6).

8          I'm hopeful that, Ms. McTernan, you will, having heard

9  the confusion of the plaintiff about how documents are stored,

10 that you will be forthcoming about explaining precisely how the

11 documents are stored on the database, how they can be searched

12 and queried, what the volume of that information is.  I would

13 expect all of that kind of information to be shared as part of

14 your meet-and-confer.

15         And then, Mr. McInturff, if you are still not able to

16 get the answers you need and feel that a 30(b)(6) or some other

17 form of inquiry is necessary, then we can discuss that in two

18 weeks' time.

19         MR. McINTURFF:  Thank you, Your Honor.

20         THE COURT:  Okay.  Is there anything else for today,

21 Mr. McInturff?

22         MR. McINTURFF:  No.  And I don't know if Your Honor

23 wanted to set a control date for another conference or not, but

24 that would -- that's the only other item I would raise.

25         THE COURT:  Okay.  So -- and, Ms. McTernan, anything

1  else from you?

2          MS. McTERNAN:  No.  Nothing further.

3          THE COURT:  Okay.  So I think two weeks from today I

4  would like a joint status letter from the parties about this

5  issue and where things stand.  I think I will wait to get that

6  letter.  I'm just looking at the calendar.  Excuse me.

7          Are the parties available during the week of -- well,

8  I'm trying to figure out -- let me -- I will set a control date

9  for a followup call after receiving the parties' letters, but I

10  will do it by minute entry because at the moment I don't know

11  yet what date will work best.  But are the parties around during

12  the week of August 7th?

13          MR. McINTURFF:  Plaintiff is available.

14          MS. McTERNAN:  Yes, Your Honor.

15          THE COURT:  Okay.  So I will see if I can set this

16  thing as a control date during that week, but that will be noted

17  on the minute entry for today's conference.

18          And with that, I will adjourn for today, and I will

19  hear from you in two weeks.

20          MR. McINTURFF:  Your Honor, this is Burkett McInturff.

21  I apologize.  Just to be clear, the status letter in two weeks,

22  that's a joint letter or do you want separate status letters?

23          THE COURT:  A joint letter.

24          MR. McINTURFF:  Okay.

25          THE COURT:  All right.  Thank you.