# Exhibit A

**Supreme Court of Pennsylvania**

**Court of Common Pleas**

**Civil Cover Sheet**

**CHESTER** County

| For Prothonotary Use Only: | |
| --- | --- |
| Docket No: | |
| | **2020-03904-CT** |

Filed and Attested by
PROTHONOTARY
23 Jun 2020 03:34 PM
S. Peery

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action**

☑ Complaint  ☐ Writ of Summons  ☐ Petition

☐ Transfer from Another Jurisdiction  ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
| --- | --- |
| **BRIAN CALLERY** | **HOP ENERGY, LLC** |

| Are money damages requested?  ☐ Yes ☑ No | Dollar Amount Requested:  ☐ Within arbitration limits |
| --- | --- |
| | (check one)  ☑ outside arbitration limits |

| Is this a Class Action Suit? ☑ Yes  ☐ No | Is this an MDJ Appeal?  ☐ Yes ☑ No |
| --- | --- |

Name of Plaintiff/Appellant's Attorney: Edward C Sweeney

☐ Check here if you have no attorney(are a Self-Represented [Pro Se] Litigant)

**SECTION B**

| **Nature of the Case:** | Place "X" to the left of the ONE case category that most accurately describes your *PRIMARY CASE.* |
| --- | --- |

If you are making more than one type of claim, check the one that you consider most important.

| **TORT** *(do not include Mass Tort)* | **CONTRACT** *(do not include Judgments)* | **CIVIL APPEALS** |
| --- | --- | --- |
| ___ Intentional | ✓ Buyer Plaintiff | Administrative Agencies |
| ___ Malicious Prosecution | ___ Debt Collection: Credit Card | ___ Board of Assessment |
| ___ Motor Vehicle | ___ Debt Collection: Other | ___ Board of Elections |
| ___ Nuisance | ___ Employment Dispute: | ___ Dept. of Transportation |
| ___ Premises Liability | ___ Discrimination | ___ Statutory Appeal: Other |
| ___ Product Liability *(does not include mass tort)* | ___ Employment Dispute: Other | ___ Zoning Board |
| | ___ Other | ___ Other: |
| ___ Slander/Libel/Defamation | | |
| ___ Other: | | |

| **MASS TORT** | **REAL PROPERTY** | **MISCELLANEOUS** |
| --- | --- | --- |
| ___ Asbestos | ___ Ejectment | ___ Common Law/Statutory Arbitration |
| ___ Tobacco | ___ Eminent Domain/Condemnation | ___ Declaratory Judgement |
| ___ Toxic Tort - DES | ___ Ground Rent | ___ Mandamus |
| ___ Toxic Tort - Implant | ___ Landlord/Tenant Dispute | ___ Non-Domestic Relations |
| ___ Toxic Waste | ___ Mortgage Foreclosure: Residential | ___ Restraining Order |
| ___ Other: | ___ Mortgage Foreclosure: Commercial | ___ Quo Warranto |
| | ___ Partition | ___ Replevin |
| **PROFESSIONAL LIABILITY** | ___ Quiet Title | ___ Other: |
| ___ Dental | ___ Other: | |
| ___ Legal | | |
| ___ Medical | | |
| ___ Other Professional | | |

*2020-03904-CT*

**Chester County**
**Court of Common Pleas**
**Cover Sheet**

Docket No:

**2020-03904-CT**

| Plaintiff(s): (Name, Address) | Plaintiff's/Appellant's Attorney(circle one) |
|---|---|
| **BRIAN CALLERY** | (Name, firm, address, telephone and attorney ID#) |
| 57 WEST 5TH AVENUE   COATESVILLE, PA  19320 | **Edward C Sweeney** |
| | (610) 594-1600 Wusinich & Sweeney LLC attorney ID#: 064565 |
| | 211 Welsh Pool Road Suite 236 Exton, PA 19341 |

| Defendant(s): (Name, Address) | Are there any related cases? Please provide case nos. |
|---|---|
| **HOP ENERGY, LLC** | |
| 4 WEST RED OAK LANE SUITE 310  WHITE PLAINS, NY  10604 | |
| **DDM ENERGY** | |
| 841 LINCOLN AVENUE   WEST CHESTER, PA  19380 | |

**Defendants who are proceeding without counsel are strongly urged to file with the Prothonotary a written statement of an address AND a telephone number at which they can be reached**

Commencement of Action (if applicable): __ Agreement for an Amicable Action __ Motion to Confirm Arbitration Award
Notice of Appeal

If this is an appeal from a Magisterial District Judgement, was appellant __ Plaintiff or __ Defendant in the original action?

Jury Trial Demanded ✓ Yes ___ No

**Nature of case if not on previous cover sheet - Please choose the most applicable**

| | |
|---|---|
| __ Annulment | __ Writ of Certiorari |
| __ Custody - Conciliation Required | __ Injunctive Relief |
| __ Custody - Foreign Order | __ Mechanics Lien Claim |
| __ Custody - No Conciliation Required | __ Issuance of Foreign Subpoena |
| __ Divorce - Ancillary Relief Request | __ Name Change |
| __ Divorce - No Ancillary Relief Requested | __ Petition for Structured Settlement |
| __ Foreign Divorce | |
| __ Foreign Protection from Abuse | |
| __ Paternity | |
| __ Protection from Abuse | |
| __ Standby Guardianship | |

| **Arbitration Cases Only** | **Notice of Trial Listing Date** |
|---|---|
| Arbitration Date | mm/dd/yyyy | Pursuant to C.C.R.C.P. 249.3, if this case is not subject to compulsory arbitration it will be presumed ready for trial twelve (12) months from the date of the initiation of the suit and will be placed on the trial list one (1) year from the date the suit was filled unless otherwise ordered by the Court. |
| Arbitration Time | hh:mm:ss | |
| Defendants are cautioned that the scheduling of an arbitration date does not alter the duty of the defendant to respond to the complaint and does not prevent summary disposition form occurring prior to the arbitration date. | |
| This matter will be heard by a Board of Arbitrators at the time and date specified but, if one or more of the parties is not present at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties. There is no right to a trial *de novo* on appeal from a decision entered by a judge. | To obtain relief from automatic trial listing a party must proceed pursuant to C.C.R.C.P. 249.3(b), request an administrative conference and obtain a court order deferring the placement of the case on the trial list until a later date. |

*2020-03904-CT*

| **File with:** Chester County Justice Center, Prothonotary Office, 201 W. Market St., Ste. 1425, PO Box 2746, West Chester, PA 19380-0989 |
| :---: |
| These cover sheets must be served upon all other parties to the action immediately after filing. |
| Submit enough copies for service. |

WUSINICH & SWEENEY, LLC
By: Edward C. Sweeney, Esquire      Attorney for Plaintiff
Attorney I.D. No. 64565
211 Welsh Pool Road, Suite 236
Exton, PA 19341
610-594-1600



| | | |
|---|---|---|
| BRIAN CALLERY | : | IN THE COURT OF COMMON PLEAS |
| 57 West 5th Avenue | : | CHESTER COUNTY, PENNSYLVANIA |
| Coatesville, PA 19320 | : | |
| | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION - LAW |
| vs. | : | |
| | : | |
| HOP ENERGY, LLC | : | |
| 4 West Red Oak Lane, Suite 310 | : | |
| White Plains, NY 10604 | : | |
| and | : | |
| DDM ENERGY | : | |
| 841 Lincoln Avenue | : | |
| West Chester, PA 19380 | : | JURY OF TWELVE DEMANDED |
| | : | |
| Defendants | : | CLASS ACTION COMPLAINT |

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney, and filing in writing with the court, your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

Lawyer Referral and Information Services
Chester County Bar Association
15 West Gay Street
West Chester, PA 19380
(610) 429-1500

*2020-03904-CT*

WUSINICH & SWEENEY, LLC       Attorney for Plaintiff
By: Edward C. Sweeney, Esquire
    I.D. No.: 64565
211 Welsh Pool Road, Suite 236
Exton, PA 19341
(610) 594-1600



| | |
|---|---|
| BRIAN CALLERY | :   IN THE COURT OF COMMON PLEAS |
| 57 West 5th Avenue | :   CHESTER COUNTY, PENNSYLVANIA |
| Coatesville, PA 19320 | : |
| | : |
|       Plaintiff | :   CIVIL ACTION - LAW |
|     vs. | : |
| | : |
| HOP ENERGY, LLC | : |
| 4 West Red Oak Lane, Suite 310 | : |
| White Plains, NY 10604 | : |
| | : |
|     and | : |
| | : |
| DDM ENERGY | : |
| 841 Lincoln Avenue | : |
| West Chester, PA 19380 | :   JURY OF TWELVE DEMANDED |
| | : |
|       Defendants | :   CLASS ACTION COMPLAINT |

## COMPLAINT

Plaintiff Brian Callery, individually and on behalf of all persons similarly situated, by

and through his undersigned counsel, files this Class Action Complaint against Defendants HOP

Energy, LLC and DDM Energy, and in support thereof alleges upon personal knowledge and or

upon information and belief:

### The Parties

1.  Plaintiff Brian Callery is an adult individual and resides in Chester County,

Pennsylvania at 57 West 5th Avenue, Coatesville, PA 19320.

1

*2020-03904-CT*

2. Defendant HOP Energy, LLC ("HOP Energy") is a limited liability company organized and existing under the laws of the State of Delaware. Its principal place of business is at 4 West Red Oak Lane, Suite 310, White Plains, NY 10604. HOP Energy does business in Chester County, Pennsylvania through its office located at 841 Lincoln Ave, West Chester, PA 19380.

3. HOP Energy provides residential and commercial heating oil and services to customers in Pennsylvania, Vermont, Massachusetts, Rhode Island, Connecticut, New Jersey, Delaware and New York. HOP Energy has nearly one hundred thousand customers.

4. Defendant DDM Energy ("DDM") is a business entity doing business in Chester County, Pennsylvania through its office located at 841 Lincoln Ave, West Chester, PA 19380. DDM's mailing address is P.O. Box 596, West Chester, PA 19381-0596. DDM is an affiliate, subsidiary or fictitious name for HOP Energy.

5. DDM provides residential and commercial heating oil and services to thousands of customers in the Chester, Bucks, Delaware and Philadelphia County areas.

**Events Giving Rise to This Claim**

6. Defendants advertise to the public on their website that they provide residential heating oil under three different pricing plans, Variable, Capped and Fixed. Defendants describe the Capped plan to the public as follows: "CAPPED – your home heating oil price follows the market but doesn't go above your CAP rate." Defendants describe the Fixed plan to the public as follows: "FIXED – your price does not change, and you can manage your home heating oil budget to this predictable monthly amount."

2

*2020-03904-CT*

7. Defendants advertise to the public on their website that: "At HOP Energy, our buying power across the northeast gives us access to the region's largest oil supply network and storage facilities, which means we have a consistent supply of home heating oil at competitive prices."

8. On April 2, 2020 Plaintiff entered into a contract with Defendants for provision of heating oil to Plaintiff's residence (the "Contract."). See Exhibit A.

9. Pursuant to the Contract, Plaintiff and Defendants agreed that for the period from April 2, 2020 to April 30, 2021, Defendants would provide, and Plaintiff would pay for, heating oil under a Capped Price Program. Defendants agreed to provide up to one thousand gallons of heating oil to Plaintiff at a price not to exceed $2.099/gallon, plus applicable taxes. Defendants promised that "if our prevailing retail price for home heating oil drops below the Capped Price during the Pricing Period, then you (i.e., Plaintiff) will pay our prevailing retail price for home heating oil."

10. On May 19, 2020 Defendants provided Plaintiff with 54 gallons of heating oil. Defendants charged Plaintiff $113.35, at the rate of $2.099/gallon.

11. Immediately after this oil delivery, Plaintiff telephoned Defendants and asked what their prevailing retail price for heating oil was. Defendants' agent who answered the telephone answered that Defendants' prevailing retail price for oil was $1.55/gallon. When Plaintiff stated that he was under contract and wanted to know why he was charged $2.099/gallon for heating oil, Defendants' agents transferred the call several times until a woman representative of Defendants informed him that Defendants' prevailing retail price for oil was $2.49/gallon. Plaintiff questioned why the first representative who answered the phone told him that the prevailing retail price for heating oil was $1.55/gallon. Defendants' representative responded that they were the sales department and did not know what the prevailing retail price of oil was.

3

12. Plaintiff believes and therefore avers that Defendants knew at the time they entered into the Contract that they did not intend to honor their promise to charge Plaintiff the actual prevailing retail price for heating oil, but rather had engaged in a scheme where they created a false, inflated "prevailing retail price" which they quoted to Capped Plan customers instead of the actual prevailing retail price (the "Fake Retail Price"). The Fake Retail Price bore no relation to the retail prices Defendants or other providers in the market actually quoted or charged for heating oil.

13. Plaintiff believes and therefore avers that Defendants signed numerous customers to contracts similar to Plaintiff's Contract, in which Defendants agreed to provide heating oil under the Capped Price Program. Plaintiff avers that Defendants have overcharged numerous customers under Capped Price Program contracts at their Capped Price or another artificially inflated price, instead of the actual prevailing retail price to which customers were entitled under their contracts.

14. Defendants' representation to the public that under their Capped Price Program "your home heating oil price follows the market but doesn't go above your CAP rate" was false and was a fraudulent inducement to enter into Capped Price Program contracts with Defendants.

## Class Action Allegations

15. Plaintiff brings this action as a class action pursuant to Pennsylvania Rules of Civil Procedure 1702, 1708 and 1709 on behalf of the following class: All persons who entered into contracts with Defendants for the delivery of heating oil to a residence, under terms including a capped pricing program and/or a prevailing retail price for the price of the heating oil, and who received delivery of heating oil during the time period commencing six years before the filing date of this action (the "Class Members").

4

*2020-03904-CT*

16. Plaintiff requests that the class be divided into sub-classes of (1) those Class Members who are residents of Pennsylvania (the "Resident Class"); and (2) those Class Members who are not residents of Pennsylvania (the "Non-Resident Class"). As to the Non-Resident Class, Plaintiff intends to see certification of an opt-in class pursuant to Pa.R.Civ.P. 1711(b).

17. The prerequisites to class certification under Pa.R.Civ.P. 1702 are met in that:

18. The members of the class are so numerous that joinder of all members is impractical. Plaintiff estimates that there are tens of thousands of Class Members. The precise number of Class Members may be determined from the Defendants' records.

19. The representative Plaintiff's claims raise questions of law and fact common to all Class Members. Among the questions of law and fact common to the class are the following:

      a.     whether Defendants' advertising of their heating oil programs was false, deceptive and confusing to the public;

      b.     whether Defendants' representation to Class Members that, under Defendants' Capped price heating oil contract, their home heating oil price follows the market but doesn't go above their CAP rate, was false, deceptive and confusing;

      c.     whether Defendants knew at the time they entered into heating oil contracts with the members of the class that the term "prevailing market price" was false, deceptive and intended to confuse the Class Members;

      d.     whether Defendants knew at the time they entered into contracts with the Class Members that they did not intend to honor their promise to charge Class Members the actual prevailing retail price for heating oil, but rather had engaged in a scheme where they created a false, inflated "prevailing retail price" which they quoted and/or charged to customers instead of the actual prevailing retail price (the "Fake Retail Price");

5

*2020-03904-CT*

e.   whether the Fake Retail Price bore no relation to the retail prices Defendants or other providers in the market actually charged for heating oil and/or quoted to the public when potential customers inquired as to Defendants' prices for heating oil;

f.   whether the Defendants concealed the Fake Retail Price scheme from customers and potential customers, including Class Members;

g.   whether Defendants have engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding;

h.   whether Defendants breached their contracts with members of the class by failing to charge the lesser of the Capped price or the prevailing market price;

i.   whether Defendants acted honestly and in good faith and fair dealing;

j.   whether Defendants engaged in wanton and outrageous conduct toward the Class Members.

20.   The claims of the representative Plaintiff are typical of, if not identical to, the claims of each member of the class because the representative Plaintiff and all Class Members entered into the same or similar contracts with Defendants, and received the same false, deceptive and confusing communications from Defendants regarding the Capped Price contract and the prevailing market price for heating oil.

21.   The representative Plaintiff will fairly and adequately protect the interests of all of the Class Members. He has retained competent counsel who are experienced in complex litigation and who will prosecute this action vigorously.   The representative Plaintiff will fairly and adequately assert and protect the interests of the class.  He does not have any interests antagonistic to the interests of the class. Representative Plaintiff has adequate financial resources to vigorously

*2020-03904-CT*

pursue this action, including an agreement by his counsel to prosecute this action on a contingent fee basis and to advance the reasonable and necessary costs and expenses of litigation.

22.  A class action provides a fair and efficient method for adjudication of the controversy pursuant to Pa.R.Civ.P. 1702(5) and 1708.

23.  <u>Common questions of law and fact predominate over individual questions</u>:  The questions of law and fact common to the Class Members predominate over any questions affecting only individual members.

24.  <u>The size of the class and likely difficulties in managing a class action</u>:  Plaintiff believes that there are tens of thousands of Class Members, and their claims are virtually identical. The class presents no unusual management difficulties.

25.  <u>The risks of separate actions</u>:  The prosecution of separate actions by individual members of the class would, as a practical matter, impair or impede the ability of others who are not parties to the individual actions to protect their interests, and Defendants could be confronted with inconsistent standards of conduct.

26.  <u>The nature and extent of any litigation concerning the controversy already begun by or against Class Members</u>:  To Plaintiff's knowledge, there is no other litigation concerning this controversy.

27.  <u>The appropriateness of this forum for resolving claims of this class</u>: This forum is appropriate because Plaintiff resides in this county and Defendants conduct business in this forum. There is no more appropriate forum for this action.

28.  <u>Complexity and expense of separate actions</u>:  The complexity of the issues and the expenses of discovery and litigating individual claims make it likely that a substantial number of Class Members would not, as a practical matter, be able to prosecute their claims.

7

*2020-03904-CT*

29. <u>Substantial recoveries by Class Members</u>:  The damages that may be recovered by individual Class Members will not be so small as not to justify a class action.

30.  As to the Counts seeking declaratory and injunctive relief, a class action provides a fair and efficient method for adjudicating the controversy and may be maintained as a class action because all the prerequisites of Pa.R.Civ.P 1708(1) through (5) are satisfied and because Defendants have acted or refused to act on grounds that apply generally to the class so that final declaratory relief is appropriate for the class as a whole.

## COUNT ONE -- BREACH OF CONTRACT

31.  Plaintiff incorporates the foregoing allegations as if set forth herein at length.

32.  Defendants have breached their contract with Plaintiff and the Class Members.

33.  Plaintiff and the Class Members have incurred damages as a result of Defendants' breach of contract.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor (1) enjoining Defendants from further breach of Plaintiff's contract; and (2) award damages in an amount in excess of $50,000.00, together with costs, and such other relief as the Court deems just and proper.

## COUNT TWO -- BREACH OF
## COVENANT OF GOOD FAITH AND FAIR DEALING

34.  Plaintiff incorporates the foregoing allegations as if set forth herein at length.

35.  Defendants have breached their covenant of good faith and fair dealing with Plaintiff and the Class Members.

36.  Plaintiff and the Class Members have incurred damages as a result of Defendants' breach of the covenant of good faith and fair dealing.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor (1) enjoining Defendants from further breach of the covenant of good faith and fair dealing; and (2) award

8

*2020-03904-CT*

damages in an amount in excess of $50,000.00, together with costs, and such other relief as the Court deems just and proper.

### COUNT THREE -- FRAUD

37.  Plaintiff incorporates the foregoing allegations as if set forth herein at length.

38.  Defendants have made false statements of fact, including the statement that under their Capped Price plan customers' heating oil price follows the market; the statement that Defendants charged competitive prices for heating oil; the statement that Defendants would charge Plaintiff and Class Members the lesser of their Capped Rate or the prevailing market price for heating oil; the statement that Defendants' prevailing market price for heating oil was $2.49/gallon; and the statement that Defendants' sales employees did not know the prevailing market price of heating oil.  In addition, Defendants fraudulently concealed their intention to charge Class Members far higher than prevailing market prices for heating oil.

39.  Defendants intended to deceive the Class Members by means of these statements and concealment and did deceive Class Members.  Class Members justifiably relied on Defendants' fraudulent statements to their detriment and sustained damages as a result.

40.  Plaintiff and the Class Members are entitled to punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor (1) enjoining Defendants from further fraudulent conduct; and (2) awarding compensatory and punitive damages in an amount in excess of $50,000.00, together with costs, statutory interest and such other relief as the Court deems just and proper.

### COUNT FOUR -- RESIDENT CLASS VERSUS DEFENDANTS --
### VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES
### AND CONSUMER PROTECTION LAW

41.  Plaintiff incorporates the foregoing allegations as if set forth herein at length.

9

*2020-03904-CT*

42. Defendants have engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding.

43. Pursuant to Section 201-9.2 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "Act"), Plaintiff and the Resident Class Members have purchased goods or services from Defendants primarily for personal, family and household use, and have suffered ascertainable loss of money or property as a result of Defendants' violation of the Act.

44. Plaintiff and the Resident Class Members are entitled to recover actual damages or one hundred dollars, whichever is greater, as well as treble damages, costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor (1) enjoining Defendants from further violation of the Act; and (2) awarding compensatory, punitive, statutory and treble damages in an amount in excess of $50,000.00, together with costs, attorneys' fees, statutory interest and such other relief as the Court deems just and proper.

## COUNT IV -- VIOLATION OF NEW YORK CONSUMER PROTECTION LAW

45. Plaintiff incorporates the foregoing allegations as if set forth herein at length.

46. Defendants have engaged in deceptive acts or practices in the conduct of their business in violation of the New York Consumer Protection Law, New York Gen Bus L § 349 ("NY CPL").

47. Plaintiff and the Class Members are entitled to recover actual damages or fifty dollars, whichever is greater, as well as treble damages, attorneys' fees and costs, pursuant to the NY CPL.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor (1) enjoining Defendants from further violation of the NY CPL; and (2) awarding compensatory, punitive and

*2020-03904-CT*

treble damages in an amount in excess of $50,000.00, together with costs, attorneys' fees, statutory interest and such other relief as the Court deems just and proper.

**COUNT V -- NON-RESIDENT CLASS VERSUS DEFENDANTS
(VIOLATION OF STATE CONSUMER PROTECTION LAWS)**

48. Plaintiff incorporates the foregoing allegations as if set forth herein at length.

49. Defendants have engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding.

50. The Non-Resident Class Members have purchased goods or services from Defendants primarily for personal, family and household use, and have suffered ascertainable loss of money or property as a result of Defendants' conduct.

51. Defendants have violated the Connecticut Unfair Trade Practices Act, 42 Conn. G.S. Ch. 735a.

52. Defendants have violated the Delaware Uniform Deceptive Trade Practices Act, 6 Del.L. Ch. 25.

53. Defendants have violated the Massachusetts Consumer Protection Law, M.G.L. Ch. 93A.

54. Defendants have violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2.

55. Defendants have violated the Rhode Island Deceptive Trade Practices Law, R.I.G.L. Title 6 § 6-13.1.1.

56. Defendants have violated the Vermont Consumer Protection Act, 9 V.S.A. § 2451-2482d.

57. The Non-Resident Class Members are entitled to recover actual damages and other relief as set forth in the consumer protection laws of their states of residence, as well as costs and reasonable attorneys' fees.

11

*2020-03904-CT*

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor (1) enjoining Defendants from further violation of the consumer protection laws; and (2) awarding compensatory, punitive and statutory multiplied damages in an amount in excess of $50,000.00, together with costs, attorneys' fees, statutory interest and such other relief as the Court deems just and proper.

Respectfully submitted,

WUSINICH & SWEENEY, LLC

Date: 06/22/2020

By: _____
Edward C. Sweeney, Esquire
Attorney for Plaintiffs

12

*2020-03904-CT*

## VERIFICATION

I, Brian Callery, hereby verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I further verify that false statements made therein are subject to the penalties of 18 Pa.C.S. 4904, relating to unsworn falsification to authorities.

Date: 06/22/20

Brian Callery

*2020-03904-CT*

# EXHIBIT A

*2020-03904-CT*

DocuSign Envelope ID: F0467238-7A00-4377-8696-132425A31194



**DDM Energy**
Retail Credit Agreement

P.O. Box 596
West Chester, PA 19381-0596

Phone : 888-835-3535
Fax : 610-692-8953

www.ddmenergy.com

| | | |
|---|---|---|
| Applicant: | Brian Callery | Phone: 4849474447 | Date: 04/02/20 |
| CoApplicant: | | Email: brian.callery@ebsheathcare.com | |
| Billing Addr: | 57 W 5th Ave, Coatesville, PA 19320 | | |
| Delivery Addr: 57 W 5th Ave   Coatesville PA 19320 | | | |

You agree that DDM Energy ('We' or 'Seller') will order a consumer report in connection with this application and subsequent consumer reports in connection with any updates, renewals or extensions of credit.  Upon your request, we will provide the name and address of the consumer credit agency furnishing such report to us. You understand that we will retain this application whether or not it is approved.

The Federal Equal Credit Opportunity Act prohibits us from discriminating against you in any way in the granting of credit.  The federal agency which administers compliance with this law is the Federal Trade Commission, Washington, D.C. 20580. We have given to you and you acknowledge receipt of a complete description of the terms and conditions of our Retail Credit Agreement, which are below, and the notice of Your Billing Rights which are included with this form.

This Agreement covers your purchase of home heating oil from us under a CAPPED PRICE PROGRAM, described below. The Capped Price set forth in this Agreement will be available until 04/05/2020. If you have not accepted this offer by signing and returning this Agreement to us by this date, the offer to purchase home heating oil at the Capped Price set forth  herein automatically expires and the Capped Price set forth below will not be available. You will need to contact us for the current Capped Price that we are offering at such later date.

**CAPPED PRICE PROGRAM.** You have elected our Capped Price Program, for the period from 04/02/2020 through 04/30/2021 (the "Pricing Period"), we will deliver up to 1000 gallons of home heating oil to you at a price not to exceed $2.099 per gallon, plus applicable taxes. If your prevailing retail price for home heating oil drops below the Capped Price during the Pricing Period then you will pay our prevailing retail price for home heating oil. We have secured in advance the estimated amount of heating oil futures oil contracts or similar commitments to enable us to meet your needs during the Pricing Period. The Capped Price set forth in this paragraph will expire at the earlier of the end of the Pricing Period or when all of the Agreement gallons stated above are delivered to you, without further notification to you, and subsequent deliveries to you will be charged at our prevailing retail price for home heating oil that is in effect at the time of delivery.

Promotions : 1) First delivery promotional price $1.499

### RETAIL HEATING OIL DELIVERY AND SERVICES AGREEMENT
#### Terms and Conditions

**1. PARTIES:** In this Agreement, the words "we," "us," "our" and "Seller" mean DDM Energy. The words "you," "your" and "yours" mean every Buyer or Applicant.

**2. DELIVERIES:** Heating oil deliveries will be made to you on an automatic delivery basis at the pricing set forth above, subject to these terms and conditions and those set forth above. You agree to accept each delivery and to pay the full amount shown on each delivery invoice in full within twenty five (25) days of receipt of the invoice, or if you are on a budget plan, budget payments are due within twenty five (25) days

2020DDM ENERGY CONTRACT

Page 1/6

DocuSign Envelope ID: F0467238-7A00-4377-8696-132425A31194

of receipt of the statement. You agree to purchase your heating oil exclusively from us, maintain your account on automatic delivery and remit all outstanding balances when due.

**3. NON DELIVERY CONDITIONS:** We will not be responsible for failure to deliver heating oil for any of the following reasons: heating oil shortages, scarcity of labor, delay in deliveries by our suppliers, embargoes, strikes, riots, accidents, disorders, Acts of God, acts of any types by any governmental authority, or for any reason beyond our reasonable control. We will not be responsible for damages resulting from failure to deliver heating oil to vacant or unattended premises (in this Agreement, the term "vacant or unattended premises" means a location at which no adult occupant is present for at least twenty-four (24) consecutive hours). the amount due for deliveries, service charges and other amount due for more than thirty (30) days. You agree to pay a $20.00 fee for all returned checks and returned Automated Clearing House transactions.

**4. SERVICE CONTRACT:** If you have a service contract with us, you will pay the invoice in full or cancel within thirty (30) days, or if you are on a budget plan, in accordance with the terms of such plan.

**5. BILLING AND SERVICE CHARGES:** If you have not paid an invoice for heating oil, services and/or a service contract in full within thirty (30) days, we will send you a statement ("Monthly Statement") showing the amount due for deliveries, service charges and other amount due for more than thirty (30) days.  You agree to pay a $20.00 fee for all returned checks and returned Automated Clearing House transactions.

**6. WHEN A LATE FEE WILL BE ADDED:** If we do not receive payment in full of the new balance on your Monthly Statement on or before the payment due date as reflected on the statement, a late fee ("Late Fee") will appear on your next Monthly Statement and will be added to your new balance on that Monthly Statement.

**7. LATE FEE:** The Late Fee is computed by a "Periodic Rate" of 1.5% per month, which is an ANNUAL PERCENTAGE RATE OF 18%. We will figure the Late Fee on your account by the Adjusted Balance Method. In no event will the Late Fee charge be more than the law allows.

**8. HOW TO AVOID LATE FEE CHARGES:** If we receive payment in full of the new balance on your Monthly Statement on or before the payment due date reflected on the statement, no Late Fee will be added to your Monthly Statement.

**9. COLLECTION COSTS; IRREGULAR PAYMENT AND DELAY OF ENFORCEMENT:** If we hire a collection agency or an attorney to collect your outstanding balance, you agree to pay, in addition to your balance, all cost of collection as permitted by law, including without limitation, reasonable attorney's fees and court costs. We can accept late payment, partial payments or payments marked "payment in full" without losing any of our rights under this Agreement. We can delay in enforcing our rights under this Agreement without losing any of our rights under this Agreement.

**10. CANCELLATION, BREACH AND LIQUIDATED DAMAGES: If you cancel your account for any reason, remove your account from automatic delivery, fail to make payment on time or otherwise breach any of the terms and conditions of this Agreement, we may suspend service under this Agreement or terminate this Agreement with or without notice and without further responsibility. If your account is cancelled for any of these reasons during the Pricing Period, we will suffer damages, which include our costs of purchasing the required futures oil contracts or similar commitments and our administrative costs. However, at that time our actual damages will be difficult or impossible to calculate. Therefore, you agree that if your account is cancelled or terminated for any of these reasons during the Pricing Period, you will be charged a $200 early termination fee. The early termination fee will be prorated based on remaining gallons to be delivered by the Seller under this Agreement compared to the maximum gallons we have agreed to**

DocuSign Envelope ID: F0467238-7A00-4377-8696-132425A31194

**deliver as set forth above and will no longer apply after Seller has completed deliveries of the gallons as agreed to herein, and the Buyer's payment in full of those deliveries.**

I ACKNOWLEDGE THAT THIS CONTRACT CONTAINS
THE PRECEDING LIQUIDATED DAMAGES PROVISION.



_____
Applicant Initials

**11. LIMITATION OF LIABILITY; WAIVER OF SUBROGATION: IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, INDIRECT OR PUNITIVE DAMAGES (INCLUDING, BUT NOT LIMITED TO, LOST PROFITS OR SAVINGS) HOWEVER CAUSED, EVEN IF SUCH PARTY HAS BEEN ADVISED OR IS OTHERWISE AWARE OF THE POSSIBILITY OF SUCH DAMAGES.** To the extent any loss or damage is covered by insurance, the insured party waives any rights of recovery (including any rights of subrogation) against the other party.

**12. TERMINATION:** After the Pricing Period, either party may terminate this Agreement upon written notice, provided that you will remain responsible for all purchases made by you before we receive notice of the cancellation. Any gallons delivered to you after the Pricing Period has expired will be charged at our prevailing retail price for home heating oil that is in effect at the time of delivery.

**13. BUYER'S RIGHT TO CANCEL: YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.**

| | | |
|---|---|---|
| *Brian Callery* | Brian Callery | 4/2/2020 |
| **Applicant Signature** | **Applicant Name (Please Print)** | **Date** |
| | | |
| **Co-Applicant Signature** | **Co-Applicant Name (Please Print)** | **Date** |
| *Terrance Joyce* | | 4/2/2020 |
| **Company Signature** | | **Date** |

By signing, YOU acknowledge that YOU have read and agree to all the terms and conditions of this Agreement.

DocuSign Envelope ID: F0467238-7A00-4377-8696-132425A31194

## YOUR BILLING RIGHTS

This notice contains important information about rights and responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL.** If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill as soon as possible. We must hear from you not later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information: (a) Your name and account number; (b) The dollar amount of the suspected error; and (c) Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.** We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days (sixty (60) days in Maryland), we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including LATE FEES, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any LATE FEES related to any questioned amount. If we did not make a mistake, you may have to pay LATE FEES, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone that we report you to that you have a question about your bill. And we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50.00 of the questioned amount, even if your bill was correct.

**SPECIAL RULE FOR CREDIT CARD PURCHASES.** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right: (a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and (b) The purchase price must have been more than $50. These limitations do not apply if the merchant is owned or operated by the creditor, or if the creditor mailed you the advertisement for the property or services.

**CREDIT CARD PAYMENTS.** If you have authorized us to pay your bill automatically with your credit card, savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

DocuSign Envelope ID: F0467238-7A00-4377-8696-132425A31194

## NOTICE OF CANCELLATION

_____
Insert date of Transaction

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE TO DDM Energy at P.O. Box 596 West Chester, PA 19381-0596 NOT LATER THAN MIDNIGHT OF _____ [insert 3rd business day after date of transaction above]

I HEREBY CANCEL THIS TRANSACTION

_____          _____
Buyer's Signature                                          Date

_2020 DDM Energy CT_

DocuSign Envelope ID: F0467238-7A00-4377-8696-132425A31194

## NOTICE OF CANCELLATION

_____
Insert date of Transaction

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE TO DDM Energy at P.O. Box 596 West Chester, PA 19381-0596 NOT LATER THAN MIDNIGHT OF _____ [insert 3rd business day after date of transaction above]

I HEREBY CANCEL THIS TRANSACTION

_____          _____
Buyer's Signature                                            Date

2020 DDM Energy CT                                    Page   6/6