Exhibit E

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN CALLERY, | : CIVIL ACTION NO. 2:20-cv-03652 (CMR) |
| Plaintiff | : |
| vs. | : |
| | : *Electronically filed* |
| HOP ENERGY, LLC and DDM ENERGY, | : |
| Defendants | : |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND

Defendants removed this action alleging that it met the amount in controversy requirement, $5 million, because Plaintiff seeks individual compensatory damages of over $50,000. This is in no way accurate. In fact, the Complaint alleges out-of-pocket loss by Plaintiff Callery of approximately Thirty Dollars ($30.00). The *ad damnum* clauses in the Complaint seek over $50,000 on behalf of the entire class, not on behalf of Mr. Callery alone. The burden of proving that the amount in controversy exceeds $5 million is on the Defendants, and Defendants are in sole possession of all evidence pertinent to the amount in controversy. But when Plaintiff sought narrowly-targeted discovery on the facts supporting removal, Defendants flatly refused.[1]

Defendants cannot meet their burden of proving that the amount in controversy in this case exceeds $5 million and therefore the matter should be remanded to the Court of Common Pleas of Chester County pursuant to the Class Action Fairness Act. In the alternative, Plaintiff

---

[1] Plaintiff's counsel asked Defendants to provide subject matter jurisdiction discovery, by providing a corporate designee, pursuant to Rule 30(b)(6), for deposition on a list of basic topics pertinent to the amount in controversy, such as how many class members there are, and what prices Defendant has charged. See Ex. 1 (8/3/20 letter from Ryan to Butkowski). Defendants have refused to do so. See Ex. 2 (8/4/20 email from Moran to Ryan).

asks that the Court order Defendants to provide discovery as to the facts pertinent to subject matter jurisdiction, which Defendants have refused to do.

FACTUAL BACKGROUND

Defendant HOP Energy, LLC, through its Chester County office, DDM Energy and through many other offices, sells home heating oil to customers like Plaintiff Brian Callery. The Complaint outlines a fraudulent scheme in which Defendants sign customers up to contracts and promise them that under Defendants' Capped Price Program "your home heating oil price follows the market but doesn't go above your CAP rate." Complaint at ¶6. The contract promised that customers would be charged the lower of the customer's Capped rate or "prevailing retail price." Id. at ¶9. Mr. Callery signed a capped price contract at the rate of $2.099/gallon. But when heating oil prices dropped dramatically and Mr. Callery placed an order, Defendants did not give him the benefit of the dropped market price. Instead they charged him $2.099/gallon, far above prevailing retail prices in the area. Complaint at ¶10. Surprised, Mr. Callery called his local DDM Energy office and asked what the prevailing retail price of heating oil was. He was told $1.55/gallon. Complaint at ¶11. When Plaintiff questioned his bill, he was transferred to a different agent of Defendants who told him that Defendants' prevailing retail price was $2.49/gallon. Id.

The total amount of Plaintiff Callery's out-of-pocket loss, alleged in the Complaint, is the difference between the price he was charged, $2.099/gallon, and the actual prevailing retail price at the time, $1.55/gallon, ($0.559) multiplied by 54, the number of gallons of oil he purchased, for a total of $30.186.

Mr. Callery seeks to represent a class of similarly-situated customers of Defendants, both in Pennsylvania, and in other states where Defendants do business on an opt-in basis. The

2

Complaint defines the class as "All persons who entered into contracts with Defendants for the delivery of heating oil to a residence, under terms including a capped pricing program and/or a prevailing retail price for the price of the heating oil, and who received delivery of heating oil during the time period commencing six years before the filing date of this action." Complaint at ¶15. The total number of class members is known only to Defendants. That number is readily ascertainable by Defendants from their own records. Complaint at ¶18. While Plaintiff attempted to guess or estimate at the number of class members, for the purpose of alleging that his class claims met the numerosity requirement, Plaintiff does not allege that he actually knows the number of class members, but rather states that "The precise number of class members may be determined from the Defendants' records." Id.

Likewise, the remaining information needed to determine the amount in controversy -- the prices Defendants have contracted to charge, and have actually charged -- are known only to Defendants. This information is readily ascertainable from Defendants' records.

Nowhere in the Notice of Removal have Defendants provided this Court with actual information necessary to determine the amount in controversy, despite the fact that all such information is known only to Defendants. Instead, Defendants rely on a misreading of the Complaint as to the amount of Plaintiff Callery's claim, disingenuously turning a thirty dollar claim into a fifty thousand dollar claim by referencing the damages sought on behalf of the <u>entire class</u>. While Plaintiff seeks punitive damages and attorneys' fees, such amounts must bear some rational relationship to his out-of-pocket loss. The Court cannot assume jurisdiction of this matter based on hand waving and fantastical theories of what punitive damages and attorneys' fees could possibly be awarded.

3

LEGAL STANDARD

Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. Kokkoken v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). A defendant may remove a civil action filed in state court to the federal court embracing the place where the state action is pending. 28 U.S.C. § 1441(a). The defendant seeking to remove the matter bears the burden of showing that (1) federal subject-matter jurisdiction exists, (2) removal was timely, and (3) removal was proper. §§ 1441, 1446–47; Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), cert. denied, 498 U.S. 1085 (1991). After a case has been removed, the district court must remand it to state court if subject-matter jurisdiction is lacking. § 1447(c).

Under the Class Action Fairness Act ("CAFA"), federal district courts have original jurisdiction over class actions where (1) the amount in controversy exceeds $5,000,000, as aggregated across all individual claims; (2) any member of a class of plaintiffs is a citizen of a state different from any defendant; and (3) the class has at least 100 members. Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d 495, 500 (3d Cir. 2014) (citing § 1332(d)(2), (5)(B), (6); Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 133 S. Ct. 1345, 1347 (2013)). The party that removes the case bears the burden of establishing federal court jurisdiction. Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007); Morgan v. Gay, 471 F.3d 469, 473 (3d Cir. 2006). To determine whether a court has jurisdiction under CAFA, "[the] court evaluates allegations in the complaint and a defendant's notice of removal." Judon, 773 F.3d at 500. Generally, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014). Thus, "a defendant seeking to remove a case to a federal

4

court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal'." Id. at 87 (citing 28 U.S.C. § 1446(a)). If the plaintiff contests the defendant's allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Dart Cherokee, 574 U.S. at 88.

DISCUSSION

There is no question but that the burden of proving that the amount in controversy in this matter exceeds $5 million rests solely on Defendants, as set forth in the cases cited above. Plaintiff and the class seek relief for the same injury under multiple legal theories, and thus such separate theories are not aggregated for the purpose of determining the amount in controversy. The amount in controversy here for the class' Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") claim is based on actual damages, i.e., the class members' out-of-pocket loss, with treble damages, with a minimum amount set by statute at $100 for Pennsylvania plaintiffs, plus reasonable attorneys' fees, multiplied by the number of class members. See Samuel-Basset v. Kia Motors America, Inc., 357 F.3d 392, 400 (3d Cir. 2004). Plaintiff alleges that his out-of-pocket loss, i.e., his compensatory damages, is approximately $30, and so his UTPCPL claim is for the statutory minimum of $100, plus reasonable attorneys' fees. Complaint at ¶44. Plaintiff and the class seek compensatory damages for breach of contract and of the covenant of good faith and fair dealing, but again Plaintiff's compensatory damages are approximately $30. In the fraud claim Plaintiff brings on behalf of the class, Plaintiff alleges punitive damages as well as compensatories, but punitive damages must be realistic, and must bear some relationship to compensatory damages. The Court of Appeals has held that in determining the amount in controversy for jurisdictional

5

purposes, "[E]stimations of the amounts recoverable must be realistic. The inquiry should be objective and not based on fanciful, "pie-in-the-sky," or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated." Samuel-Basset v. Kia Motors America, Inc., 357 F.3d at 402; see also Judon, 773 F.3d at 507 (the estimate of plaintiff's potential recovery should be based on "a reasonable reading of the value of the rights being litigated"). This Court cannot exercise jurisdiction based on speculation that punitive damages may vastly exceed the class' out-of-pocket losses.

Plaintiff's Complaint alleged that his claim is typical of the Class Members, and Defendants have provided no evidence to the contrary. Indeed, many class members may have no out-of-pocket loss, as heating oil prices have varied greatly over the past six years, sometimes rising considerably. Only the Defendants know for sure. In these circumstances, the Court of Appeals has instructed that the Court should find that Plaintiff has damages that are typical of the class. Judon, 773 F.3d at 507. In a case where the typical class member's out-of-pocket loss is $30, there simply is not enough in controversy to meet CAFA's $5 million threshold.

Plaintiff's Complaint did not claim knowledge of the specific number of Class members, but rather referred the Court to the Defendants' own records. Plaintiff alleged that there may be tens of thousands of class members, but that "the precise number of Class members may be determined from the Defendants' records." Complaint at ¶18. There could be more or fewer members of the class – only the Defendants know for sure. Only the Defendants know how many customers they have signed with Capped Price contracts, or how many customers' contracts refer to "prevailing retail price." Unlike in many CAFA cases, in this action Defendants are in sole possession of the evidence necessary for the Court to determine the amount in controversy – the number of Defendants' customers who fall within the classes

6

outlined in the Complaint, and the amounts of heating oil they purchased and the prices charged, and contracted to be charged. <u>And Defendants aren't telling</u>. In fact, all of these topics are set forth in Plaintiff's proposed subject matter jurisdiction corporate designee deposition, which Defendants declined to participate in. <u>See</u> Ex. 1.

In the face of Defendants' failure to provide any evidence of the amount in controversy, and refusal to provide discovery, Plaintiff proposes to the Court that Defendants have not met and cannot meet their burden of proof, and this action should be remanded to the Court of Common Pleas of Chester County. As the Court of Appeals noted in <u>Judon</u>, if after remand Defendants receive documents supporting the assertion that the amount in controversy in this matter exceeds $5 million, the Defendants retain the right to remove this case at that time, based on such newly discovered evidence, under the terms of 28 U.S.C. §1446(b)(3). 773 F.3d at 508-509.

In the alternative, if the Court does not grant this Motion to Remand at this time, Plaintiff requests that the Court order expedited discovery on the facts pertinent to subject matter jurisdiction, such as how many class members there are, and what prices Defendants have charged and the remaining issues raised in Plaintiff's proposed corporate designee deposition.

7

Without such discovery, Plaintiff has no ability to challenge whether subject matter jurisdiction exists, specifically whether the amount in controversy exceeds $5 million.

Respectfully submitted,

Date: August 6, 2020   BY: s/M. Frances Ryan

M. Frances Ryan
I.D. No. 62060
Validation of Signature Code MFR1130
Edward C. Sweeney
I.D. No. 64565
Attorneys for Plaintiff
Wusinich & Sweeney, LLC
211 Welsh Pool Road, Suite 236
Exton, PA 19341
610-594-1600
Email: mfrancesryan@wusinichsweeney.com

8