# Exhibit D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN CALLERY | : | CIVIL ACTION - LAW |
| | : | NO. 20-cv-03652 |
| | : | |
| and | : | |
| | : | |
| TINA FASANO | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| vs. | : | |
| | : | |
| HOP ENERGY, LLC, | : | CLASS ACTION COMPLAINT |
| | : | |
| | : | |
| Defendant. | : | JURY OF TWELVE DEMANDED |

## AMENDED COMPLAINT

### The Parties

1.     Plaintiff Brian Callery is an adult individual and resides in Chester County, Pennsylvania at 57 West 5th Avenue, Coatesville, PA 19320.

2.     Plaintiff Tina Fasano is an adult individual and resides in Monroe County, Pennsylvania at 1288 Grand Mesa Drive, Effort, PA 18330.

3.     Defendant HOP Energy, LLC ("HOP Energy") is a limited liability company organized and existing under the laws of the State of Delaware. Its principal place of business is at 4 West Red Oak Lane, Suite 310, White Plains, NY 10604. HOP Energy does business in Chester County, Pennsylvania through its office located at 841 Lincoln Ave, West Chester, PA 19380. HOP Energy also does business in Bucks County, Pennsylvania through its Altemos Energy office at 445 N. West St., Doylestown, PA 18901.

1

4.       HOP Energy provides residential and commercial heating oil services to customers in Pennsylvania, Vermont, Massachusetts, Rhode Island, Connecticut, New Jersey, Delaware, and New York. HOP Energy has nearly one hundred thousand customers.

## Jurisdiction and Venue

5.       This Court has jurisdiction over this matter under 28 U.S.C. Sec. 1332(d) as this is a class action in which the amount in controversy exceeds $5 million and a member of the class of Plaintiffs is a citizen of a different state than the Defendant.

6.       Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## Events Giving Rise to This Claim

7.       Defendant advertises to the public on its website that it provides residential heating oil under three different pricing plans: Variable, Capped, and Fixed. Defendant describes the Capped plan to the public as follows: "CAPPED -- your home heating oil price follows the market but doesn't go above your CAP rate." Defendant describes the Fixed plan to the public as follows: "FIXED – your price does not change, and you can manage your home heating oil budget to this predictable monthly amount."

8.       Defendant advertises to the public on its website that: "At HOP Energy, our buying power across the northeast gives us access to the region's largest oil supply network and storage facilities, which means we have consistent supply of home heating oil at competitive prices."

2

## Brian Callery's Experience With Defendant

9.      On April 2, 2020 Plaintiff Callery entered into a contract with Defendant for provision of heating oil to Plaintiff's residence (the "Contract.") See Exhibit A.

10.     Pursuant to the Contract, Plaintiff and Defendant agreed that for the period from April 2, 2020 to April 30, 2021, Defendant would provide, and Plaintiff would pay for heating oil under a Capped Price Program. Defendant agreed to provide up to one thousand gallons of heating oil to Plaintiff at a price not to exceed $2.099/gallon, plus applicable taxes. Defendant promised that "if our prevailing retail prices for home heating oil drops below the Capped Price during the Pricing Period, then you (i.e. Plaintiff) will pay our prevailing retail price for home heating oil".

11.     On May 19, 2020, Defendant provided Plaintiff Callery with 54 gallons of heating oil. Defendant charged Plaintiff $113.35, at the rate of $2.099/gallon.

12.     Immediately after this oil delivery, Plaintiff telephoned Defendant and asked what their prevailing retail price for heating oil was. Defendant's agent who answered the telephone answered that Defendant's prevailing retail price for oil was $1.55/gallon. When Plaintiff stated that he was under contract and wanted to know why he was charged $2.099/gallon for heating oil, Defendant's agents transferred the call several times until a woman representative of Defendant informed him that Defendant's prevailing retail price for oil was $2.49/gallon. Plaintiff questioned why the first representative who answered the phone told him that the prevailing retail price for heating oil was $1.55/gallon. Defendant's representative responded that they were the sales department and they did not know what the prevailing retail price of oil was.

13.     Plaintiff believes and therefore avers that Defendant knew at the time it entered into the Contract that it did not intend to honor its promise to charge Plaintiff the actual

3

prevailing retail price for heating oil, but rather had engaged in a scheme where it created a false, inflated "prevailing retail price" which it quoted the Capped Plan customers instead of the actual prevailing retail price (the "Fake Retail Price"). The Fake Retail Price bore no relation to the retail prices Defendant or other providers in the market actually quoted or charged for heating oil.

14.    Plaintiff believes and therefore avers that Defendant signed numerous customers to contracts similar to Plaintiff's Contract, in which Defendant agreed to provide heating oil under the Capped Price Program. Plaintiff avers that Defendant has overcharged numerous customers under the Capped Price Program contracts at their Capped Price or another artificially inflated price, instead of the actual prevailing retail price to which customers were entitled under their contracts.

15.    Defendant's representation to the public that under their Capped Price Program "your home heating oil price follows the market but doesn't go above your CAP rate" was false and was a fraudulent inducement to enter into Capped Price Program contracts with Defendant.

### Tina Fasano's Experience With Defendant

16.    Tina Fasano is a longtime customer of HOP dating back to at least 2013, via the Altemos Energy branch in Doylestown, Pennsylvania.

17.    Plaintiff Fasano was in the habit of telephoning her local HOP Energy branch, as well as competitors, to find out their current price for residential heating oil.

18.    Over the years since 2013, Fasano has entered into various contracts with Defendant for the sale of heating oil, both Fixed and Capped. All of those contracts contained the term "our prevailing retail price."

4

19.     Fasano believed that the term "our prevailing retail price" in her contracts was the COD/Dollarwise price HOP Energy/Altemos quoted over the phone.

20.     During the years that Fasano had a Capped Price contract with Defendant, Fasano should have been charged the lesser of her Capped Price or Defendant's Prevailing Retail Price.

21.     During the years that Fasano had a Capped Price contract with Defendant, she was frequently charged significantly higher prices than the lower of her Capped Price or Defendant's COD/Dollarwise price, or a price that changed with market conditions and was consistent with the prevailing retail price.

22.     On February 6, 2018, Fasano signed a Cap Price Program contract with Defendant. The non-refundable Cap Price Program Fee was $68. The Pricing Period was from February 5, 2018 to February 28, 2019. The Cap Price was $3.199 per gallon for up to 400 gallons. A copy of the February 2018 contract is attached as Exhibit B.

23.     Paragraph 6 of the February 6, 2018 contract stated: "The Contract agreed upon price will expire at the earlier of the end of the Pricing Period or when all of the contracted gallons stated above are delivered to customer without further notification and subsequent gallons delivered will be made at the prevailing retail price for home heating oil in effect at the time of delivery." Customers who received deliveries under this type of clause will be referred to as "Rollover Customers."

24.     As of November 2018, Fasano had received 320 gallons of heating oil. Realizing that she would likely go over her 400 gallon contract with her next delivery, Fasano decided to enter into another one year contract.

25.     In December 2018, Defendant sent Fasano a proposed contract with Defendant. The proposed contract said that "The Capped Price set forth in this Agreement will be available until December 11, 2018."

26.     On December 14, 2018, Fasano signed the contract and returned it to Defendant. According to the contract, her capped rate was $3.139 for up to 475 gallons. Her non-refundable Cap Price Program fee was $80.75, i.e. $.17/gallon. After delivery of 475 gallons, or one year, automatic deliveries would continue and she would be charged "the prevailing retail price for home heating oil in effect at the time of delivery."

27.     Defendant did not reject the signed contract or otherwise inform Fasano that it was not in effect.

28.     On February 11, 2019, Defendant sent Fasano a letter stating that as of February 29, 2019, her current pricing agreement would expire. The letter stated that if Defendant did not hear from Fasano, her account would automatically default to the Variable Price Plan and she would remain on automatic delivery. The letter described the Variable Price Plan as "our prevailing price fluctuates as the cost of oil changes."

29.     Fasano ignored the February 11, 2019, letter because she was already on the Capped Price plan she had signed in December.

30.     On January 31, 2019, Defendant delivered 120.6 gallons of heating oil to Fasano. For 80 gallons, Defendant charged Fasano $3.199/gallon. For the remaining 40.6 gallons, Defendant charged Fasano $4.699/gallon, which was far higher than Defendant's COD price or prevailing market prices in the area.

31.     Fasano believes that the $4.699/gallon price she was charged was meant to be Defendant's "Variable Price" aka the "Fake Prevailing Retail Price." Fasano believes that she

6

should have been charged either her capped price under the December 2018 contract or Defendant's COD or Dollarwise price that it quotes over the phone, or a price that changes with market conditions and is consistent with the prevailing retail price.

32.     Plaintiff Fasano believes and therefore avers that Defendant knew at the time it entered into the February 2018 Contract that it did not intend to honor its promise that at the earlier of the end of the Pricing Period or when all of the contracted gallons stated above are delivered to a customer without further notification and subsequent gallons delivered will be made at the prevailing retail price for home heating oil in effect at the time of delivery. Rather, Defendant intended to charge such Rollover Customers the Fake Prevailing Retail Price, which bore no relation to Defendant's actual prevailing retail price, i.e. the COD/Dollarwise price in effect at the time of delivery, and was not consistent with prevailing market prices.

33.     Plaintiff believes and therefore avers that Defendant signed numerous customers to contracts similar to Plaintiff's Contract, in which Defendant agreed that at the earlier of the end of the Pricing Period or when all of the contracted gallons stated above are delivered to a customer without further notification and subsequent gallons delivered will be made at the prevailing retail price for home heating oil in effect at the time of delivery. Plaintiff avers that Defendant has overcharged numerous Rollover Customers the Fake Prevailing Retail Price instead of the actual prevailing retail price to which customers were entitled under their contracts.

## Class Action Allegations

34.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class: All persons who entered into contracts

with Defendant for the delivery of heating oil to a residence, under terms including a capped

pricing program and/or a prevailing retail price for the price of the heating oil, and who received

delivery of heating oil during the time period commencing six years before the filing date of this

action (the "Class Members").

35.     The prerequisites to class certification under Rule 23 are met in that the members

of the class are so numerous that joinder of all members are impractical. Plaintiffs estimate that

there are tens of thousands of Class Members. The precise number of Class members may be

determined from the Defendant's records.

36.     The representative Plaintiffs' claims raise questions of law and fact common to

all Class Members. Among the question of law and fact common to the class are the following:

a.   Whether Defendant's advertising of their heating oil programs was false,

deceptive and confusing to the public;

b.   Whether Defendant's representation to Class Members that, under Defendant's

Capped price heating oil contract, their home heating oil price follows the market but doesn't go

above their CAP rate, was false, deceptive and confusing;

c.   Whether Defendant knew at the time they entered into heating oil contracts with

the members of the class that the term "prevailing market price" was false, deceptive and

intended to confuse the Class Members;

d.   Whether Defendant knew at the time they entered into contracts with the Class

Members that they did not intend to honor their promise to charge Class Members the actual

prevailing retail price for heating oil, but rather had engaged in a scheme where they created a

false, inflated "prevailing retail price" which they quoted and/or charged to customers instead of

the actual prevailing retail price (the "Fake Retail Price");

8

e.  Whether the Fake Retail Price bore no relation to the retail prices Defendant or other providers in the market actually charged for heating oil and/or quoted to the public when potential customers inquired as to Defendant's prices for heating oil;

f.  Whether the Defendant concealed the Fake Retail Price scheme from customers and potential customers, including Class Members;

g.  Whether Defendant has engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding;

h.  Whether Defendant breached its contracts with members of the class by failing to charge the lesser of the Capped price or the prevailing market price;

i.  Whether Defendant acted honestly and in good faith and fair dealing;

j.  Whether Defendant engaged in wanton and outrageous conduct toward the Class Members.

37.  The claims of the representative Plaintiffs are typical of, if not identical to, the claims of each member of the class because the representative Plaintiffs and all Class Members entered into the same or similar contracts with Defendant, and received the same false, deceptive and confusing communications from Defendant regarding the Capped Price contract and the prevailing market price for heating oil.

38.  The representative Plaintiffs will fairly and adequately protect the interests of all of the Class Members. They have retained competent counsel who is experienced in complex litigation and who will prosecute this action vigorously. The representative Plaintiffs will fairly and adequately assert and protect the interests of the class. They do not have any interest antagonistic to the interests of the class. Representative Plaintiffs have adequate financial resources to vigorously pursue this action, including an argument by their counsel to prosecute

this action on a contingent fee basis and to advance the reasonable and necessary costs and expenses of litigation.

39.     A class action proves a fair and efficient method for adjudication of the controversy pursuant to Rule 23.

40.     Certification is appropriate under Rule 23(b)(3) because the questions of law and fact common to the Class Members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

41.     Certification is appropriate under Rule 23(b)(1)(A) because inconsistent or varying adjudications with respect to individual class members would establish incompatible standards of conduct for the party opposing the class.

42.     Certification is appropriate under Rule 23(b)(2) is appropriate because the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate regarding the class as a whole.

43.     At the time this action was commenced in June 2020 there was no other litigation concerning this controversy.

## COUNT ONE – BREACH OF CONTRACT

44.     Plaintiffs incorporate the foregoing allegations as if set forth herein at length.

45.     Defendant has breached its contract with Plaintiffs and the Class Members.

46.     Plaintiffs and the Class Members have incurred damages as a result of Defendant's breach of contract.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor (1) enjoining Defendant from further breach of Plaintiffs' contract; and (2) award damages in an amount in excess of $5 million, together with costs and such relief as the Court deems just and proper.

## COUNT TWO – BREACH OF
## CONVENT OF GOOF FAITH AND FAIR DEALING

### (Fasano v. HOP Energy)

47.     Plaintiff incorporates the foregoing allegations as if set forth herein at length.

48.     Defendant has breached its covenant of good faith and fair dealing with Plaintiff Fasano and the Class Members.

49.     Plaintiff Fasano and the Class Members have incurred damages as a result of Defendant's breach of the covenant of good faith and fair dealing.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor (1) enjoining Defendant from further breach of the convent of good faith and fair dealing; and (2) award damages in an amount in excess of $5 million, together with costs, and such relief as the Court deems just and proper.

### COUNT THREE -- FRAUD

50.     Plaintiffs incorporate the foregoing allegations as if set forth herein at length.

51.     Defendant has made false statements of fact, including the statement that under its Capped Price plan customers' heating oil price follows the market; the statement that Defendant charged competitive prices for heating oil; the statement that Defendant would charge Plaintiff and Class Members the lesser of their Capped Rates or the prevailing market price for heating

11

oil; the statement that after the end of the Pricing Period or when all of the contracted gallons stated above are delivered to customer subsequent gallons delivered will be made at the prevailing retail price for home heating oil in effect at the time of delivery; the statement that Defendant's prevailing market price for heating oil was $2.49/gallon; and the statement that Defendant's sales employees did not know the prevailing market prices of heating oil. In addition, Defendant fraudulently concealed its intention to charge Class Members far higher than prevailing market prices for heating oil.

52.     Defendant intended to deceive the Class Members by means of these statements and concealment and did deceive Class Members. Class Members justifiably relied on Defendant's fraudulent statements to their detriment and sustained damages as a result.

53.     Plaintiffs and the Class Members are entitled to punitive damages.

WHEREFORE, Plaintiffs requests that the Court enter judgment in their favor (1) enjoining Defendant from further fraudulent conduct; and (2) awarding compensatory and punitive damages in an amount in excess of $5 million together with costs, statutory interest and such other relief as the Court deems just and proper.

## COUNT FOUR – RESIDENT CLASS VERSUS DEFENDANT – VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

54.     Plaintiffs incorporate the foregoing allegations as if set forth herein at length.

55.     Defendant has engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding.

56.     Pursuant to Sections 201-9.2 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "Act"), Plaintiffs and the Resident Class Members have

purchased goods or services from Defendant primarily for personal, family and household use, and have suffered ascertainable losses of money or property as a result of Defendant's violation of the Act.

57.     Plaintiffs and the Resident Class Members are entitled to recover actual damages or one hundred dollars, whichever is greater, as well as treble damages, costs and reasonable attorney's fees.

WHEREFORE, Plaintiffs request that the Court enter judgement in their favor (1) enjoining Defendant from further violation of the Act; and (2) awarding compensatory, punitive, statutory and treble damages in an amount in excess of $5 million, together with costs, attorneys' fees, statutory interest and such other relief as the Court deems just and proper.

## COUNT IV – VIOLATION OF NEW YORK CONSUMER PROTECTION LAW

58.     Plaintiffs incorporate the foregoing allegations as if set forth herein at length.

59.     Defendant has engaged in deceptive acts or practices in the conduct of its business in violation of the New York Consumer Protection Law, New York Gen Bus L § 349 ("NY CPL").

60.     Plaintiffs and the Class Members are entitled to recover actual damages or fifty dollars, whichever is greater, as well as treble damages, attorneys' fees and costs, pursuant to the NY CPL.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor (1) enjoining Defendant from further violation of the NY CPL; and (2) awarding compensatory, punitive, and treble damages in an amount in excess of $50,000.00, together with costs, attorneys' fees, statutory interest and such other relief as the Court deems just and proper.

## COUNT V—NON-RESIDENT CLASS VERSUS DEFENDANT
## (VIOLATION OF STATE CONSUMER PROTECTION LAWS)

61.     Plaintiffs incorporates the foregoing allegations as if set forth herein at length.

62.     Defendant has engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding.

63.     The Non-Resident Class Members have purchased goods or services from Defendant primarily for personal, family and household use, and have suffered ascertainable loss of money or property as a result of Defendant's conduct.

64.     Defendant has violated the Connecticut Unfair Trade Practices Act, 42 Conn. G.S. Ch. 735a.

65.     Defendant has violated the Delaware Uniform Deceptive Trade Practices Act, 6 Del.L. Ch. 25.

66.     Defendant has violated the Massachusetts Consumer Protection Law, M.G.L. Ch. 93A.

67.     Defendant has violated the New Jersey Consumer Fraud Act, N.J.S.A 56:8-2.

68.     Defendant has violated the Rhode Island Deceptive Trade Practices Law, R.I.G.L. Title 6 § 6-13.1.1.

69.     Defendant has violated the Vermont Consumer Protection Act, 9 V.S.A. § 2451-2482d.

70.     The Non-Resident Class Members are entitled to recover actual damages and other relief as set forth in the consumer protection laws of their states of residence, as well as costs and reasonable attorneys' fees.

WHEREFORE, Plaintiffs request that the Court enter judgement in their favor (1) enjoining Defendant from further violation of the consumer protection laws; and (2) awarding

compensatory, punitive and statutory multiplied damages in an amount in excess of $5 million, together with costs, attorneys' fees, statutory interest and such other relief as the Court deems just and proper.

Respectfully submitted,

Date:___7/16/2024___       By:___*/s/M. Frances Ryan*_____
                                  M. Frances Ryan
                                  Validation of signature code: MFR1130
                                  Attorney for Plaintiff
                                  Wusinich, Sweeney & Ryan, LLC
                                  102 Pickering Way, Suite 403
                                  Exton, PA 19341
                                  (610) 594-1600
                                  Email: mfrancesryan@wusinichsweeney.com

# EXHIBIT A

DocuSign Envelope ID: F0467238-7A00-4377-8696-132425A31194



**DDM Energy**

Retail Credit Agreement

| | | |
|---|---|---|
| P.O. Box 596<br>West Chester, PA 19381-0596 | Phone : 888-835-3535<br>Fax : 610-692-8953 | www.ddmenergy.com |

| | | | | |
|---|---|---|---|---|
| Applicant: | Brian Callery | Phone: | 4849474447 | Date: 04/02/20 |
| CoApplicant: | | Email: | brian.callery@ebsheathcare.com | |
| Billing Addr: | 57 W 5th Ave, Coatesville, PA 19320 | | | |
| Delivery Addr: | 57 W 5th Ave  Coatesville PA 19320 | | | |

You agree that DDM Energy ('We' or 'Seller') will order a consumer report in connection with this application and subsequent consumer reports in connection with any updates, renewals or extensions of credit. Upon your request, we will provide the name and address of the consumer credit agency furnishing such report to us. You understand that we will retain this application whether or not it is approved.

The Federal Equal Credit Opportunity Act prohibits us from discriminating against you in any way in the granting of credit. The federal agency which administers compliance with this law is the Federal Trade Commission, Washington, D.C. 20580. We have given to you and you acknowledge receipt of a complete description of the terms and conditions of our Retail Credit Agreement, which are below, and the notice of Your Billing Rights which are included with this form.

This Agreement covers your purchase of home heating oil from us under a CAPPED PRICE PROGRAM, described below. The Capped Price set forth in this Agreement will be available until 04/05/2020. If you have not accepted this offer by signing and returning this Agreement to us by this date, the offer to purchase home heating oil at the Capped Price set forth  herein automatically expires and the Capped Price set forth below will not be available. You will need to contact us for the current Capped Price that we are offering at such later date.

**CAPPED PRICE PROGRAM.** You have elected our Capped Price Program, for the period from 04/02/2020 through 04/30/2021 (the "Pricing Period"), we will deliver up to 1000 gallons of home heating oil to you at a price not to exceed $2.099 per gallon, plus applicable taxes. If our prevailing retail price for home heating oil drops below the Capped Price during the Pricing Period then you will pay our prevailing retail price for home heating oil. We have secured in advance the estimated amount of heating oil futures oil contracts or similar commitments to enable us to meet your needs during the Pricing Period. The Capped Price set forth in this paragraph will expire at the earlier of the end of the Pricing Period or when all of the Agreement gallons stated above are delivered to you, without further notification to you, and subsequent deliveries to you will be charged at our prevailing retail price for home heating oil that is in effect at the time of delivery.

Promotions : 1) First delivery promotional price $1.499

## RETAIL HEATING OIL DELIVERY AND SERVICES AGREEMENT
### Terms and Conditions

**1. PARTIES:** In this Agreement, the words "we," "us," "our" and "Seller" mean DDM Energy. The words "you," "your" and "yours" mean every Buyer or Applicant.

**2. DELIVERIES:** Heating oil deliveries will be made to you on an automatic delivery basis at the pricing set forth above, subject to these terms and conditions and those set forth above. You agree to accept each delivery and to pay the full amount shown on each delivery invoice in full within twenty five (25) days of receipt of the invoice, or if you are on a budget plan, budget payments are due within twenty five (25) days

of receipt of the statement. You agree to purchase your heating oil exclusively from us, maintain your account on automatic delivery and remit all outstanding balances when due.

**3. NON DELIVERY CONDITIONS:** We will not be responsible for failure to deliver heating oil for any of the following reasons: heating oil shortages, scarcity of labor, delay in deliveries by our suppliers, embargoes, strikes, riots, accidents, disorders, Acts of God, acts of any types by any governmental authority, or for any reason beyond our reasonable control. We will not be responsible for damages resulting from failure to deliver heating oil to vacant or unattended premises (in this Agreement, the term "vacant or unattended premises" means a location at which no adult occupant is present for at least twenty-four (24) consecutive hours). the amount due for deliveries, service charges and other amount due for more than thirty (30) days. You agree to pay a $20.00 fee for all returned checks and returned Automated Clearing House transactions.

**4. SERVICE CONTRACT:** If you have a service contract with us, you will pay the invoice in full or cancel within thirty (30) days, or if you are on a budget plan, in accordance with the terms of such plan.

**5. BILLING AND SERVICE CHARGES:** If you have not paid an invoice for heating oil, services and/or a service contract in full within thirty (30) days, we will send you a statement ("Monthly Statement") showing the amount due for deliveries, service charges and other amount due for more than thirty (30) days. You agree to pay a $20.00 fee for all returned checks and returned Automated Clearing House transactions.

**6. WHEN A LATE FEE WILL BE ADDED:** If we do not receive payment in full of the new balance on your Monthly Statement on or before the payment due date as reflected on the statement, a late fee ("Late Fee") will appear on your next Monthly Statement and will be added to your new balance on that Monthly Statement.

**7. LATE FEE:** The Late Fee is computed by a "Periodic Rate" of 1.5% per month, which is an ANNUAL PERCENTAGE RATE OF 18%. We will figure the Late Fee on your account by the Adjusted Balance Method. In no event will the Late Fee charge be more than the law allows.

**8. HOW TO AVOID LATE FEE CHARGES:** If we receive payment in full of the new balance on your Monthly Statement on or before the payment due date reflected on the statement, no Late Fee will be added to your Monthly Statement.

**9. COLLECTION COSTS; IRREGULAR PAYMENT AND DELAY OF ENFORCEMENT:** If we hire a collection agency or an attorney to collect your outstanding balance, you agree to pay, in addition to your balance, all cost of collection as permitted by law, including without limitation, reasonable attorney's fees and court costs. We can accept late payment, partial payments or payments marked "payment in full" without losing any of our rights under this Agreement. We can delay in enforcing our rights under this Agreement without losing any of our rights under this Agreement.

**10. CANCELLATION, BREACH AND LIQUIDATED DAMAGES: If you cancel your account for any reason, remove your account from automatic delivery, fail to make payment on time or otherwise breach any of the terms and conditions of this Agreement, we may suspend service under this Agreement or terminate this Agreement with or without notice and without further responsibility. If your account is cancelled for any of these reasons during the Pricing Period, we will suffer damages, which include our costs of purchasing the required futures oil contracts or similar commitments and our administrative costs. However, at that time our actual damages will be difficult or impossible to calculate. Therefore, you agree that if your account is cancelled or terminated for any of these reasons during the Pricing Period, you will be charged a $200 early termination fee. The early termination fee will be prorated based on remaining gallons to be delivered by the Seller under this Agreement compared to the maximum gallons we have agreed to**

deliver as set forth above and will no longer apply after Seller has completed deliveries of the gallons as agreed to herein, and the Buyer's payment in full of those deliveries.

I ACKNOWLEDGE THAT THIS CONTRACT CONTAINS
THE PRECEDING LIQUIDATED DAMAGES PROVISION.

*BC*

Applicant Initials

**11. LIMITATION OF LIABILITY; WAIVER OF SUBROGATION: IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, INDIRECT OR PUNITIVE DAMAGES (INCLUDING, BUT NOT LIMITED TO, LOST PROFITS OR SAVINGS) HOWEVER CAUSED, EVEN IF SUCH PARTY HAS BEEN ADVISED OR IS OTHERWISE AWARE OF THE POSSIBILITY OF SUCH DAMAGES.** To the extent any loss or damage is covered by insurance, the insured party waives any rights of recovery (including any rights of subrogation) against the other party.

**12. TERMINATION:** After the Pricing Period, either party may terminate this Agreement upon written notice, provided that you will remain responsible for all purchases made by you before we receive notice of the cancellation. Any gallons delivered to you after the Pricing Period has expired will be charged at our prevailing retail price for home heating oil that is in effect at the time of delivery.

**13. BUYER'S RIGHT TO CANCEL: YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.**

| *Brian Callery* | Brian Callery | 4/2/2020 |
|---|---|---|
| **Applicant Signature** | **Applicant Name (Please Print)** | **Date** |

| | | |
|---|---|---|
| **Co-Applicant Signature** | **Co-Applicant Name (Please Print)** | **Date** |

| *Terrance Joyce* | | 4/2/2020 |
|---|---|---|
| **Company Signature** | | **Date** |

By signing, YOU acknowledge that YOU have read and agree to all the terms and conditions of this Agreement.

DocuSign Envelope ID: F0467238-7A00-4377-8698-132425A31194

## YOUR BILLING RIGHTS

This notice contains important information about rights and responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL.** If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill as soon as possible. We must hear from you not later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information: (a) Your name and account number; (b) The dollar amount of the suspected error; and (c) Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.** We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days (sixty (60) days in Maryland), we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including LATE FEES, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any LATE FEES related to any questioned amount. If we did not make a mistake, you may have to pay LATE FEES, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone that we report you to that you have a question about your bill. And we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50.00 of the questioned amount, even if your bill was correct.

**SPECIAL RULE FOR CREDIT CARD PURCHASES.** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right: (a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and (b) The purchase price must have been more than $50. These limitations do not apply if the merchant is owned or operated by the creditor, or if the creditor mailed you the advertisement for the property or services.

**CREDIT CARD PAYMENTS.** If you have authorized us to pay your bill automatically with your credit card, savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

DocuSign Envelope ID: F0467238-7A00-4377-8696-132425A31194

## NOTICE OF CANCELLATION

_____
Insert date of Transaction

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE TO DDM Energy at P.O. Box 596 West Chester, PA 19381-0596 NOT LATER THAN MIDNIGHT OF _____ [insert 3rd business day after date of transaction above]

I HEREBY CANCEL THIS TRANSACTION

_____         _____
Buyer's Signature                                      Date

## NOTICE OF CANCELLATION

_____
Insert date of Transaction

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE TO DDM Energy at P.O. Box 596 West Chester, PA 19381-0596 NOT LATER THAN MIDNIGHT OF _____ [insert 3rd business day after date of transaction above]

I HEREBY CANCEL THIS TRANSACTION

_____          _____

Buyer's Signature                              Date

# EXHIBIT B

**Altemos/Atlantic**

**Telephone: 610-821-8500**

**\*\*Cap Price Program Contract\*\***

**Customer Name:** Tina Fasano

**Daytime Phone:** (570) 994-7877          **Evening Phone:**

**Address:**          1288 Grand Mesa Dr Effort, PA 18330

**Delivery Address:** ./1288 Grand Mesa Dr/./Effort,PA 18330 /

**Account Number** 5248613                    **Email:** bobandtinapaperless@yahoo.com

**Rate Per Gal. not to exceed $3.199   for up to** 400      **gallons**

Pricing Period of Cap Price Program Fm: **02/05/2018** To:  **02/28/2019** If our prevailing retail price for home heating oil drops below the Capped Price during the Pricing Period then you will pay our prevailing retail price for home heating oil. The Capped Price set forth in this paragraph will expire at the earlier of the end of the Pricing Period or when all of the Contract gallons stated above are delivered to you, without further notification to you, and subsequent gallons delivered to you will be charged at our prevailing retail price for home heating oil that is in effect at the time of delivery.

**Non Refundable Cap Price Program Fee of $64.00**

**The Capped Price set forth in this Agreement will be available until 02/16/2018**

**Cap Price Program Fee Method of Payment: Included in Budget**

### IMPORTANT TERMS AND CONDITIONS OF THE SALE AND PURCHASE ARE SET FORTH BELOW AND ARE PART OF THIS CONTRACT

By signing, you acknowledge that you have read and agree to the terms and conditions listed in this Contract. Terms of this Contract are not valid until a fully executed and signed Contract is returned to our office, postmarked by the due date listed above.

**You may cancel this agreement if it has been signed by a party thereto at a place other than an address of the seller, which may be his main office or branch thereof, provided you notify the seller in writing at his main office or branch by ordinary mail posted, by telegram sent or by delivery, not later than midnight of the third business day following the signing of this agreement. See the attached notice of cancellation form for an explanation of this right.**

| _Tina Fasano_ | Tina Fasano | 2/6/2018 |
|---|---|---|
| **Customer Signature** | **Customer Name (please print)** | **Date** |
| _Dianne Bottomley_ | | 2/9/2018 |
| **Company Signature** | | **Date** |

### Terms & Conditions of the Cap Price Program

1. This document is a binding contract between the CUSTOMER and the SELLER.

2. CUSTOMER agrees that SELLER shall be the sole supplier of heating oil to the Delivery Address for the term of this Contract and CUSTOMER agrees to accept deliveries by automatic delivery from SELLER.

3. CUSTOMER agrees to prompt payment terms of 30 days throughout the duration of this Contract. Accounts over 30 days forfeit contracted pricing at the discretion of the SELLER. All outstanding balances and charges must be paid in full before CUSTOMER can participate in any program.

4. A CUSTOMER enrolled in the Budget Payment Program must remain current in order to receive the contracted pricing. Accounts not current forfeit contracted pricing at the discretion of the SELLER. All outstanding balances and charges must be paid in full before CUSTOMER can participate in any program.

DocuSign Envelope ID: C3FEA889-EC46-48F1-8746-D17CD8566AEA

**Terms & Conditions of Cap Price Program (continued from first page)**

5. The Cap Price PROGRAM FEE is due at the time of signing of this Contract and is non-refundable.

6. The Contract agreed upon price will expire at the earlier of the end of the Pricing Period or when all of the contracted gallons stated above are delivered to CUSTOMER without further notification and subsequent gallons delivered will be made at the prevailing retail price for home heating oil in effect at the time of delivery.

7. The SELLER has purchased the required minimum futures oil contracts or similar commitments to enable it to make this contract with CUSTOMER.

8. If the CUSTOMER sells the property at the address in this Contract during the term of the Contract and moves out of SELLER's service area, the CUSTOMER may transfer the Contract to the new owner with the new owner's consent and with the new owner signing a new contract with the SELLER.

9. Heating system service is by separate contract and is invoiced separately from this Contract.

10. This Contract may be terminated at the sole discretion of SELLER if: a) CUSTOMER fails to purchase 100% of its heating oil needs at Delivery Address on an automatic delivery basis from the SELLER, b) CUSTOMER's account is more than 30-days delinquent, or c) CUSTOMER fails to provide unobstructed access to its oil tank.

11. Force Majeure. CUSTOMER acknowledges that SELLER may be prevented from supplying heating oil at the agreed to price due to factors beyond control of SELLER. CUSTOMER agrees that SELLER shall not be liable for any failure to supply heating oil at the agreed to price to the extent that any such failure is due to any such factors, including, but not limited to, (1) failure of public utilities, common carriers or suppliers to provide necessary raw materials, energy or other supplies or services to SELLER, (2) unusually severe weather conditions; (3) fires, explosions, floods or other acts of God; (4) war, civil commotion, riots or labor unrest; and (5) requirements of applicable federal, state, local or foreign governmental laws, rules, regulation, taxes or orders. SELLER agrees that if it suspends supplying heating oil at the agreed to price due to any such factor, it will make reasonable efforts to resume supplying heating oil at the agreed to price as soon as possible.

12. Upon expiration of this Contract, the CUSTOMER agrees to remain on automatic delivery at SELLER's prevailing retail price for home heating oil that is in effect at the time of delivery until such time as a new signed contract is received or the CUSTOMER provides SELLER with a written request to terminate deliveries. Written request may be by postal letter. CUSTOMER will remain responsible for all purchases made by CUSTOMER before SELLER receives notice of the cancellation.

13. **LIMITATION OF LIABILITY; WAIVER OF SUBROGATION:  IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, INDIRECT OR PUNITIVE DAMAGES (INCLUDING, BUT NOT LIMITED TO, LOST PROFITS OR SAVINGS) HOWEVER CAUSED, EVEN IF SUCH PARTY HAS BEEN ADVISED OR IS OTHERWISE AWARE OF THE POSSIBILITY OF SUCH DAMAGES.**  To the extent any loss or damage is covered by insurance, the insured party waives any rights of recovery (including any rights of subrogation) against the other party. SELLER shall not be responsible for damages for failure to deliver heating oil vacant or unattended premises (in this Contract, the term "vacant or unattended premises" means a location at which no adult occupant is present for at least twenty-four (24) consecutive hours).

14. This Contract shall be governed by and construed in accordance within the laws of the state in which the Delivery Address is located.

15. **BUYER'S RIGHT TO CANCEL:  YOU THE BUYER, MAY CANCEL THIS TRANSACTIONAT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTON. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.**

By signing, you acknowledge that you have read and agree to the terms and conditions listed in this Contract. Terms of this Contract are not valid until a fully executed and signed Contract is returned to our office, postmarked by the due date listed above.

| | | |
|---|---|---|
| *Tina Fasano* | Tina Fasano | 2/6/2018 |
| **Customer Signature** | **Customer Name (please print)** | **Date** |
| *Dianne Bottomley* | | 2/9/2018 |
| **Company Signature** | | **Date** |

2/4

DocuSign Envelope ID: C9FEA889-EC48-48F1-8746-D17CD8586AEA

## NOTICE OF CANCELLATION

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS AFTER THE DATE THAT YOU SIGN AND DATE THE ATTACHED CONTRACT.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND A TELEGRAM TO:

**Altemos/Atlantic Energy**
**1109 Union Blvd.**
**Allentown, PA 18109**

NOT LATER THAN MIDNIGHT OF THE <u>THIRD (3RD) BUSINESS DAY AFTER YOU SIGN AND DATE THE ATTACHED CONTRACT.</u>

I HEREBY CANCEL THIS TRANSACTION.

Acct#:  5248613　　　　————————————————  (Date)

Name:  Tina Fasano　　　　————————————————  (Purchaser's Signature)

## NOTICE OF CANCELLATION

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS AFTER THE DATE THAT YOU SIGN AND DATE THE ATTACHED CONTRACT.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND A TELEGRAM TO:

**Altemos/Atlantic Energy**
**1109 Union Blvd.**
**Allentown, PA 18109**

NOT LATER THAN MIDNIGHT OF THE <u>THIRD (3ᴿᴰ) BUSINESS DAY AFTER YOU SIGN AND DATE THE ATTACHED CONTRACT.</u>

I HEREBY CANCEL THIS TRANSACTION.

Acct#:  5248613                          ———————————————  (Date)

Name:  Tina Fasano                     ———————————————  (Purchaser's Signature)