# Exhibit E

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------------x
     RYAN MELVILLE, on behalf of
 3   himself and other similarly
     situated,
 4                   Plaintiffs,

 5           -against-                      21 CV 10406
                                            Conference
 6   HOP ENERGY, LLC,

 7                   Defendants.
     ------------------------------------x
 8                                   United States Courthouse
                                     White Plains, New York
 9                                   July 17, 2024

10

B e f o r e:  THE HONORABLE VICTORIA REZNIK,
11                                   District Judge

12   APPEARANCES:
     WITTELS MCINTURFF PALIKOVIC
13             Attorneys for Plaintiff Melville
               18 Half Mile Road
14             Armonk, New York 10504
     J. BURKETT MCINTURFF
15   DANIEL J. BRENNER
               -and-
16   SHUB & JOHNS LLC
               Attorneys for Plaintiff Melville
17             Four Tower Bridge
               200 Barr Harbor Drive, Suite 40
18             West Conshohocken, Pennsylvania 19428
     JONATHAN SHUB
19   SAMANTHA E. HOLBROOK

20   NIXON PEABODY LLP
               Attorneys for Defendant HOP Energy, LLC
21             Exchange Place
               53 State Street
22             Boston, MA 02109
     MATTHEW T. McLAUGHLIN
23   KEVIN SAUNDERS

24

25       ** Transcribed from digitally recorded proceedings **
```

1          THE DEPUTY CLERK:  Good morning.

2          This is the Melville and Mullaney cases.  Will

3    counsel please introduce themselves starting with the

4    plaintiff.

5          MR. McINTURFF:  Good morning, your Honor.

6          This is Burkett McInturff on behalf of plaintiffs,

7    Melville and Mullaney and the proposed classes in both of those

8    cases.

9          And I also have with me on the line, my colleague,

10   Dan Brenner from Wittels McInturff Palikovic.

11         MR. SHUB:  Good morning, your Honor.

12         This is Jonathan a Shub from Shub & Johns, along with

13   Samantha Holbrook from my firm.  Together we represent

14   plaintiffs along with Mr. McInturff.

15         THE COURT:  Okay.  Now for the defendant's side.

16         MR. McLAUGHLIN:  Good morning, your Honor.

17         This is Matthew McLaughlin, and I'm joined with Kevin

18   Saunders on behalf of the defendant.

19         THE COURT:  Okay, so initially I scheduled this

20   status conference so I could check in with the parties about

21   discovery after receiving your joint status letter about the

22   status of ESI discovery and the privilege review, and then I

23   saw that there was a letter filed this morning by plaintiffs'

24   counsel relating to a pending settlement in the Callery case

25   and its potential impact on these cases.

1          So why don't I start by asking Mr. McInturff to give

2    me an update on the status of discovery generally, and then how

3    you think this new issue with the settlement impacts that.

4          MR. McINTURFF:  Okay.  Thank you, your Honor.  This

5    is Burkett McInturff.

6          In terms of the status of discovery, we had expected

7    this call today to cover three topics, which is the timeline

8    for the defendant to complete its document production, which

9    was supposed to be completed in April; getting depositions

10   scheduled.  We have ten depositions that we've noticed and have

11   been trying to get things scheduled.  And then extending the

12   August 9, fact discovery cutoff to account for the delays that

13   have occurred with defendant's slow document production.  So

14   that's what we thought we would be talking about and still

15   think that's what we should talk about today.  Instead, as

16   we -- as we noted in our letter, we found out from defense

17   counsel yesterday evening that the settlement that they

18   announced also yesterday afternoon in Callery seeks to

19   extinguish the Melville and Mullaney classes.  Defense counsel

20   notified us on the call that he would be seeking a stay.

21         My first question was at least getting defense

22   counsel to recognize that even if defendant sought a stay that

23   no stay could be imposed unless and until the Court ordered

24   one, which he agreed, but in terms of the next steps related to

25   the Callery settlement, obviously, there is no stay application

1    pending.  We will oppose any stay application.

2          As we said in our letter, we're evaluating our

3    options now, because, again, we learned of this settlement

4    yesterday evening.  It's our position that the settlement is an

5    overt violation of the Court's interim class counsel order

6    which made it specific.  It specifically appointed my firm and

7    the Shub & Johns firm to negotiate any settlement affecting

8    Melville and Mullaney.

9          Defendant has disobeyed that order and, you know,

10    quite frankly, we have never seen this before.  We've never

11    seen a defendant settle a case out after interim class counsel

12    has been appointed.  So we are researching the remedies because

13    between Mr. Shub's firm and my firm, we've never had this

14    happen.

15          But again, from our perspective, what we need to talk

16    about today is still getting a commitment from the defendant as

17    to when it's finally going to finish its document production,

18    setting a deadline for the defendant to schedule the

19    depositions we've noticed.  Again, we've noticed depositions.

20    Defense counsel has told us that they're not available, but

21    they haven't scheduled them.  So we need to schedule them, you

22    know, this week so that we can get them on the schedule, and

23    then we need to figure out how much time is needed to complete

24    fact discovery, which again, closes on August 9th.

25          It's plaintiffs' position before, before we learned

1    of the Callery settlement yesterday, we thought a reasonable

2    extension would be 90 days, which would allow us to take the

3    ten depositions, finish reviewing the million documents.

4    Defendant has produced over a million documents.  So we would

5    complete our review of that in three months and then move on to

6    the next steps of the cases.

7            Obviously, with the additional motion practice that's

8    going to occur as a result of, you know, both the defendant's

9    anticipated stay motion and any motion practice we engage in as

10   a result of their violation of the Court's interim class

11   counsel order is going to require, likely substantial

12   additional resources and briefing so we believe at this

13   juncture probably it makes sense to extend the fact discovery

14   deadline instead of three months by four months, but a lot of

15   that depends on how quickly the defendant is going to -- you

16   know, do the discovery, undertake the discovery task it needs

17   to do, which is, again, finish producing documents and

18   scheduling the depositions that we've noticed.

19            THE COURT:  Okay.  Couple of questions for you.

20            First, what did you expect to happen after you were

21   appointed interim class counsel in terms of a potential

22   settlement in Callery?

23            With that in your pocket, what did you expect would

24   happen rather than what did happen?

25            MR. McINTURFF:  Well, no, under the law when you're

1    appointed interim class counsel to represent a proposed class,

2    that no other counsel has authority to negotiate a settlement

3    of that class.  We didn't hear any -- we were never advised the

4    settlement that the class was -- the class claims in Melville

5    and Mullaney were being -- attempting to be settled.  It was

6    all done behind our back.  So once we were appointed interim

7    class counsel, we expected, as we've maintained all along that

8    our case would be separate and severed from Callery and Callery

9    was more than welcome to settle the claims of the capped-price

10   customers that they brought.  But we distinguished our cases.

11   We brought separate cases.  So we didn't -- you know, once the

12   interim class counsel order was granted, we didn't have any

13   inclination whatsoever that the class that we were authorized,

14   solely authorized to negotiate for, would be settled behind our

15   backs.

16           THE COURT:  So you would expect to at least initially

17   when you were briefing that motion, we had argument on it,

18   there were settlement discussions among all parties in all the

19   cases?  So that didn't continue?

20           MR. McINTURFF:  No, no.  The settlement

21   discussions -- during that period, there was a global

22   settlement demand pending which was agreed to by all parties

23   and then the defendant never responded to that demand.  And

24   then we learned -- we learned of the settlement which,

25   obviously, it's not consistent with the global settlement

1    demand that was outstanding.  We learned of this $2 million

2    settlement yesterday.

3            THE COURT:  And it's your understanding that this

4    proposed settlement doesn't carve out the claims that were

5    brought by the Melville and Mullaney plaintiffs.

6            MR. McINTURFF:  Correct.  In fact, it expressly

7    includes them.

8            THE COURT:  Okay.  And in terms of the deadlines that

9    you're seeking to extend, just remind me briefly.  So August

10   9th was the fact discovery deadline.  There was an ultimate

11   discovery deadline that had been extended by Judge Karas to

12   December.

13           Between August 9th and December, were there proposed

14   dates for a briefing of -- or not a briefing, but expert

15   discovery?  Is that part of the plan that you'd have to try

16   to --

17           MR. McINTURFF:  Correct.

18           THE COURT:  -- (indiscernible) before the end of the

19   year?

20           MR. McINTURFF:  Correct.

21           THE COURT:  Okay.  So the issue, at least with

22   respect to extending the fact discovery deadline, assuming we

23   get there, that's something I can do, but the problem is still

24   that under Judge Karas' case management plan, he still has the

25   ultimate say on whether your ultimate discovery deadline gets

1    extended beyond December 13.

2            So if I were to agree to extend your fact discovery

3    cutoff as much as you say, that would necessarily bump into

4    your expert discovery dates and, therefore, impact the ultimate

5    discovery deadline of December 13, which I'm assuming you also

6    would -- you would also be seeking to extend; am I right about

7    that?

8            MR. McINTURFF:  Correct, your Honor.

9            THE COURT:  Right.  So then essentially that means

10   that the request to extend these deadlines ultimately would

11   have to go to Judge Karas and not me.  I don't control that.

12   You would have to make an application to Judge Karas to explain

13   why the ultimate discovery deadline needs to go beyond

14   December 13th, in light of everything you've said.  I can only

15   manage sort of the interim fact discovery deadline for you.  So

16   that's sort of the first thing.

17           The second thing is, in your mind, while this motion

18   to stay gets briefed, or there's other motion practice to

19   address the Callery settlement, in your mind, you'd want to

20   move forward with all the depositions and all the other

21   discovery that's contemplated, or was the idea that you wanted

22   this extension so that you had a breather while that motion

23   practice is happening but still have discovery deadlines on the

24   calendar?

25           MR. McINTURFF:  No, no, no.  We would need the

1  extension.  Again, the issue was this document discovery should

2  have, should have, you know, been completed a while ago and it

3  hasn't been completed.  But, no, we don't, we don't need a

4  breather.  In fact, we want to complete discovery in this case

5  and continue to prosecute it as we've been doing.

6          We probably need additional time now because of the

7  additional motion practice that is contemplated, but, no.

8          THE COURT:  Okay.  But you want to move forward

9  with -- so the extension is both to address the fact that you

10  need more time just to complete fact discovery and also

11  building in extra time because of motion practice.

12          MR. McINTURFF:  Correct.

13          THE COURT:  Okay.  So I'll turn to the defendants to

14  respond.

15          Mr. McLaughlin, are you speaking on behalf of the

16  defendant today?

17          MR. McLAUGHLIN:  I am, your Honor.

18          THE COURT:  Okay.  Go ahead.

19          MR. McLAUGHLIN:  I guess I'll go in order and respond

20  as my notes reflected Mr. McInturff's points.

21          With respect to the discovery, the only remaining

22  discovery is the linear privilege review that we are doing for

23  the documents that were withheld based on the searches we ran

24  in which we produced the millions of documents or pages of

25  documents to plaintiffs months ago.  So that's the only

1   remaining piece of document discovery.  We are, I think, about

2   two-thirds complete with that, but that is the only piece.  We

3   are sending them on a weekly basis any documents, and there

4   aren't many, that after further review we determine are not

5   privileged.  So this is a very, very small piece of the

6   document discovery that's left.

7           THE COURT:  So when was that substantial production

8   completed?  Maybe you were doing it on a rolling basis, but

9   before you started sending out documents that fell out of the

10  privilege review, is there a timeline for when that document

11  production had been completed?

12          MR. McLAUGHLIN:  There was.  I don't have it in front

13  of me but it was -- it was months ago.

14          THE COURT:  Okay.  So months ago you produced a

15  substantial portion of the documents.  Since that time you've

16  been reviewing documents that were captured by the privilege

17  review and then producing on a rolling basis documents that

18  fall out of that review that you determine aren't privileged;

19  is that right?

20          MR. McLAUGHLIN:  Exactly, your Honor.

21          THE COURT:  Okay.  And so what is the timeline then?

22  So I guess -- what is the timeline of that document production

23  being complete?  I understand it's on a rolling basis but you

24  said you're two-thirds done.

25          MR. McLAUGHLIN:  We had -- during out -- before our

1    last status update to the Court, we had estimated, based on the

2    progress by that point, to be -- have it complete later this

3    week.  We were a little too aggressive in our estimation.  So

4    we are probably weeks, at least three to four weeks away from

5    fully completing that linear review of the privilege materials.

6            THE COURT:  Okay.  So that means what date are you

7    estimating at this point to be done?  And does that mean --

8    will rolling productions be happening during those three weeks

9    or this is the last push?

10           MR. McLAUGHLIN:  Well, yes.  As we sit here today, we

11   are continuing the review and we will continue to make the

12   rolling productions.

13           But as Mr. McInturff alluded to, we will also be

14   seeking, and that was an issue I wanted to raise, a stay of

15   activity in Melville and Mullaney in light of the settlement,

16   which I can talk about now, or I can talk about later.  But so,

17   you know, subject to that request, yes, we would continue our

18   review and production of those privilege materials.

19           THE COURT:  Okay.  And then in terms of getting the

20   depositions scheduled, which is the other issue that

21   Mr. McInturff raised, putting to one side the stay issue, what

22   has been the holdup in scheduling depositions?  It sounds like

23   the bulk of the documents have been produced a couple months

24   ago.

25           So what needs to be done for depositions to be put on

1    the calendar, and can you explain any basis for the delays in

2    that regard?

3            MR. McLAUGHLIN:  Sure.  I was surprised to hear that

4    there's been delays.  Mr. McInturff or Mr. Brenner literally

5    served us the notices last week for the first time for

6    depositions scheduled for this week and next week and so

7    without any consultation of availability.  Now, they said in

8    their cover email that they would work with us on dates.

9            I reached out to them as part of call, our scheduled

10   call yesterday, to discuss dates.  They, and I'm not blaming

11   them, because I also revealed to them that we have the

12   settlement, they weren't prepared to talk discovery in light of

13   the sort of the elephant in the room, the settlement.  So we

14   just haven't had a conversation about scheduling and

15   coordinating depositions.

16           But I am prepared to do that.  I'm not dragging my

17   feet on that.  We just got the notices.

18           THE COURT:  I see.  Okay.  I didn't understand that.

19           And then -- so tell me about the settlement and tell

20   me your position as to why it was negotiated so that it

21   subsumes the Melville-Mullaney cases, or at least tell me, is

22   that true?

23           MR. McLAUGHLIN:  Sure.  Yes.  It is true.  The

24   proposed class would cover the purported Melville and Mullaney

25   classes.  But just for -- just for some context and to correct

1   at least one misstatement from my perspective that

2   Mr. McInturff relayed, back in -- while -- while the

3   plaintiffs' motion to be appointed interim class counsel was

4   pending, and then if your Honor recalls, we had a -- it was

5   preceded by a letter motion that we had a conference about it,

6   and then full briefing before the Court made a decision, the

7   parties, including plaintiffs in these cases and in Callery

8   were engaged in continued global resolution efforts with

9   Judge -- former Judge Diane Welsh of JAMS.

10          Those global settlement talks continued throughout

11  the early part of this year.  We had a status conference in the

12  midst of the briefing on the interim class counsel motion with

13  the court in Callery.  We informed Judge Rufe of our ongoing

14  global settlement talks, we informed Judge Rufe of plaintiffs'

15  effort in New York to be appointed interim counsel.

16          Their request, I would note, in their proposed order

17  wanted to give them sole settlement authority in the cases.

18  Your Honor's order didn't do that.  Your Honor's order made no

19  such declaration, but Judge Rufe instructed us to continue to

20  work on global resolution, if possible, but if we weren't able

21  to do that, that we should try to resolve Callery.  And so

22  that's exactly what happened.

23          We continued after that February conference to work

24  on a global resolution via Judge Welsh.  At the end of April,

25  Mr. McInturff made it clear that he did not view our global

1    settlement discussions as ongoing.

2            Judge Welsh declared an impasse.  The holdup, based

3    on, and it's in the plaintiff in Callery's motion papers, which

4    I will provide for the Court, was the holdup was New York

5    counsel.  They essentially took themselves out of global

6    settlement discussions.

7            Only after that point, and only after that point, did

8    we pick up settlement discussions with plaintiffs' counsel in

9    Callery.  We retained Judge James Giles, the former judge of

10   the Eastern District of Pennsylvania, who had previously been

11   appointed the Special Master by Judge Rufe in the Callery case

12   and who was familiar with the facts of the case in that role to

13   try to mediate a settlement in the Callery case and we were

14   able to reach a settlement after those efforts.

15           The settlement, I should note, is -- and I believe we

16   have related this to your Honor, but the settlement is

17   basically the remaining insurance proceeds from the insurance

18   policy that is available for funding the defense costs in this

19   case.

20           The defendant's financial position is dire.  We

21   shared information with respect to its financial condition with

22   both plaintiffs' counsel in Melville and Mullaney, and

23   plaintiffs' counsel in Callery.  We made no secret of the

24   situation that my client was in.  The situation was only

25   getting worse as months passed, and the reality is, and as the

1    plaintiffs' Callery's forensic accountant expert report that

2    was filed in connection with the motion for approval papers

3    yesterday, indicates this is the -- this is really all that can

4    be used to fund the settlement, the remaining insurance

5    proceeds.

6            The settlement -- the insurance proceeds, are wasting

7    though.  Every dollar that gets spent on continued defense

8    costs comes out of the settlement fund that would otherwise pay

9    the class members.  So the resolution is for essentially HOP to

10   tender the remaining limits of the policy to settle the case.

11           But the notion that I violated or thumbed my nose at

12   this Court's order, I strongly reject that.  We made every

13   effort to include plaintiffs' counsel in these cases in the

14   settlement negotiations.  We invited them to join the original

15   mediation before Judge Welsh.  We worked with them for months

16   and months after that and only when they -- they essentially

17   selected out of the continued negotiations did we move forward

18   with a Callery settlement.  And there was nothing in your

19   Honor's order that purported to limit it anyway, the Callery

20   litigation, and it's -- I'm not disputing that Mr. McInturff or

21   Mr. Shub may not have dealt with this scenario before, but it

22   is not an unusual scenario that even when interim class counsel

23   is appointed in one case, that a settlement can be brokered in

24   another pending case, and that settlement is allowed to move

25   forward.  And the case in which interim class counsel was

1    appointed, even if the settlement impacts those claims, there's

2    nothing improper about moving forward with settlement

3    discussions in a totally separate case.

4           So that's all that happened here.  I mean, this was

5    not a -- this is not an effort to exclude New York counsel,

6    this was -- this was the result only after including them as

7    much as we could.

8           MR. McINTURFF:  Your Honor.

9           THE COURT:  Let me just ask --

10          MR. McINTURFF:  May I respond to this?

11          THE COURT:  You can, but let me just ask

12   Mr. McLaughlin.

13          So did you -- what did you think was the import of

14   having Mr. McInturff and Shub & Johns, that those two firms be

15   appointed as interim class counsel?  What did you think the

16   affect of that was?

17          MR. McLAUGHLIN:  I understood, your Honor, that they

18   were appointed interim class counsel over the Melville and

19   Mullaney purported classes in these cases, but that that did

20   not impact the first filed, separate Callery case that was

21   proceeding -- they were not consolidated in any way.

22          These -- we're, obviously, not in the MDL.  It was a

23   totally separate litigation and I did not view that order as

24   requiring me, for example, not to -- not to heed the directive

25   of Judge Rufe to continue to trying to work on a settlement of

```
 1    Callery, if the interim class in Melville and Mullaney weren't
 2    interested in further negotiations.  So I understood that they
 3    were appointed interim class counsel in Melville and Mullaney
 4    but we -- it's not true that we are expressly wrapping into
 5    Callery, Melville and Mullaney, it's we are settling the
 6    Callery class as, you know, as was alleged initially.
 7              It's the class that plaintiff in Callery asserted
 8    years before the Mullaney case and a year and a half before the
 9    Melville case was even filed.  So that, in my view, is not
10    inconsistent with your Honor's order.
11              THE COURT:  Okay.
12              MR. McINTURFF:  Your Honor --
13              THE COURT:  Mr. McInturff, go ahead.
14              MR. McINTURFF:  Yes, please.
15              And I'm also going to let my colleague, Mr. Shub,
16    intervene because he was dealing closely with Judge Welsh.
17              But if I could just correct some of the most
18    outlandish statements that defense counsel has made.
19              The first one being that they settled the class that
20    Callery initially pled.  Callery pled an opt-out class of
21    Pennsylvania residents that sought to include any -- sorry, I
22    apologize, an opt-in class of non-Pennsylvania residents, so it
23    was a class of Pennsylvania residents, and then any other
24    resident from another state could affirmatively opt in.  That's
25    the class that Callery originally pled.
```

1          Callery is also a capped-price customer.  Defendant

2   moved to stay this case over a year ago claiming that the cases

3   were overlapping.  Judge Karas denied that stay.  It's

4   completely absurd to say that they're just simply settling the

5   original case that Callery brought.

6          Callery also spent two years trying to get back to

7   state court.  You can't settle a multi-state federal class

8   action in state court.  And the notion that we were -- that we

9   were invited all along to participate in their settlement is

10  completely ridiculous and, honestly, I have never heard such --

11  such statements from a member of the bar.  It really, really is

12  astonishing.

13         But I'll let Mr. Shub fill you in a little bit more

14  about what actually transpired here.

15         MR. SHUB:  Hi, your Honor.  This is Jonathan Shub.

16         So, I mean -- just take a step back.  This is a

17  classic, classic reverse auction race to the bottom situation.

18  HOP knew that we were appointed, over their objections you'll

19  recall, appointed interim class in the New York cases.

20         It is true, your Honor, that we were participating in

21  settlement discussions.  We, on behalf of the New York cases,

22  determined that the settlement funds that HOP was making

23  available was insufficient.  It still is insufficient.  HOP has

24  viewed this case as if the insurance policy is the outer bounds

25  of what they can pay in this case.  That's an outrageous

1  assertion to begin with because their insurance policies have

2  no impact on their ability to pay.  That's just what they would

3  like to pay.

4          So when the settlement negotiations broke down, they

5  then approached counsel in the Callery case, okay, in an

6  attempt to go around us, behind our back, and settle our cases

7  because we wouldn't agree to their lowball offer.  Callery,

8  they found a very willing participant in the Callery counsel to

9  do that.

10          But in order to do that, they would have -- they had

11  to amend their complaint, come up with a new class, this was

12  not Callery's class as Mr. Burkett -- Mr. McInturff pointed

13  out.  Judge Karas already rejected the fact that the Callery

14  class somehow overlapped and consumed ours.  They have now made

15  the Callery class overlap and consume ours, because they

16  weren't happy that we didn't want to accept their lowball

17  offer.

18          Callery can do what they want in their case; that's

19  their business.  We don't represent fixed-price customers,

20  Callery does.  But for them now to come in here and say that

21  they can just flaunt an order by this Court that sought to do

22  exactly what we were seeking, that is to protect the New York

23  cases from being settled out from under our protections is

24  frankly outrageous.  You know, this is not a situation where we

25  were all together and we decided to do this.  They went behind

1   (inaudible) friendly counsel in a reverse auction.  It's

2   classic.

3          And your order, your Honor, frankly, was rightfully

4   entered so as to try to prevent exactly what happened and we

5   find it to be, frankly, astounding that counsel would come in

6   here and somehow say that they didn't violate the order.  And--

7   it's really astounding to me.

8          THE COURT:  All right.

9          MR. McLAUGHLIN:  Can I respond, your Honor?

10         THE COURT:  Yes.  Go ahead, Mr. McLaughlin.

11         MR. McLAUGHLIN:  So first of all, with respect to

12  this notion that Callery was a state court case, your Honor may

13  recall, this was raised early on in the motion for interim

14  counsel briefing and discussion.  The attorney in the Callery

15  case advised both me and the judge that she would be amending

16  her complaint to comport with Rule 23, because once Judge Rufe

17  ruled that the case would stay in federal court, obviously,

18  Rule 23 applies and not state court rules, and your Honor

19  pointed that out on one of our last conferences.

20         The only reason that complaint was not filed

21  previously was because the parties agreed to preserve resources

22  while we were working on settlement, so the idea that this was

23  a last minute, let's turn this into -- from a state court case

24  to a federal case, is totally belied by the record in the case.

25         Secondly, Mr. Shub is not correct that we excluded

1    them in any way from the settlement.  It is true that their

2    position was they didn't agree with the financial -- they

3    didn't agree with the consolidated financial statements in what

4    they said, for some unknown reason, but it is absolutely the

5    case that they were invited, that Judge Welsh tried to move

6    New York counsel from their settlement position in order to

7    continue the negotiations, and she declared an impasse as a

8    result of their failure to move any further.

9          So this was not a strategy by HOP.  This was not a

10   strategy by Callery.  We had no -- we had every intention of

11   trying to resolve this case globally.  That's always been our

12   intention.  It was only when it was made clear to us that

13   New York counsel was not willing to move from their settlement

14   position that we moved forward with trying to resolve Callery.

15         And from the plaintiffs' perspective in Callery, it

16   was because the funds available that would be distributed to

17   the class were continually being depleted by Mr. McInturff's

18   firm and Mr. Shub's firm in these litigations.

19         THE COURT:  Okay.  And was there any discussion in

20   settling Callery to carve out the Melville and Mullaney cases,

21   those classes?

22         MR. McLAUGHLIN:  No, your Honor, because the Callery

23   claimant -- I think I've been consistent about this and I think

24   your Honor noted it -- the complaint as alleged -- from the

25   original complaint, it subsumed the defined Melville -- they

1    want to say it was a capped -- it's limited somehow to a capped

2    contract.  The capped contract involved in Callery, the

3    plaintiff in that case, also has the prevailing, the prevailing

4    price concept, which is the exact claim that the Melville

5    complaint and the Mullaney complaint allege.

6         So, no, there was not an attempt to carve it out

7    because from the plaintiffs' perspective in that case, they

8    already filed a claim on behalf of those individuals.

9         THE COURT:  Okay.  Well, let's take, I guess, one

10   thing at a time.

11        The first thing is you'd like to -- you indicated

12   that you are hoping to move to stay.  Is that right?  Pending

13   the --

14        MR. McLAUGHLIN:  Yes, your Honor.

15        THE COURT:  Okay.  So I guess first thing is it seems

16   to me that we need to set a briefing schedule on that.  Again,

17   I'm not going to decide that just on this call, based on, you

18   know, an inclination that you plan to stay.  So given all the

19   moving parts, what do you propose -- when would you -- what do

20   you propose or have the parties talked about what a briefing

21   schedule would look like?  And I assume it would be expedited

22   in light of all the things that are going on in the case.

23        MR. McLAUGHLIN:  Your Honor, we have not discussed --

24   I have not discussed the schedule.  On the call yesterday they

25   indicated they would not agree to a stay, but I am -- yes,

```
 1   you're right, we would like an expedited briefing schedule, as

 2   expedited as possible, because, again, every -- every

 3   additional dollar spent comes out of the settlement fund.  And

 4   so we think it's important for a stay to be -- at least the

 5   Court to hear the argument.

 6            So, you know, I can -- I can file something as soon

 7   as -- yeah, I could try to get it done today.  I'd like, by at

 8   least tomorrow to be able to file the motion, if that's

 9   possible.

10            THE COURT:  Okay.  And Mr. McInturff, how long would

11   you want to respond?

12            MR. McINTURFF:  Let me confer briefly with my team,

13   whose blood, sweat and tears would go into this.

14            THE COURT:  Okay.

15            MR. McINTURFF:  Hold on one second.  Your Honor, I'm

16   going to confer off line, so I'm going to mute my phone.

17            THE COURT:  Understood, go ahead.

18            (Pause)

19            MR. McINTURFF:  So your Honor, we're talking the

20   defendants would file their papers on the 18th?

21            THE COURT:  Yeah, I was going to say no later than

22   Friday, July 19th.

23            MR. McINTURFF:  Okay.  Well, so maybe ten days from

24   the 19th?  I guess that's Wednesday, the 31st.

25            THE COURT:  Okay.
```

 1             MR. McINTURFF:  Actually, we have a filing in another

 2    matter on the 31st.  Could we do August 1?

 3             THE COURT:  Okay.

 4             MR. McLAUGHLIN:  Your Honor, if I could just -- I

 5    mean, that's not really expedited.  That's not much different

 6    than the normal motion Rule 6.1 under the Federal Rules would

 7    provide.  But if they need additional time --

 8             MR. McINTURFF:  With all due respect, your Honor.

 9             MR. McLAUGHLIN:  -- to stay -- excuse me.

10             MR. McINTURFF:  Your Honor, this was sprung on us

11    yesterday.  This -- we were not informed of any ongoing

12    settlement discussions.  We were told yesterday that on a call

13    where Mr. McLaughlin emailed us and said, let's set up a call

14    to schedule depositions.  And instead he opened the call with

15    we've settled your case out.

16             With all due respect, we didn't expect to be briefing

17    a stay motion when we got on the call yesterday at 5:30.

18             THE COURT:  Okay.  Well, so Mr. McLaughlin, what were

19    you saying?

20             MR. McLAUGHLIN:  Could we at least have an agreement

21    that no depositions will take place or try to be scheduled in

22    this period while the briefing --

23             MR. McINTURFF:  The law is clear, your Honor, that no

24    stays are imposed just because the defendant moves for a stay.

25    I mean, this is the reverse auction playbook.  This is it.

1    They're doing every single thing that is in the playbook.  Go

2    settle on the cheap, then move for a stay and grind everything

3    to a halt.

4           Judge Karas already rejected this ploy years ago.

5    The Court entered an interim class counsel order to avoid this.

6    We predicted it.  Your Honor will recall that you asked

7    Mr. McLaughlin point blank whether he was going to reverse

8    auction this case and he equivocated.  Your Honor noted that in

9    the interim class counsel order.

10          So we strenuously object to the idea that discovery

11   gets stayed while we brief their motion, which Mr. McLaughlin

12   agreed yesterday on the call is not the law in this circuit.

13   There's a law in this --

14          THE COURT:  Your Honor, this McInturff --

15          MR. McINTURFF:  (indiscernible) no stay until the

16   stay is granted.  And it's not going to be granted in this

17   case.  This is a -- this is an attempt to extinguish more than

18   $100 million in liability that was taken from tens of thousands

19   of customers for $2 million in another case that has been

20   languishing in Pennsylvania for four years.  That's what this

21   really is, your Honor.

22          THE COURT:  So Mr. McLaughlin, Mr. McInturff is

23   proposing August 1.  Would you need a reply?  I'm assuming

24   you'd want a reply.

25          MR. McLAUGHLIN:  Just, if I can -- your Honor, yes, I

```
 1   would like at least a couple days to reply but I just -- he
 2   started off this call explaining how they needed more time to
 3   do discovery because of our alleged document production, and so
 4   I just think this is bad faith to suggest that they're going to
 5   move forward, where at the beginning of the call they were
 6   looking for an additional 90 to 120 days in discovery, but now,
 7   when presented with a motion to stay, they want to ram
 8   depositions through in the next couple of weeks.
 9              MR. McINTURFF:  No.  That's not -- your Honor, if I
10   could correct --
11              MR. McLAUGHLIN:  Could you stop interrupting me,
12   Mr. McInturff?
13              MR. McINTURFF:  No, no, no.
14              MR. McLAUGHLIN:  Mr. McInturff, I didn't interrupt
15   you.
16              MR. McINTURFF:  Because you're misrepresenting --
17              MR. McLAUGHLIN:  Stop interrupting me.
18              THE COURT:  Counsel, we can't proceed if you all are
19   arguing over one another.  I'll give you an opportunity to
20   speak.
21              So, Mr. McLaughlin, I understand your position.  Your
22   view is there's no reason to rush depositions in this interim
23   period of briefing this motion to stay because you already --
24   you still have more documents to produce and you're in the
25   process of negotiating deposition dates, or at least you only
```

 1   got notice recently.

 2          So your point is, as I understand it, that it's sort

 3   of early in the deposition scheduling process in any case,

 4   right?

 5          MR. McLAUGHLIN:  Yes.

 6          THE COURT:  So, Mr. McInturff --

 7          MR. McLAUGHLIN:  Or the schedule should be

 8   abbreviated, if that's -- you know, if they won't agree, then

 9   they shouldn't get ten days.  They should have -- we should

10   have a real expedited briefing schedule.

11          THE COURT:  Okay.

12          Mr. McInturff, do you have anything more to say about

13   that?

14          MR. McINTURFF:  To respond, they produced millions of

15   pages of documents in May, in mid-May, is when we got their

16   production.  We have been -- since that time we have been

17   working on a document production.  Prior to that, they had

18   not -- they had not made a meaningful document production.

19          The idea that because we -- because I have a filing

20   in another case and need ten days for our team to respond to a

21   stay motion that they sprung on us requires us to do anything

22   in discovery differently than what we've been planning to do,

23   is simply unfair.  The point is, look, if Mr. McLaughlin

24   can't -- we've accommodated defense counsel's schedule for

25   years now and been very lenient -- if they can't manage to

1    schedule a deposition during the briefing period, you know, we

2    will -- we will accommodate their schedule -- but, frankly,

3    this is a game they're playing.  This is a game.

4              THE COURT:  Let me -- I think I've heard enough to

5    sort of set down some deadlines and guidance about what comes

6    next.  But before I do that, actually one other question.

7              Are there any other potential motions that anyone --

8    so we're just dealing with the motion to stay; is that right?

9              MR. McINTURFF:  Well, we don't know -- again --

10   again, Mr. Shub and I have collectively done class actions for

11   about 45 years, and we've never seen it where a defense counsel

12   violates an interim class counsel order and then -- and then

13   tries to settle the case out.  So we are likely to engage in

14   some sort of motion practice.

15             We mention in -- we cited in our letter this morning

16   Judge Reyes' order in a -- in a class which we were -- my firm

17   was -- the case was certified against another energy company

18   like HOP, and my firm was appointed counsel and we had a

19   similar defendant that was suggesting they were going to

20   reverse auction our case and Judge Reyes suggested that if that

21   occurred, we would move for sanctions.  So that's one thing

22   we're contemplating.

23             We also cited in our letter that there's a potential

24   to hold defendant in contempt of court, but again, we learned

25   about this as 5:30 right before I had to go pick up my kids

1   from school that this -- our case had been settled out from

2   under us.  So we're doing research as to what the appropriate

3   response is.

4            THE COURT:  Okay.  Well, at this point you don't

5   have -- you're still working on what you want to do in terms of

6   further motion practice, but that's something you will address

7   with me shortly, it sounds like.

8            Okay.  So let's -- so for the time being, let me

9   start at one issue at a time.

10            In terms of the outstanding document production which

11   relates to the privilege review, Mr. McLaughlin indicated that

12   that's nearly complete, so offset a deadline for that final

13   production to be made by August 9th.

14            In terms of a briefing schedule, let me say that we

15   were already talking about a briefing schedule for the motion

16   to stay by no later than Friday, July 19.  The moving papers

17   will be filed and opposition will be filed by no later than

18   August 1st and a reply no later than August 8th.  You're free

19   to file it before that date, that's just a no later than filing

20   date.

21            There will be no stay of discovery while the motion

22   is briefed or pending.  Discovery will continue, which includes

23   the timeline of document production that I outlined August 9th.

24            Similarly, in terms of depositions, the parties

25   should continue in good faith to meet and confer and schedule

1    depositions.  That doesn't mean they have to be scheduled

2    during the briefing of this motion for a stay, but the parties

3    should be endeavoring to get depositions on the calendar.

4            In terms of extending the fact discovery deadline, I

5    can agree to extend that deadline on an interim basis while

6    things are playing out for two months.  So that would mean

7    August, let's see -- August 8th -- so I'll extend the interim

8    to, I guess, October 10th.  But the understanding is that that

9    would necessarily bump up against the ultimate deadlines that

10   you currently have in your case, December 13th, unless the

11   parties could work out getting expert discovery done within

12   those couple of months.

13           So it will necessitate eventually going to Judge

14   Karas to extending our ultimate deadline if things continue in

15   litigation and there isn't a stay in the case.  But I will --

16   we can defer that to a later time while these other issues play

17   out.

18           Let me see if there's anything else that needs to be

19   addressed today.  I don't think so.

20           Anything else that needs to be addressed today,

21   Mr. McInturff?

22           MR. McINTURFF:  Not from my perspective, unless

23   Mr. Shub or Mr. Brenner have other items.

24           No, they're shaking their heads.  So no.

25           THE COURT:  Okay.

1              Mr. McLaughlin?

2              MR. McLAUGHLIN:  No, your Honor.  Thank you.

3              THE COURT:  Okay.  And in light of the timeline in

4    this case, I will do everything in my power to get an answer to

5    the parties on the motion very quickly, so it doesn't undermine

6    the whole purpose of seeking a stay to begin with, so that

7    you'll know either way.

8              So then we will adjourn for today without setting

9    another conference date and I'll wait to hear from the parties

10   by motion.

11             Thanks very much.

12             MR. McINTURFF:  Thank you, your Honor.

13             MR. McLAUGHLIN:  Thank you, your Honor.

14   CERTIFICATE:  I hereby certify that the foregoing is a true and
     accurate transcript of the recorded teleconference to the best
15   of my skill and ability.

                  ------------------------------------
16   Angela A. O'Donnell, RPR, Official Court Reporter, USDC, SDNY

17

18

19

20

21

22

23

24

25