UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

RYAN MELVILLE,
On behalf of himself and all others similarly situated,

                Plaintiff,

-against-

HOP ENERGY, LLC.,

                Defendant.

------------------------------------------------------------------X

MICHELLE MULLANEY and ROBERT MULLANEY,
On behalf of themselves and all others similarly situated,

                Plaintiff,

-against-

HOP ENERGY, LLC.,

                Defendant.

------------------------------------------------------------------X

**OPINION & ORDER**

21-cv-10406

23-cv-7318

**VICTORIA REZNIK, United States Magistrate Judge**:

    Before the Court is Defendant's motion to stay this matter pending a class action settlement in a separate case in another jurisdiction (the *Callery* settlement). (ECF Nos. 134, 135, 142, 149).[1] Also before the Court is Plaintiffs' motion for an Order to Show Cause asking for sanctions against Defendant for allegedly violating

---

[1] The parties filed virtually identical motion papers in *Melville* and *Mullaney*. Unless otherwise noted, all ECF Nos. refer to those assigned to filings in *Melville v HOP Energy, LLC,* 21-cv-10406-KMK-VR (S.D.N.Y.). Similarly, all page numbers refer to the ECF pagination printed in blue at the top of each ECF filed page.

1

the Court's Interim Class Counsel Order. (ECF No. 138). For the reasons below, Defendant's request for a stay is **GRANTED**. Additionally, Plaintiffs' request for sanctions (and related relief) is **DENIED** without prejudice.

## BACKROUND

The Court presumes the parties' familiarity with the factual and procedural background of the case but provides the following summary for necessary context.

In June 2020, Brian Callery, a former HOP Energy customer, filed a lawsuit in Pennsylvania state court alleging that HOP Energy "did not intend to honor their promise to charge Plaintiff the actual prevailing retail price for heating oil, but rather engaged in a scheme where [HOP] created a false, inflated 'prevailing retail price' which they quoted to Capped Plan customers." *Callery, et al., v. HOP Energy, LLC,* 20-cv-3652-CMR (E.D. Pa.) (*Callery*, ECF No. 1). HOP removed *Callery* to the United States District Court for the Eastern District of Pennsylvania, where it is pending.

Then, in December 2021, *Melville* was filed by Ryan Melville, a former HOP customer, alleging that HOP breached its contract by not delivering heating oil at its promotional prevailing retail price for first-year customers. (*Melville,* ECF No. 1). Later, in August 2023, counsel for *Melville* filed the *Mullaney* case in this Court, alleging that HOP breached its contract with Plaintiff by overcharging customers "who purchased variable-rate heating oil" from HOP. *See Mullaney et al., v. HOP Energy, LLC.,* 23-cv-7318-KMK-VR (S.D.N.Y.) (*Mullaney*, ECF No. 7). At various points during discovery, Plaintiffs disputed whether *Callery* overlapped with

2

*Melville* and *Mullaney*, citing Judge Karas' opinion denying HOP's previous motion to stay. (ECF No. 142 at 5-6). According to Plaintiffs, *Melville* and *Mullaney* do not overlap with *Callery* because "*Callery* involved customer contracts with capped pricing, not variable pricing." (ECF No. 128 at 2).[2] Conversely, Defendant has a more "expansive view of *Callery*," arguing that the cases do overlap because "each plaintiff was a capped price program customer, and each plaintiff's agreement provided that the customer would pay HOP's prevailing retail price upon the expiration of the contract term or when HOP delivered the designated number of gallons to the customer." (*Id.* at 3).

In December 2023, all parties participated in a global mediation, which was ultimately unsuccessful. (ECF No. 135 at 7). Soon thereafter, counsel for the Plaintiffs sought an order to be appointed interim class counsel for *Melville* and *Mullaney*, arguing that Defendant would engage in a reverse auction[3] by settling *Callery* in a way that would subsume the *Melville* and *Mullaney* classes and claims. (ECF No. 142 at 6). In May 2024, this Court granted the request of Plaintiffs' counsel to be appointed Interim Class Counsel. But in doing so, the Court did not specifically define the scope of Plaintiffs' authority in those settlement negotiations nor specifically enjoin Defendant from entering settlement negotiations or discussions in *Callery*. (ECF No. 128). Despite this, the Court assumed that any

---

[2] Unless otherwise stated, all internal quotation marks, citations, footnotes, and alterations are omitted.
[3] A reverse auction is said to occur when the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with the hope that the district court will approve a weak settlement that will preclude other claims against the defendant.

3

further settlement negotiations would involve interim class counsel for the *Melville* and *Mullaney* plaintiffs if the settlement attempted to resolve claims on their behalf.

After this Court entered the Interim Class Counsel (ICC) order, Defendant continued to engage in settlement discussions with counsel for *Callery* but without the involvement of counsel for the *Melville* and *Mullaney* plaintiffs. (ECF No. 135 at 8). The parties dispute the circumstances behind why the *Melville* and *Mullaney* plaintiffs were not included in those later discussions. Plaintiffs argue that the negotiations were "secret" and "collusive." (ECF No. 142 at 7). But Defendant asserts that Plaintiffs made clear they were not interested in continuing settlement discussions. Indeed, according to Defendant, they had rejected Plaintiffs' settlement demand in April 2024 and believed Plaintiffs were thereafter "unwilling to pursue settlement talks." (ECF No. 150 at 2).

Those settlement discussions resulted in an agreement in principle between the *Callery* plaintiffs and Defendant. (ECF No. 135 at 8; ECF No. 142 at 7). On July 16, 2024, the *Callery* plaintiffs filed a motion for preliminary approval of the settlement with the federal court in Pennsylvania. *See Callery, et al., v. HOP Energy, LLC,* 20-cv-3652-CMR (E.D. Pa.) (*Callery*, ECF No. 85). If approved, the settlement would potentially encompass the proposed claims of the *Melville* and *Mullaney* plaintiffs and their proposed putative class.

As a result, Defendant seeks to stay this action pending the case-dispositive settlement in *Callery*. Plaintiffs oppose, primarily arguing that Defendant violated

4

this Court's ICC Order by settling their claims in *Callery* without Plaintiffs' involvement and that Defendant should not be rewarded for such conduct with a stay of this case.

## DISCUSSION

### A. Defendant's Motion to Stay

It is an established principle in this Circuit that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its own docket with economy of time and effort for itself, for counsel, and for litigants." *Poppel v. Rockefeller Univ. Hosp.*, No. 19-CV-1403 (ALC), 2019 WL 3334476, at *2 (S.D.N.Y. July 25, 2019) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Indeed, a court may "enter a stay pending the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed." *Diatek Licensing LLC v. Estrella Media, Inc.*, No. 22-CV-3508 (LJL), 2022 WL 5108090, at *1 (S.D.N.Y. Oct. 4, 2022) (granting Defendant's stay of proceedings pending resolution of motion to dismiss in parallel case )(quoting *LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005)).

In deciding whether to issue a stay, courts in this Circuit will consider the following factors, often referred to as the *Kappel* factors: 1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; 2) the private interest of and burden on the defendants; 3) the interests of the courts; 4) the interests of persons

not parties to the civil litigation; and 5) the public interest. *Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 68 (S.D.N.Y. 2023) (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)). Indeed, the "movant bears the burden of establishing its need for such a stay." *Id.* (quoting *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005)).

An analysis of the relevant factors suggests that a stay here, pending resolution in *Callery*, is justified.

The first factor asks the Court to balance the interests of Plaintiffs in *Melville* and *Mullaney* in proceeding expeditiously with the case against the prejudice they might suffer if the case were delayed. Defendant contends that Plaintiffs will not be "unduly prejudiced by a stay of this action pending resolution of the settlement approval proceedings in the *Callery* case." (ECF No. 135 at 12). In support of their assertion, Defendant argues that Plaintiffs could "move to lift the stay and resume prosecution of this case" if the court in *Callery* did not approve the settlement. *Id.* at 13. By contrast, Plaintiffs argue that they have "a substantial interest in proceeding expeditiously with this litigation." (ECF No. 142 at 9). In support of this, Plaintiffs argue that they "will prevail on the merits" and that a stay would damage Plaintiffs as they are in the "midst of robust discovery efforts." *Id.* at 10-11. But Plaintiffs have not provided what sort of hardship, expenditures, or loss of opportunity to collect evidence they might suffer should a stay be granted. Instead, it appears that the true prejudice Plaintiffs fear is Defendant's ability to proceed with the purported reverse auction settlement in *Callery*, which this Court does not oversee

or control. *See In re JPMorgan Chase LPI Hazard Litig.*, No. C-11-03058 (JCS), 2013 WL 3829271, at *4 (N.D. Cal. July 23, 2013) (finding that concerns about reverse auction did not amount to prejudice warranting denial of stay); *Advanced Internet Techs., Inc. v. Google, Inc.*, No. 05-02579 (RMW), 05-02885 (RMW), 2006 WL 889477, at *2 (finding that concerns about reverse auction were not a compelling reason to deny motion to stay pending class action). Indeed, granting a stay would help preserve resources and enable Plaintiffs to focus on challenging the settlement process in *Callery* before the district judge in Pennsylvania. Because Plaintiffs have not "persuasively argued that prejudice would follow from a stay," the first factor only slightly weighs in their favor. *See Poppel*, No. 19-CV-1403-ALC, 2019 WL 3334476, at *2 (finding that because of "Plaintiff's inherent interest in proceeding expeditiously, the first factor weigh[s] in favor of Plaintiff, albeit slightly"). *Compare Diatek Licensing LLC v. Estrella Media, Inc.*, No. 22-CV-3508 (LJL), 2022 WL 5108090, at *2 (S.D.N.Y. Oct. 4, 2022) (granting a stay pending collateral federal litigation in part because Plaintiff had not "shown prejudice to it aside from the prejudice present in every stay that it will be delayed in prosecuting its case").

      The second factor asks the Court to consider the private interest of, and burden on, HOP Energy, LLC, should the case continue. To support their contention that they would be prejudiced without a stay of the case, Defendant asserts that "the parties will expend significant resources conducting discovery and briefing motions" if they continue to defend this case. (ECF No. 135 at 12). Consequently,

7

"the expenditure of such resources by [Defendant] will, *inter alia*, diminish the amount of settlement funds to be distributed to the Settlement Class." *Id.* In response, Plaintiffs argue that they "should not be forced to wait idly by while another court makes" a determination about the *Callery* settlement. (ECF No. 142 at 12). Plaintiffs also argue that "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity" (*id.* at 7) and that the *Callery* settlement might not even have a preclusive effect here. (*Id.* at 9).

To begin, it is unclear to the Court why Plaintiffs would need to wait idly by rather than focus on intervening in or objecting to the *Callery* settlement, as noted above. Also, there is quite a bit of discovery still to complete in this case. On July 17, 2024, this Court extended the parties' fact discovery deadline to October 10, 2024. (ECF No. 133). At that time, the Court instructed the parties to start scheduling depositions, which the Court understands still need to be taken. *Id.* Proceeding with remaining discovery here would be costly and time-consuming, particularly if the parties are simultaneously engaged in litigation over the *Callery* settlement. In light of the pending discovery that still needs to be exchanged, as well as the "concrete" prejudice that Defendant would suffer should this case continue, it is clear to the Court that the second factor counsels granting a stay. *See Poppel*, No. 19-CV-1403 (ALC), 2019 WL 3334476, at *3 (determining that although outstanding discovery and burden on proceeding would be "minimal," the second *Kappel* factor weighed in favor of granting a stay).

8

The third factor – the interest of the courts – similarly weighs in favor of granting a stay. Courts have a strong interest in preserving judicial resources, maintaining the efficiency of its docket,[4] and supporting "the long recognized public and judicial policy in favor of the settlement of disputes." *LaSala,* 399 F. Supp. 2d at 429. While Plaintiffs argue that a settlement in *Callery* may not have a dispositive effect here, Defendant's position is that it would. Should a settlement go forward in *Callery* and these cases proceed on a parallel track, it is easy to foresee this Court getting bogged down in motion practice and argument about the effect of that settlement here. Conversely, should Plaintiffs elect to involve themselves in the *Callery* settlement process—and should that settlement not go through for the reasons Plaintiffs advance here—then it is similarly clear that this Court may not be engaged in such a weighty dispute. Moreover, allowing for a stay here would promote the interest of comity between courts and the long-favored "judicial policy" of "the settlement of disputes," albeit in a separate jurisdiction. *Id.; see also Ali v. Wells Fargo Bank, N.A.*, No. CIV-13-876-D, 2014 WL 819385, at *3 (W.D. Okla. Mar. 3, 2014) (granting stay pending conclusion of settlement proceedings in parallel federal class action case); *Meints v. Regis Corp.*, No. 09CV2061 WQH (CAB), 2010 WL 3058300, at *1 (S.D. Cal. Aug. 2, 2010) (granting stay pending settlement of parallel putative class action in coordinate federal district); *Schwarz v. Prudential-Bache Sec., Inc.*, No. CIV. A. 90-6074, 1991 WL 137157, at *1 (E.D. Pa.

---

[4] *Poppel*, No. 19-CV-1403 (ALC), 2019 WL 3334476, at *3 (internal citation and quotation omitted).

July 19, 1991) (granting stay in securities case where plaintiff may be class member in related federal class action suit).[5]

Both the fourth and fifth factors—the interests of non-parties and of the public—are served by granting a stay as well because it would promote "the efficient use of judicial resources and [minimize] the possibility of conflicts between different courts," as explained above. *UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.*, No. 20 CV 10664 (VB), 2021 WL 6137097, at *5 (S.D.N.Y. Dec. 29, 2021) (finding that granting stay, pending resolution of related case in separate jurisdiction served the public interest) (quoting *Nuccio v. Duve*, 2015 WL 1189617, at *5 (N.D.N.Y. Mar. 16, 2015)).

As such, four of the five *Kappel* factors favor granting a stay of this action pending a resolution in *Callery*.

B. **Plaintiffs' Order to Show Cause**

In a separate filing, Plaintiffs requested an Order to Show Cause as to why Defendant should not be held in civil contempt for allegedly violating the Court's Interim Class Counsel Order and engaging in a collusive reverse auction settlement. (ECF No. 138). As part of that request, Plaintiffs ask the Court to force

---

[5] In their opposition papers, Plaintiffs argue that this Court has a "strong interest in securing compliance with [its] orders, and a stay would only countenance HOP's overt violation of the ICC Order." (ECF No. 142 at 13). But the Court sees this differently. Indeed, granting a stay in this action while Plaintiffs seek to litigate the fairness of the settlement in Pennsylvania advances the Court's interest in securing compliance with its orders without this Court impinging on proceedings before another federal court. That is because granting a stay here will allow both parties to focus their efforts on the *Callery* settlement dispute and not litigate this—and other issues—here simultaneously. Relatedly, it is the Court's view that its strongest interest here is in the efficient resolution of the parties' dispute, which as mentioned above, will best be accomplished by enabling the parties to focus on the *Callery* settlement.

HOP to carve-out the *Melville* and *Mullaney* plaintiffs in their *Callery* settlement and to enjoin HOP, under the All Writs Act (28 U.S.C. § 1651(a)), from settling the claims of the proposed *Melville* and *Mullaney* classes in *Callery*. (ECF No. 139 at 11).

Although Plaintiffs have raised potentially valid concerns about how the *Callery* settlement was negotiated without their involvement, the parties' dueling affidavits demonstrate that there are likely two or more sides to this story. Perhaps Defendant tried to evade this Court's Interim Class Counsel order and negotiate a reverse auction settlement that settles claims on the cheap, as Plaintiffs argue. (ECF No. 140). Or perhaps Plaintiffs were jockeying for control of global settlement discussions, refused to negotiate in good faith, and made any recovery for the proposed class less likely with scorched-earth litigation tactics (as Defendant argues). (ECF Nos. 150, 151). The truth may be somewhere in the middle. In any case, this Court declines to delve into the merits of these allegations, which, in essence, go to the adequacy of the proposed settlement in *Callery*, including the fairness of its proposed terms and the scope of the purported class. This Court is not tasked with evaluating the settlement in *Callery*; the judge in *Callery* is.

Although Plaintiffs argue that this Court should intervene by enjoining HOP from entering into the *Callery* settlement under the All Writs Act, the Court is not convinced it has the authority to do such a thing. The Act is generally used to prohibit activities in another court (typically a state court) that threaten to undermine a pending settlement in the enjoining court. *See Grider v. Keystone*

11

*Health Plan Cent., Inc.*, 500 F.3d 322, 330 (3d Cir. 2007) (collecting cases). And cases are thin on federal courts using the All Writs Act to enjoin settlement efforts in another federal court. The two primary cases cited by Plaintiffs related to MDL proceedings, in which the courts noted that the All Writs Act was "designed for situations where the proposed settlement and release of claims in another judicial district would interfere with the MDL Court's disposition of those same claims." *In re Checking Acct. Overdraft Litig.*, 859 F. Supp. 2d 1313, 1322 (S.D. Fla. 2012); *see also In re Managed Care Litig.*, 236 F. Supp. 2d 1336, 1340-41 (S.D. Fla. 2002). That is not the case here. And other federal courts have directly questioned the ability of one federal court to enjoin the activities in another, absent the immediate threat of undermining a pending settlement in the enjoining court. *See, e.g., Torliatt v. Ocwen Loan Servicing, LLC*, No. 19 Civ. 4303 (WHO), 2020 WL 10964876, at *2 (N.D. Cal. Oct. 2, 2020) (finding that threat of reverse auction did not justify enjoining parties from participating in a settlement in another federal court); *see also In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 99 F. Supp. 3d 288, 308 (E.D.N.Y. 2015) ("This Court did not, nor could it, limit with whom HSBC could negotiate in the pending State Court Action"). Indeed, at least two Circuit courts have stated that "there is simply no support for the proposition that a court may enjoin parties from participating in or reaching a bona fide settlement in another federal court that may dispose of claims before it – particularly when there is no pending settlement in the enjoining court and the other federal court is an MDL court charged with attempting to reach a global

12

settlement." *Grider*, 500 F.3d at 331 (finding that district court abused its discretion by resorting to All Writs Act to enjoin settlement in another federal court); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1099 (9th Cir. 2008) (reversing district court decision to enjoin parties from participating in a settlement in another federal court).

But the *Melville* and *Mullaney* plaintiffs are not without a remedy. The best and most efficient way for the *Melville* and *Mullaney* plaintiffs to challenge the fairness of the *Callery* settlement is to focus on contesting its validity before the judge in *Callery*. *See, e.g., In re JPMorgan Chase LPI Hazard Litig.*, No. C-11-03058 (JCS), 2013 WL 3829271, at*4 (N.D. Cal. July 23, 2013) (noting that stay of proceedings "will free Plaintiffs to focus their attention on contesting the validity of any settlement agreement that is entered" in the other case); *Torliatt,* No. 19-cv-04303, 2020 WL 10964876, at *3 (declining to enjoin settlement in another court and deferring to judge overseeing settlement); *In re HSBC Bank,* 99 F. Supp. 3d at 308 (declining to address merits of reverse auction allegations in favor of resolution before court overseeing pending settlement). That includes arguing for reducing the scope of the purported class or otherwise carving out the *Melville* and *Mullaney* plaintiffs from its terms. Indeed, Rule 23(e) of the Federal Rules of Civil Procedure provides a mechanism for the Plaintiffs to do just that: "[a]ny class member may object to a proposed settlement, voluntary dismissal, or compromise that requires court approval under Rule 23(e)(1)(A)," and "[a]n objection made under Rule 23(e)(4)(A) may be withdrawn only with the court's approval." Fed. R. Civ. P.

23(e)(4)(A) & (B). *See also Grider*, 500 F.3d at 332 (finding that enjoining settlement in another federal court was unwarranted, partly because Rule 23(e) provides adequate remedy at law for party to object to proposed settlement). Here, the *Melville* and *Mullaney* plaintiffs have not explained why Rule 23(e) is not an adequate remedy to oppose the *Callery* settlement.

That said, it does not go unnoticed by the Court that HOP's actions may have violated the spirit of the Court's Interim Class Counsel order, if not its explicit terms. This Court contemplated that its Interim Class Counsel order would mean that the *Melville* and *Mullaney* plaintiffs would participate in any settlement that attempted to extinguish their claims. But for the reasons explained above, the Court declines to rule on Plaintiffs' request for sanctions and denies Plaintiffs' request to enjoin the *Callery* settlement or otherwise dictate its terms. But Plaintiffs' request for sanctions is denied without prejudice for renewal if this case proceeds.

## CONCLUSION

For the reasons above, Defendant's request for a stay is **GRANTED** (ECF No. 134). The *Melville* and *Mullaney* cases will be stayed pending resolution of the settlement in *Callery*. Notwithstanding this stay, the parties must update the Court within 90 days of this Order on the status of the *Callery* litigation. Additionally, Plaintiffs' request for an Order to Show Cause is **DENIED** without prejudice. (ECF No. 138). The Clerk of Court is respectfully directed to terminate the pending motions at ECF Nos. 134 and 138.

**SO ORDERED.**

DATED:   White Plains, New York
         September 18, 2024

_____
VICTORIA REZNIK
United States Magistrate Judge